1 | PATRIC HOOPER (State Bar No. 57343)
E-Mail:   phooper@health-law.com
2 | BRIDGET A. GORDON (State Bar No. 287098)
E-Mail:   bgordon@health-law.com
3 | **HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
4 | Los Angeles, California 90067-2517
Telephone: (310) 551-8111
5 | Facsimile: (310) 551-8181

6 | Attorneys for Plaintiff AGENDIA, INC.

7 |

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| AGENDIA INC., | Case No. 8:19-cv-00030-DOC-DFM |
| Plaintiff, | The Hon. David O. Carter |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| ALEX AZAR, SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Defendant. | Date:      February 10, 2020<br>Time:     8:30 a.m.<br>Ctrm:    9D |
| | Trial Date:          None Set |

## **TABLE OF CONTENTS**                                                      Page

I.      INTRODUCTION ...................................................................................... 1

II.     THE RELEVANT MEDICARE STATUTES AND REGULATIONS. ........... 2

        A.      General Provisions ........................................................................ 2

        B.      The Medicare Appeal Process ...................................................... 6

III.    THE FACTS ............................................................................................... 8

        A.      Background ................................................................................... 8

        B.      The MAC Policies at Issue. .......................................................... 8

        C.      Agendia's BluePrint and TargetPrint Tests and the
                Administrative Appeals Regarding Them ................................... 10

                1.      Background ...................................................................... 10

                2.      The Two Administrative Appeals ..................................... 10

                3.      The Requests for Expedited Access to Judicial Review ... 11

IV.     ARGUMENT ........................................................................................... 12

        A.      Standard and Availability of Judicial Review. ........................... 12

        B.      Jurisdiction ................................................................................ 13

        C.      Jurisdiction Exists to Decide the Collateral Legal Issues
                Regardless of Whether 42 U.S.C. Section 1395ff(b)(2)(C)(i)(II)
                Applies. ...................................................................................... 14

        D.      The Delegation Issue .................................................................. 15

        E.      The MAC Policies May Not Be Implemented Here, Because
                They Were Not Promulgated as Regulations, and, thus, the ALJs
                Acted Without Observance of the Procedure Required by Law ... 16

        F.      The ALJ's February 15 and 27, 2019 Decisions Are *Ultra Vires* ........ 17

V.      CONCLUSION ......................................................................................... 18

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

i

## TABLE OF AUTHORITIES                                     Page

**Federal Cases**

*AHA v. Burwell*,
   209 F. Supp. 3d 221 (D.D.C. 2016) ........................................................ 7

*Azar v. Allina Health Servs.*,
   139 S. Ct. 1804 (2019)..................................................................... 3, 5

*Daniel Freeman Memorial Hospital v. Schweiker*,
   656 F.2d 473 (9th Cir. 1981) ............................................................ 14

*Family Rehab, Inc. v. Azar*,
   886 F.3d 496 (5th Cir. 2018) ............................................................ 15

*Int'l Rehabilitative Scis., Inc. v Sebelius*,
   688 F.3d 994 (9th Cir. 2012)............................................................. 12

*Powderly v. Schweiker*,
   704 F.2d 1092 (9th Cir. 1983)........................................................... 14

*Texas v. United States*,
   300 F. Supp. 3d 810 (N.D. Tex. 2018) ............................................... 16

*Yale New Haven v. Azar*,
   2019 U.S. Dist. LEXIS 124628 (D.D.C. July 25, 2019) ...................... 15


**Federal Statutes**

5 U.S.C. § 553 (Administrative Procedure Act).....................................passim

5 U.S.C. § 706...............................................................................12

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

<u>**TABLE OF AUTHORITIES**</u> (cont.)                    <u>Page</u>

**Federal Statutes (con't)**

42 U.S.C.

§ 405(g)................................................................................7, 12

§ 1395 .........................................................................................3

§ 1395ff(a) ..................................................................................7

§ 1395ff(b) ..................................................................................7

§ 1395ff(b)(1)(A)....................................................................7, 12

§ 1395ff(b)(2)(A)........................................................................13

§ 1395ff(b)(2)(B) ........................................................................13

§ 1395ff(b)(2)(C)(i)(II) .........................................................7, 13, 14

§ 1395ff(f)(1)(B)...........................................................................5

§ 1395ff(f)(2)(B)...........................................................................4

§ 1395hh ...........................................................................1, 14, 17

§ 1395hh(a)(2) ..............................................................................5

§ 1395hh(a)(2) ............................................................................16

§ 1395hh(a)(4) ........................................................................6, 16

§§ 1395j -1395x ...........................................................................3

§ 1395kk-1(a)(4) ...........................................................................4

§ 1395kk-1(d) ...............................................................................9

§ 1395m-1(d)(5) ..........................................................................10

§ 1395u(a) ....................................................................................3

§ 1395x(s)(3) ................................................................................3

§ 1395y(a)(1)(A) ...........................................................................4

§ 1395y(a)(6) ................................................................................4

§ 1395y(*l*)(3)................................................................................5

§ 1395y(*l*)(5)..............................................................................17

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES (cont.)                    Page

**Federal Regulations**

42 C.F.R.
§ 400. ........................................................................................................... 3
§ 400.202 ..................................................................................................... 3
§§ 405.900-405.1140 .................................................................................. 7
§ 405.1062 ................................................................................................... 4
§ 410. ........................................................................................................... 3
§ 410.32(a) ................................................................................................... 4
§ 411.15(k)(1) ............................................................................................. 4
§ 1062(a) ...................................................................................................... 6
§ 1062(c) ...................................................................................................... 7

78 Fed. Reg. 43350, July 19, 2013 ........................................................... 10

**Other Authorities**

H.R. Conf. Rep. No. 1012, 99th Cong., 2d Sess. (1986) .............................. 5

"Local Coverage Determinations Create Inconsistencies in Medicare
    Coverage," January 2014 accessible at
    https://oig.hhs.gov/oei/reports/oei-01-11-00500.pdf ............................. 8

Medicare Integrity Manual, § 13.1.3 (rev. 473, Issued: 06-21-13,
    Effective: 01-15-13, Implementation: 01-15-13), accessible at
    https://www.cms.gov/Regulations-and-
    Guidance/Guidance/Transmittals/Downloads/R473PI.pdf .................... 6

Medicare Prescription Drug, Improvement, and Modernization Act of
    2003, Pub. L. No. 108-173 § 935, 117 Stat. 2066, 2407 ..................... 5, 8

"Molecular Diagnostic Program (MolDX), *Coverage*, *Coding*, *and
    Pricing Standards and Requirements (M00106)*," accessible at
    https://palmettogba.com/Palmetto/moldx.Nsf/files/MolDX_Manual.
    pdf/$File/MolDX_Manual.pdf ................................................................. 9

"Summary of Significant Changes to the Medicare Program Integrity
    Manual Chapter 13 – Local Coverage Determinations," accessible at
    https://www.cms.gov/newsroom/fact-sheets/summary-significant-
    changes-medicare-program-integrity-manual-chapter-13-local-
    coverage ................................................................................................. 6

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

# I. __INTRODUCTION__

This case involves the same substantive Medicare coverage issues decided by this Court on October 29, 2019, in the related case of *Agendia, Inc. v. Azar*, 19-cv-00074.  In that case, the Court granted Agendia Inc.'s ("Agendia") motion for summary judgment on the grounds that the Medicare Local Coverage Determination ("LCD") L32288 at issue was not enforceable because it was not enacted as a Medicare regulation, as required by 42 U.S.C. section 1395hh.  The LCD denies Medicare coverage of the molecular diagnostic testing at issue because the testing had not been approved under the MolDX process, which like the LCD, itself, was established by a private contractor (Palmetto GBA) rather than by the Secretary of Health and Human services ("Secretary") or his governmental sub-agency, the Centers for Medicare and Medicaid Services ("CMS").

However, the procedural posture of the two court cases is different.  In the previously decided case, the Secretary's Administrative Law Judge ("ALJ") had ruled favorably to Agendia on the Medicare coverage issue for 86 different Medicare beneficiaries, notwithstanding the fact that LCD L32288 mandated the denial of coverage.  However, the Medicare Appeals Council ("Appeals Council") of the Secretary's Departmental Appeals Board ("DAB") reversed the ALJ's fully favorable decision, because the ALJ did not afford substantial deference to LCD L32288.  On October 29, 2019, the Court remanded the matter to the Appeals Council for further proceedings in light of the Court's ruling on LCD L32288.

In the instant case, two different ALJs in two different administrative appeals involving the same issues for more than 400 Medicare beneficiaries ruled against Agendia on the Medicare coverage issue as a result of giving substantial deference to LCD L32288.  For example, in her October 30, 2018 decision, ALJ Jeannie Bartlett repeated the identical language to deny Medicare coverage for each laboratory test furnished by Agendia at the request of the patients' doctors to 181 different Medicare beneficiaries residing across the Country, each of whom suffered

1

1  from breast cancer.  For each beneficiary, ALJ Bartlett ruled that "[b]ased on the

2  evidence presented, historical information and medical documentation, the tests did

3  not comply with LCD L32288."  Plaintiff's Statement of Uncontroverted Facts and

4  Conclusions of Law ("Plaintiff's Statement"), ¶ 24.

5  In the other administrative appeal, ALJ Michael Cianci deferred to LCD

6  L32288 to deny Medicare coverage for laboratory tests rendered by Agendia to 227

7  Medicare beneficiaries.  (However, he chose not to follow the LCD for tests

8  performed for four other beneficiaries.)  Plaintiff's Statement, ¶ 24.

9  Because the two ALJs relied on LCD L32288 to disallow coverage for tests

10  furnished to 408 Medicare beneficiaries suffering from breast cancer, and because

11  Agendia contends LCD L32288 is unenforceable as a matter of law, Agendia timely

12  sought expedited access to judicial review as authorized by statute.  Hooper Dec. ¶

13  2.  And, since the Secretary's DAB did not rule on the request within the

14  Congressionally-mandated 60 days for doing so, Agendia sought judicial review of

15  the purely legal questions presented by filing the complaint in the instant matter on

16  January 7, 2019.[1]

17  As it did in the previously decided case, Agendia now moves this Court to

18  grant summary judgment in its favor ordering the Secretary to set aside the two

19  unfavorable ALJ decisions on the grounds they are based on Medicare coverage

20  policies that are invalid, because the policies (1) were established by private

21  contractors rather than by Congress or the Secretary; and (2) were not enacted under

22  the procedures the Secretary is required to use to enact Medicare regulations.

23  ## II.  THE RELEVANT MEDICARE STATUTES AND REGULATIONS.

24  ### A.  General Provisions

25  Medicare is the federal health insurance program for the aged and disabled.

26

27  [1] To avoid multiple actions, Agendia has proposed that the Secretary agree to be bound by ultimate outcome in case no. 19-cv-00074 for the instant case and for four

28  other pending administrative appeals.  However, the Secretary has refused to do so.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

42 U.S.C. §§ 1395 *et seq*. and 42 C.F.R. Part 400 *et seq*.  Medicare is the largest federal program after Social Security.  It affects nearly one-fifth of the nation's population.  Even "seemingly modest modifications to the program can affect the lives of millions."  Thus, public participation in the process for enacting and changing Medicare policy is of critical importance.  *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1808 (2019) ("*Allina*").

Of relevance here is Part B of the Medicare Program, known as the "supplementary medical insurance program" ("Medicare Part B").  42 U.S.C. §§ 1395j -1395x and 42 C.F.R. Part 410 *et seq*.  Medicare Part B covers "medical and other health care services," including physician services and clinical laboratory services.  "Diagnostic laboratory tests" are specifically included in the definition of "medical and other healthcare services," and thus, are within the scope of covered Medicare Part B benefits under 42 U.S.C. section 1395x(s)(3).  Independent clinical laboratories, such as Agendia, may be certified as "suppliers" of Medicare Part B services.  42 C.F.R. § 400.202.

The Secretary administers the Medicare Program through CMS, a governmental agency.  However, pursuant to 42 U.S.C. section 1395u(a), CMS, in turn, contracts with Medicare Administrative Contractors ("MACs") to administer substantial portions of Medicare Part B.  Section 1395u(a) states that Medicare Part B "shall be conducted through contracts with medicare (*sic*) administrative contractors under section 1395kk-1 of this title."  Thus, Congress and the Secretary have delegated considerable Medicare Part B regulatory responsibilities to MACs, including allowing these private contractors to perform discretionary functions, such as establishing Medicare Part B coverage policies, like those applied by the Council here.

Indeed, as explained below, Congress, the Secretary, and CMS had little, if anything, to do with the policymaking or the decision making at issue.  The only *governmental* officials involved in the decision making process in this case were the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

3

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  two ALJs, who were required to give "substantial deference" to the Medicare

2  coverage policies established by the MAC, a private, non-governmental contractor,

3  under 42 C.F.R. section 405.1062 (ALJs and the DAB's Appeals Council "will give

4  substantial deference" to LCDs).

5       Medicare Part B is a "defined benefit program." Diagnostic laboratory tests

6  are among the benefits mandated by Congress. To be covered and paid by

7  Medicare, a diagnostic laboratory test must be ordered by a physician who is

8  treating the beneficiary, and who uses the test results in the management of the

9  patient's specific medical condition. *See* 42 C.F.R. § 410.32(a) (all diagnostic

10  laboratory tests must be ordered by the physician who is treating the beneficiary).

11       Congress has determined that certain specific services and procedures are not

12  to be covered as a benefit of the Medicare program. In addition to these specific

13  exclusions, such as personal comfort items (42 U.S.C. section 1395y(a)(6)), the

14  controlling statute generally "excepts" from coverage "items and services that are

15  not reasonable and necessary for the diagnosis or treatment of illness or injury or to

16  improve the functioning of a malformed body member." 42 U.S.C. §

17  1395y(a)(1)(A). This general statutory provision is embodied in the Secretary's

18  duly enacted regulations at 42 C.F.R. section 411.15(k)(1) (services that are not

19  reasonable and necessary for the diagnosis or treatment of illness or injury or to

20  improve the functioning of a malformed body member are excluded from coverage).

21       Pursuant to 42 U.S.C. section 1395kk-1(a)(4), effective 2003, Congress

22  expressly delegated to MACs the "function of developing local coverage

23  determinations, as defined in section 1395ff(f)(2)(B) of this title." A local coverage

24  determination ("LCD") is defined in this latter statutory provision as a determination

25  of whether or not a particular item or service is covered on a contractor-wide basis

26  under Section 1395y(a)(1)(A).[2]

27  _____

28  [2] Medicare Part B was previously administered by private contractors called
(footnote continued)

4

1    In contrast to LCDs, the Secretary, as opposed to MACs, is responsible for

2  developing *National* Coverage Determinations ("NCDs").  An NCD is a

3  "determination by the Secretary with respect to whether or not a particular item or

4  service is covered nationally."  42 U.S.C. § 1395ff(f)(1)(B).  As discussed below,

5  while characterized as "local," rather than national, the LCD and the other MAC

6  policies at issue here effectively have national impact on clinical laboratories like

7  Agendia.

8    CMS establishes NCDs through a process similar to that required under the

9  notice and comment rulemaking provisions of the Administrative Procedure Act

10 ("APA"), 5 U.S.C. section 553.  *See* 42 U.S.C. § 1395y(*l*)(3), requiring the Secretary

11 to provide a public comment period, including publishing a proposed draft of any

12 NCD and to respond publicly to comments received.  Thus, the Secretary does not

13 have to promulgate NCDs as regulations even though NCDs establish or change the

14 legal standards governing the scope of Medicare benefits.  *See* 42 U.S.C. §

15 1395hh(a)(2).[3]

16   As the Supreme Court recently explained in *Allina*, under Section

17 1395hh(a)(2), no statement of Medicare policy or other Medicare requirement that

18 establishes or changes a legal standard governing, among other things, the scope of

19 Medicare services may take effect unless the Secretary promulgates it as a

20

21

22 "carriers," and Part A was administered by "fiscal intermediaries."  In 2003, MACs

23 replaced carriers and fiscal intermediaries under the provisions of the Medicare

24 Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L.

   No. 108-173 § 935, 117 Stat. 2066, 2407.

25 [3]  According to a Conference Report, the Secretary's process for promulgating

26 NCDs "is designed to assure consultation with the medical and scientific community

   and the general public."  Thus, Congress believed the APA procedure of publishing

27 proposed final regulations in the Federal Register did "not seem essential."  H.R.

28 Conf. Rep. No. 1012, 99th Cong., 2d Sess. 350-51 (1986).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  regulation.[4]

2      As discussed below, notwithstanding this mandate, MACs do *not* enact LCDs

3  or other policies as regulations even though these MAC policies establish legal

4  standards governing the scope of Medicare benefits.  Also, during the period at issue

5  here (2011-2013) in enacting LCDs and other policies, MACs did not use the

6  processes employed by the Secretary to enact NCDs.

7          **B.      The Medicare Appeal Process**

8      As indicated above, LCDs are not promulgated by the Secretary or CMS as

9  regulations.  Instead, MACs, themselves, internally establish such policies "by

10  considering medical literature, the advice of local medical societies and medical

11  consultants, public comments, and comments from the medical community."  *See*

12  Medicare Integrity Manual, § 13.1.3 (rev. 473, Issued: 06-21-13, Effective: 01-15-

13  13, Implementation: 01-15-13), accessible at https://www.cms.gov/Regulations-and-

14  Guidance/Guidance/Transmittals/Downloads/R473PI.pdf.[5]

15      While this same CMS manual provision characterizes LCDs as "educational

16  tools" to "provide guidance to the public and medical community within their

17  jurisdictions," in reality, LCDs are binding on Medicare suppliers and beneficiaries,

18  as shown by the circumstances of this case.  This is so, because the Secretary

19  requires his ALJs and the Council to give MAC policies "substantial deference" in

20  the Medicare administrative appeal process under 42 C.F.R. section 405.1062(a),

21  _____

22  [4]  Under Section 1395hh(a)(4), if a requirement is not the "logical outgrowth" of a

23  rule that was published pursuant to the APA, it cannot be implemented until it is
    enacted under rulemaking requirements.

24  [5] In 2018, CMS revised this manual provision "to improve transparency in the LCD

25  process."  *See* "Summary of Significant Changes to the Medicare Program Integrity
    Manual Chapter 13 – Local Coverage Determinations," accessible at:

26  https://www.cms.gov/newsroom/fact-sheets/summary-significant-changes-

27  medicare-program-integrity-manual-chapter-13-local-coverage.  These changes are

28  too little, too late for the policies established in this case years ago.

1    which was enacted in 2005.  And, in a Medicare supplier's claim appeal, such as
2    that here, an ALJ and the Council may not set aside or review the validity of an
3    LCD.  *See* 42 C.F.R. § 405.1062(c), which was also enacted in 2005.

4         Notwithstanding the fact that an ALJ and the Council must substantially defer
5    to LCDs and are prohibited from reviewing the validity of an LCD at the request of
6    a supplier, the Secretary still requires Medicare suppliers of Part B services,
7    including clinical laboratories like Agendia, to go through a four-step administrative
8    appeal process to seek Medicare coverage and payment for any claim denied by
9    MACs based on an LCD or other MAC policy.  This is commonly known as the
10   Medicare claims appeal process.

11        This four-step claims appeal process consists of two administrative review
12   steps (an initial and a redetermination) adjudicated by private contractors followed
13   by a hearing before an ALJ and an administrative appeal with the DAB Appeals
14   Council.  *See* 42 U.S.C. §§ 1395ff(a) and (b) and 42 C.F.R. §§ 405.900-405.1140.
15   The Medicare Part B claims appeal process is broken due to a heavy backlog of
16   cases.  *See AHA v. Burwell*, 209 F. Supp. 3d 221 (D.D.C. 2016), which discusses the
17   background and existence of the backlog and the multi-year delays resulting
18   therefrom.

19        When an appealing Medicare supplier finally completes the claims appeal
20   process, judicial review is available under 42 U.S.C. section 1395ff(b)(1)(A), which
21   incorporates the judicial review process available to Social Security beneficiaries
22   under 42 U.S.C. section 405(g).  Moreover, where, as here, an appeal involves
23   questions of law or regulation, a supplier may request the DAB to grant it expedited
24   access to judicial review.  And, also, as here, if the DAB fails to act within 60 days
25   of receiving, the supplier may file a lawsuit against the Secretary to resolve the
26   questions of law and regulation.  42 U.S.C. § 1395ff(b)(2)(C)(i)(II).
27   / / /
28   / / /

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

7

## III.   **THE FACTS**

### A.   **Background**

In 2003, the newly enacted MMA legislation (footnote 2) called (1) for a plan to evaluate new LCDs to determine which should be adopted nationally, and (2) for MACs to replace fiscal intermediaries and carriers and to function on a regional basis rather than being limited to state jurisdictions. *See* Department of Health and Human Services Office of Inspector General ("OIG") report entitled, "Local Coverage Determinations Create Inconsistencies in Medicare Coverage," January 2014 accessible at https://oig.hhs.gov/oei/reports/oei-01-11-00500.pdf.  Statement, ¶ 13.

According to this same January 2014 OIG report (page 8), in October 2011, over one-half of the procedure codes for Medicare Part B services were subject to an LCD in one or more states, including California, and 31 percent of laboratory testing procedures were subject to LCDs.  Importantly, this OIG report further points out that some MACs have issued "blanket LCDs prohibiting coverage of all procedure codes for new technology, stating that they considered new technology to be experimental and thus not covered by Medicare."  OIG Report, p. 10.  Plaintiff's Statement, ¶ 14.  The MAC policies at issue impose just such a blanket prohibition on molecular diagnostic laboratory testing.

### B.   **The MAC Policies at Issue.**

Palmetto GBA ("Palmetto") was the MAC for Agendia's geographic region in 2011.[6]  That same year, Palmetto developed the Molecular Diagnostic Services ("MolDX") Program to "identify and establish coverage and reimbursement for molecular diagnostic tests."  Under this Palmetto program, Palmetto requests clinical information about a test "to determine if a test meets Medicare's reasonable

---

[6]  On September 16, 2013, Noridian Healthcare Solutions ("Noridian") became the MAC for Agendia.  Plaintiff's Statement, page 7, footnote 6 ¶ 15.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   and necessary requirement." Prior to this technical assessment, "Palmetto will

2   consider all [molecular diagnostic] tests investigational and therefore, not a covered

3   service" under LCD L32288. Plaintiff's Statement, ¶ 15.

4       During the period at issue here, 2012 and 2013, Palmetto had established

5   LCD L32288, confirming "non-coverage" for all molecular diagnostic tests that

6   were not explicitly covered by an NCD, an LCD, a Palmetto Coverage Policy

7   Article, or approved through the MolDX program. Palmetto also issued a "Policy

8   Article" indicating there was "insufficient evidence to support" the reasonable and

9   necessary criteria for Medicare reimbursement for Agendia's BluePrint test.

10   Plaintiff's Statement, ¶ 16.

11       There is nothing "local" about LCD L32288 and the MolDX program. While

12   they are administered through a single MAC, Palmetto, their impact on laboratories

13   and beneficiaries Palmetto serves is national in scope. Basically, all MACs,

14   including Noridian, Agendia's current MAC (footnote 6), rely on the MolDX

15   program to determine coverage for molecular diagnostic laboratory services

16   throughout the Country. *See* Chapter 1, page 1, of Palmetto's publication entitled,

17   "Molecular Diagnostic Program (MolDX), *Coverage*, *Coding*, *and Pricing*

18   *Standards and Requirements (M00106)*," accessible at

19   https://palmettogba.com/Palmetto/moldx.Nsf/files/MolDX_Manual.pdf/$File/MolD

20   X_Manual.pdf, listing the various MAC jurisdictions that have implemented the

21   MolDx program across the Country and in various U.S. Territories. Plaintiff's

22   Statement, ¶ 17.

23       As a result, Palmetto's Medical Director has untethered and unchecked

24   discretion in determining Medicare coverage for molecular diagnostic laboratory

25   testing. And, the Medical Director and Palmetto exercise such discretionary power

26   knowing that they have very limited liability to the public and will be indemnified

27   by the Secretary so long as they do not act criminally, fraudulently or grossly

28   negligently. *See* 42 U.S.C. § 1395kk-1(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

9

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

C.     **Agendia's BluePrint and TargetPrint Tests and the Administrative Appeals Regarding Them**

1.     Background

Agendia furnishes molecular diagnostic tests at the request of doctors throughout the Country who treat breast cancer patients.  In addition to the two tests at issue, Agendia provides its MammaPrint test, which is not at issue because Palmetto had previously found MammaPrint to be reasonable and necessary and thus covered by Medicare.  Plaintiff's Statement, ¶ 18.

Significant technological changes in the clinical laboratory field have occurred since the completion of the Human Genome Project.  Most notably, genetic and genomic testing are now commonly used by physicians to "personalize" the delivery of medical services to their patients.  *See* CMS comments at 78 Fed. Reg. 43350, July 19, 2013.  Plaintiff's Statement, ¶ 19.

Under current Medicare terminology, the BluePrint and TargetPrint tests (as well as MammaPrint) are known as "advanced diagnostic laboratory tests," as defined under 42 U.S.C. section 1395m-1(d)(5), which includes laboratory testing that consists of "an analysis of multiple biomarkers of DNA, RNA, or proteins combined with a unique algorithm to yield a single patient-specific result." Plaintiff's Statement, ¶ 20.

2.     The Two Administrative Appeals

Upon the written order of the doctors for each of the more than 400 Medicare beneficiaries whose claims are at issue in this case, Agendia furnished BluePrint and/or TargetPrint tests between June 2012 and January 2013.  Agendia's MAC, then Palmetto, initially and upon redetermination, refused payment for the testing on the grounds the tests were not covered by Medicare based on LCD L32288 and the lack of MolDX program approval.  Plaintiffs Statement, ¶ 21.

Agendia timely requested reconsiderations with a different type of MAC, known as a Qualified Independent Contractor ("QIC"), which was required to

perform an independent review of Palmetto's coverage denials.  The QIC informed Agendia that it was also denying coverage "[b]ased on the criteria in L32288 and/or the MolDx article."  Plaintiff's Statement, ¶ 22.

Agendia timely requested hearings before an ALJ.  Plaintiff's Statement, ¶ 23. More than four years later, the Secretary's Office of Medicare Hearings and Appeals finally scheduled ALJ hearings for Agendia, which were conducted by telephone. Two expert witnesses testified on behalf of Agendia in each ALJ appeal – William Audeh, M.D., an experienced oncologist and Agendia's Chief Medical Officer and Bas Van Der Baan, Agendia's Chief Clinical Officer.  Plaintiff's Statement, ¶ 23.

Dr. Audeh, a very experienced oncologist who had treated breast cancer patients for 30 years before joining Agendia, also discussed representative cases in each appeal to show how the TargetPrint and BluePrint tests were used to manage the patients' breast cancer in each such case.  He further testified that the peer-reviewed literature showed that the testing was not experimental or investigational but was used to guide treatment by oncologists as a standard of medical practice and care in the early stage of breast cancer.

Relying on LCD L32288, ALJ Bartlett and Michael Cianci concluded that Medicare coverage should be denied.  As mentioned above, in her 132-page decision, ALJ Bartlett treated each Medicare beneficiary the same regardless of the patient's condition and regardless of why each patient's treating physician ordered testing for each beneficiary.  Plaintiff's Statement, ¶ 24.

ALJ Cianci chose not to defer to the LCD for four beneficiaries, the four who Dr. Audeh discussed during the hearing.  However, for the approximately 230 other beneficiaries, ALJ Cianci chose to give substantial deference to LCD L32288 and deny coverage for their testing.  Plaintiff's Statement, ¶ 24.

### 3.   The Requests for Expedited Access to Judicial Review

On November 6, 2018, Agendia e-filed separate requests for the DAB to grant it expedited access to judicial review to challenge the purely legal issues in question

11

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 in the two ALJ appeals pursuant to the provisions of the controlling statute.

2 Plaintiff's Statement, ¶ 25.

3     The DAB did not respond to the requests until February 6, 2019, when it

4 chose to consolidate the two requests.  Notwithstanding the fact that the DAB's

5 response was well beyond the 60-day period allowed for responding to Agendia's

6 requests, the DAB did not issue its determination on the requests until February 15,

7 2019.  The DAB rejected Agendia's requests on the ground that the legal challenge

8 to LCD L32288 would not be the sole factor for resolving Agendia's appeals.  The

9 DAB then referred the matter to its Appeals Council.  Plaintiff's Statement, ¶ 25.

10     However, well before the DAB rejected the requests for expedited access to

11 judicial review, Agendia filed the instant lawsuit because the DAB had not

12 responded to its two requests for expedited access to judicial review on a timely

13 basis – *i.e.,* within 60 days of the DAB's receipt of Agendia's requests.  Not only

14 did the DAB issue its February 15, 2019 determination long after its deadline for

15 doing so, but its Appeal Council also issued a determination on February 27, 2019

16 overturning the portion of ALJ Cianci's decision that was favorable to Agendia for

17 four of the 231 Medicare beneficiaries.  Plaintiff's Statement, ¶ 25.

18 IV.  **ARGUMENT**

19     A.  **Standard and Availability of Judicial Review.**

20     As indicated above, under 42 U.S.C. section 1395ff(b)(1)(A), judicial review

21 is permitted of the DAB's final decisions to the same extent it is available under

22 Section 405(g) of Title 42.  Pursuant to Section 405(g), judicial review is governed

23 by the provisions of the APA at 5 U.S.C. section 706.  *See Int'l Rehabilitative Scis.,*

24 *Inc. v Sebelius*, 688 F.3d 994, 999 (9th Cir. 2012), which involved judicial review of

25 a Medicare coverage decision by the Council, but did not involve the specific issues

26 raised here.

27     Under Section 706, judicial review extends to determining whether the final

28 agency's decision, findings, and conclusions are:

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1.      Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

2.      Contrary to constitutional right, power, privilege, or immunity;

3.      In excess of statutory jurisdiction, authority, or limitations;

4.      Without observance of procedure required by law; or

5.      Unsupported by substantial evidence based on the record as a whole.

Of particular importance here, where there are questions of law or regulation that are controlling, and the DAB has no authority to resolve such questions, an appellant need not go through the DAB's Appeals Council before going to court. Instead, the appellant may request expedited access to judicial review. 42 U.S.C. § 1395ff(b)(2)(A). To assure that access is expedited, Congress has required the DAB to make a "prompt determination" when such expedited access is requested. 42 U.S.C. § 1395ff(b)(2)(B). And, if the DAB fails to act on a request within 60 days of receiving it, the appellant may seek review without such a determination having been made. 42 U.S.C. § 1395ff(b)(2)(C)(i)(II).

## B.   <u>Jurisdiction</u>

The Secretary will argue that the Court lacks jurisdiction to resolve the legal issues presented because the DAB rejected Agendia's requests for expedited access to judicial review of the two ALJ decisions on February 15, 2019. Agendia e-filed its two requests on November 6, 2018, triggering the statutory 60-day time period. In its February 6 and 15, 2019 determinations, the DAB ignores this critical fact. Instead, the DAB, without explanation, deems the requests for expedited access to judicial review to have been received on February 6, 2019, rather than November 6, 2018. As a result, the DAB does not even discuss whether its February 15, 2019 decision was timely issued under the governing statute, 42 U.S.C. section 1395ff(b)(2)(B) – 60 days after receipt.

At this point in the proceedings, Agendia can only assume that the Secretary will assert that the two November 6, 2018 e-filed requests for expedited access did

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

not make their way to the DAB "review entity" until sometime after December 16, 2018, which would arguably make its February 15, 2019 decision timely. In other words, while Agendia's date of filing is undisputed, the Secretary must have some reason to try to argue the 60-day statutory period is not mandatory or should be excused in this case to allow for a 40-day delay. Neither assertion should be accepted. The language of the statute is mandatory – the review entity "shall" make a determination on the request in writing within 60 days of receipt. And, there is no good cause relief allowed in the statute or elsewhere.

Moreover, as discussed below, the fact that the DAB unilaterally and without explanation has created a date of receipt, which is within 60 days of February 15, 2019, does not allow the DAB to assert or keep jurisdiction over either of the ALJ appeals. Once the DAB failed to act timely on the requests for expedited access to judicial review, it lost jurisdiction over both appeals.

## C. Jurisdiction Exists to Decide the Collateral Legal Issues Regardless of Whether 42 U.S.C. Section 1395ff(b)(2)(C)(i)(II) Applies.

The two purely legal issues to be decided in this case are (1) whether the delegation of authority to MACs is constitutional; and (2) whether LCD L32288 and the MAC's other policies are enforceable in light of the fact that they were not enacted as regulations, as required by 42 U.S.C. section 1395hh.

Because these legal issues are collateral to the underlying merits of the two appeals at issue, further exhaustion of administrative remedies may be deemed waived by the Court under well-established case law. *See Powderly v. Schweiker*, 704 F.2d 1092, 1095 (9th Cir. 1983) (citing *Daniel Freeman Memorial Hospital v. Schweiker*, 656 F.2d 473, 476 (9th Cir. 1981)) for the proposition that mandamus jurisdiction is not precluded by the failure to exhaust administrative remedies in a Medicare dispute where the plaintiff is seeking to vindicate an interest in procedural regularity, such as whether a Medicare policy was invalid because it was not enacted under the appropriate rulemaking requirements. This principle was recently applied

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

14

1   to allow jurisdiction over a Medicare rulemaking issue even in the context of a

2   specific statutory preclusion of review.  *See Yale New Haven v. Azar*, Civ. No. 3:18-

3   CV-1230 (JCH), 2019 U.S. Dist. LEXIS 124628 (D.D.C. July 25, 2019).

4       Similarly, where, as here, a Medicare supplier of services has presented its

5   legal challenges to the Secretary and the Secretary's decision makers lack authority

6   to decide the issues, a court may deem exhaustion waived where the issues are

7   collateral to the claims in dispute.  *See Family Rehab, Inc. v. Azar*, 886 F.3d 496,

8   501-04 (5th Cir. 2018) (finding constitutional issues to be collateral to the plaintiff's

9   Medicare claims).  Here, Agendia is asking the Court to resolve legal issues that will

10  allow the resolution of the underlying Medicare claims to proceed in a manner that

11  is consistent with the Constitution and the procedural requirements of the Medicare

12  Statutes.

13      Thus, even if the Court were to decide Agendia did not exhaust all

14  administrative remedies in this matter, it could excuse full exhaustion to address the

15  two legal issues that are so critical to the resolution of the two Medicare ALJ

16  decisions.

17      **D.    The Delegation Issue.**

18      The delegation issue in this case is the same as the delegation issue resolved

19  by this Court in the related case, 19-cv-00074, in the Court's October 29,2019 order.

20  The Court rejected the unlawful delegation challenge on the grounds that the MAC

21  does not occupy a position of authority where the agency is powerless to overrule its

22  decisions.  The ALJ and the Appeals Council are free to disregard the LCD provided

23  they explain the reasons why the policy was not followed.  Oct. 29, 2019 Order,

24  ECF No. 31, page 11 of 18.

25      Rather than repeat the arguments made in the previous case, Agendia

26  respectfully asks the Court to consider the following points that are not discussed in

27  the Court's previous ruling in deciding the delegation issue in this case.

28      First, while it is true that the ALJs and the Appeals Council may disregard the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

15

MACs' policies, as the ALJ did in the previous case, the ALJs did not do so in the two administrative appeals that are the subject of the instant lawsuit.  Rather, they gave them substantial deference causing the two ALJ's to deny coverage for all of the tests performed except for those furnished on behalf of four beneficiaries.  Thus, the MACs' policy decisions were followed and enforced.

Second, this same binding effect of the LCDs is true in all of the many administrative appeals that do not go further than the initial and redetermination stages of the process, where the LCDs are binding on the decision makers because the decision makers are employed by the MACs.  And unless appealed, these determinations are binding on the suppliers and other appellants.  *See* 42 C.F.R. §§ 405.928 and 405.958.

Thus, in effect, Congress has empowered MACs to unilaterally and prospectively make the law and force it upon others.  In *Texas v. United States*, 300 F. Supp. 3d 810, 846 (N.D. Tex. 2018), the Court concluded that such a result violates the non-delegation doctrine even though CMS maintains and exercises complete authority to review the private contractor's determinations.

Moreover, in *Texas v. United States*, 300 F. Supp. 3d at 847-48, the court invalidated the delegation of authority to a private party in that matter even though the private party was not tasked with regulating business competitors.  The court held that even if the private contractor is not biased this does not "purge the legislative delegation of constitutional infirmity."  Article I's Vesting Clause is a "structural provision that prohibits legislative delegation with or without proof of an additional constitutional harm."  The "legislative delegation itself is the harm."

### E.   The MAC Policies May Not Be Implemented Here, Because They Were Not Promulgated as Regulations, and, thus, the ALJs Acted Without Observance of the Procedure Required by Law.

As discussed above, under 42 U.S.C. sections 1395hh(a)(2) and (a)(4), Congress prohibits any rule, requirement or other statement of policy that

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

establishes or changes any substantive legal standard governing the scope of Medicare benefits from being implemented unless it is promulgated by the Secretary using the procedures required for enacting regulations.  Such rulemaking also applies to a regulation that includes a provision that was not the "logical outgrowth" of a proposed rule.  This means such requirements must be enacted pursuant to APA notice and comment rulemaking requirements under 5 U.S.C. section 553 before they may be implemented.

This issue was also addressed by the Court in its October 29, 2019 order in the previous case.  Thus, rather than repeating its previous arguments, the Court requests the Court to follow its previous ruling on this same issue and to hold once again that LCD L32288 and the MAC's other policies disallowing coverage for Agendia's testing are invalid and unenforceable because they were not enacted as regulations, as required by 42 U.S.C. section 1395hh.[7]

### F.    The ALJ's February 15 and 27, 2019 Decisions Are *Ultra Vires*

Because both ALJ Cianci and ALJ Bartlett relied on LCD L32288 to deny coverage for Agendia's testing, and because LCD L32288 is unenforceable and invalid, the Court should remand the respective administrative appeals to the two ALJs for further proceedings as it did in the previous case.  And, most respectfully, the Court should deem void and invalid the DAB's "Review Entity's" February 15, 2019 determination rejecting the request for expedited access to judicial review, and the Appeals Council's February 27, 2019 "Own Motion and Decision" reversing ALJ Cianci's ruling in favor of Agendia for four of the 231 Medicare beneficiaries.

---

[7]  During oral argument, counsel for the Secretary cited and relied on the process added by Congress in December 2016, 42 U.S.C. section 1395y(*l*)(5), to avoid the impact of 42 U.S.C. section 1395hh.  However, the policies at issue here were enacted by the MAC in 2011, without going through the processes required by Section 1395hh or newly added Section 1395y(*l*)(5).  In any event, if Congress intended to create an exception for LCDs, it would have done so in Section 1395hh, as it did for NCDs.

17

1   Neither the DAB review entity nor the Appeals Council had the authority to

2   make determinations regarding any aspect of the two administrative appeals at issue

3   once the DAB failed to act timely on the two requests for expedited access to

4   judicial review.  As discussed above, Agendia timely requested expedited access to

5   judicial review of ALJ Cianci's October 12, 2018 decision on November 6, 2018.

6   Because the DAB failed to make a timely determination on the request and because

7   Agendia timely filed this lawsuit seeking judicial review of the ALJ's decision and

8   ALJ Bartlett's decision, the Appeals Council lost jurisdiction over both decisions

9   pending further review by this Court.

10   No statute or regulation allows for the contemporaneous, piecemeal resolution

11   of Medicare appeals by a reviewing court and the DAB.  Either an appeal is before

12   the Court or it is before the DAB.  The same administrative appeal may not be

13   pending at the same time in two different forums.  If and when the Court remands

14   the matters to the ALJs for further proceedings, and once those proceedings are

15   completed, the DAB's Appeals Council may decide whether to review the outcome

16   of the two appeals on its own motion or upon the request of Agendia.

17   **V.    CONCLUSION**

18   Based on the foregoing, Agendia requests the Court to remand the two

19   appeals to the ALJs for further proceedings in light of the Court's rulings on the two

20   legal issues discussed above.

21

22   Dated:  November 18, 2019          HOOPER, LUNDY & BOOKMAN, P.C.

23

24                                     By:  _____s/_____

25                                          PATRIC HOOPER
                                       Attorneys for Plaintiff AGENDIA, INC.

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT
IMDB_WEB\01558\904\5892773.v1-11/15/19

1

## **PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3
4
5

    At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, Suite 1600, Los Angeles, CA 90067-2517.

6
7

    On November 18, 2019, I served true copies of the following document(s) described as **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as listed on the Court's ECF Service List.

8
9
10

    **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

11
12

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

13

    Executed on November 18, 2019, at Los Angeles, California.

14
15
16

                     s/
              PATRIC HOOPER

17
18
19
20
21
22
23
24
25
26
27
28

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181