NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
GRACE Y. PARK (Cal. Bar No. 239928)
Assistant United States Attorney
      Federal Building, Suite 7516
      300 North Los Angeles Street
      Los Angeles, California 90012
      Telephone: (213) 894-3551
      Facsimile: (213) 894-7819
      E-mail: Grace.Park@usdoj.gov
Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| AGENDIA, INC.,<br><br>                  Plaintiff,<br><br>                  v.<br><br>ALEX M. AZAR II, Secretary, Department of Health and Human Services,<br><br>                  Defendant. | No. SACV 19-0030 DOC (JDEx)<br><br>THE SECRETARY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date:  February 10, 2020<br>Hearing Time:  8:30 a.m.<br>Ctrm:          Ronald Reagan Federal Bldg.<br>               United States Courthouse<br>               411 West Fourth Street<br>               Santa Ana, CA 92701-4516<br>               Courtroom 9D<br><br>Hon. David O. Carter |

# **TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ...................................................................................1

II.   RELEVANT MEDICARE STATUTES, REGULATIONS, AND POLICY.........1

III.  STATEMENT OF UNDISPUTED FACTS........................................3

      A.    MolDX Program ..................................................................3

      B.    LCD L32288...........................................................................3

      C.    Agendia's Covered, Not Covered, and Discontinued Breast Cancer Laboratory Tests...................................................................4

      D.    Procedural History .............................................................4

            1.    October 12, 2018 ALJ Decision ("ALJ 1") .........................4

            2.    October 30, 2018, ALJ Decision ("ALJ 2") .......................5

            3.    The Review Entity's Denial of EAJR Review and Forwarding of the Actions to the Council ...............................................5

IV.   STANDARD OF REVIEW ....................................................................5

V.    ARGUMENT.............................................................................................6

      A.    The Court Lacks Subject Matter Jurisdiction over this Action....................6

            1.    The Court Lacks Subject Matter Jurisdiction over this Action Pursuant to 42 U.S.C. §§ 1395ff(b)(2)(C)(i)(II) and (ii)(II)..............7

            2.    Agendia Failed to Exhaust its Administrative Remedies Pursuant to 42 U.S.C. § 405(g), Made Applicable by 42 U.S.C. § 1395ff(b)(1)(A) ..............................................................9

            3.    Agendia's Other Bases for Asserting Subject Matter Jurisdiction Fail....................................................................11

      B.    Private-Party Development of LCDs do not Violate the Non-Delegation Doctrine ..............................................................13

      C.    LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh .........................................15

            1.    LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553.........................................................16

            2.    By Statute, LCDs do not "Establish" or "Change" a "Substantive Legal Standard"..................................................16

i

# TABLE OF CONTENTS (CONTINUED)

PAGE

3. By Statute, LCDs are Subject to Supplier Notice-and-Comment Pursuant to 42 U.S.C. § 1395y(l)(5)(D)................................................18

D. To the Extent the Court has Subject Matter Jurisdiction to Review the ALJ's Orders, They did not Violate 5 U.S.C. § 706 ...................................20

VI. CONCLUSION.........................................................................................................20

1

**TABLE OF AUTHORITIES**

2

PAGE

3 CASES

4 Allina Health Servs. v. Price,

5    863 F.3d 937 (D.C. Cir. 2017) ...................................................................18

6 Anderson v. Liberty Lobby, Inc.,

7    477 U.S. 242, 106 S.Ct. 2505 (1986)...........................................................6

8 Arbaugh v. Y&H Corp.,

9    546 U.S. 500, 126 S.Ct. 1235 (2006)...........................................................7

10 Azar v. Allina Health Servs.,

11    139 S.Ct. 1804 (2019)..................................................................passim

12 Barron v. Reich,

13    13 F.3d 1370 (9th Cir. 1994) ......................................................................12

14 Califano v. Sanders,

15    430 U.S. 99, 97 S.Ct. 980 (1977)................................................................9

16 Celotex Corp. v. Catrett,

17    477 U.S. 317, 106 S.Ct. 2548 (1986).......................................................5, 6

18 Dunn & Black, P.S. v. United States,

19    492 F.3d 1084 (9th Cir. 2007) ....................................................................12

20 Erringer v. Thompson,

21    371 F.3d 625 (9th Cir. 2004) ............................................................13, 16, 17

22 H. Babaali, M.D. Med. Inc. v. Hargan,

23    CV 18-0198 GW (PLAx) (Dkt. 42, Court's Order of April 16, 2018)........................11

24 HCSC-Laundry v. United States,

25    450 U.S. 1, 101 S.Ct. 836 (1981).................................................................20

26 Heckler v. Ringer,

27    466 U.S. 602, 104 S.Ct. 2013 (1984)...........................................................12

28

In re Brazier Forest Prod., Inc.,
   921 F.2d 221 (9th Cir. 1990) ...................................................................6

Johnson v. Reilly,
   349 F.3d 1149 (9th Cir. 2003) ...............................................................12

Johnson v. Shalala,
   2 F.3d 918 (9th Cir. 1993) .....................................................................10

Kokkonen v. Guardian Life Ins. Co. of Am.,
   511 U.S. 375, 114 S.Ct. 1673 (1994).......................................................6

Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,
   858 F.2d 1376 (9th Cir. 1988) ...........................................................6, 10

Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,
   210 F.3d 1099 (9th Cir. 2000) .................................................................6

Pit River Home & Agr. Co-op. Ass'n v. United States,
   30 F.3d 1088 (9th Cir. 1994) .................................................................12

RadLAX Gateway Hotel, LLC v. Amalgamated Bank,
   566 U.S. 639, 132 S. Ct. 2065 (2012)....................................................20

Ramtin Massoudi MD Inc. v. Azar,
   No. CV 18-1087 CAS (JPRx), 2018 WL 1940398 (C.D. Cal. Apr. 23, 2018) ........9, 11

Rockwell Int'l Corp. v. United States,
   549 U.S. 457, 127 S.Ct. 1397 (2007).................................................6, 10

Shalala v. Ill. Council on Long Term Care, Inc.,
   529 U.S. 1, 120 S.Ct. 1084 (2000)....................................................10, 11

Subia v. Comm'r of Soc. Sec.,
   264 F.3d 899 (9th Cir. 2001) ...................................................................9

Sunshine Anthracite Coal Co. v. Adkins,
   310 U.S. 381, 60 S.Ct. 907 (1940)....................................................14, 15

V.N.A. of Greater Tift Cty., Inc. v. Heckler,
   711 F.2d 1020 (11th Cir. 1983) ..............................................................11

iv

STATUTES

5 U.S.C. § 553 ................................................................................15, 16, 21

5 U.S.C. § 706 ......................................................................................20, 21

28 U.S.C. § 1331 ..............................................................................11, 12, 13

28 U.S.C. § 1361 ..............................................................................11, 12, 13

42 U.S.C. § 405 ..................................................................................9, 12, 13

42 U.S.C. § 1395, et seq. ................................................................................1

42 U.S.C. § 1395ff .............................................................................passim

42 U.S.C. § 1395hh ...........................................................................passim

42 U.S.C. § 1395ii ..................................................................................12, 13

42 U.S.C. §§ 1395j-1395x ...............................................................................2

42 U.S.C. § 1395u ...........................................................................................1

42 U.S.C. § 1395x ...........................................................................................2

42 U.S.C. § 1395y .............................................................................passim


RULES

Federal Rule of Civil Procedure 56 ............................................................5, 6


REGULATIONS

42 C.F.R. § 400, et seq. ...................................................................................1

42 C.F.R. § 405, et seq. ...................................................................................9

42 C.F.R. § 405.940 .........................................................................................9

42 C.F.R. § 405.960 .........................................................................................9

42 C.F.R. § 405.990 ....................................................................7, 8, 9, 10, 20

42 C.F.R. § 405.1002 .......................................................................................9

42 C.F.R. § 405.1006 .......................................................................................9

42 C.F.R. § 405.1062 ...............................................................................15, 18

42 C.F.R. § 405.1014 .......................................................................................9

1

42 C.F.R. § 405.1100 ..............................................................................9

42 C.F.R. § 405.1102 ..........................................................................8, 9

42 C.F.R. § 410, et seq. ...........................................................................2

42 C.F.R. § 411.15 ..................................................................................2

42 C.F.R. § 426.400 ...................................................................10, 11, 14

6

7

OTHER AUTHORITIES

H.R. Conf. Rep. No. 108-391 ...........................................................2, 19

2003 U.S. Code Cong. and Adm. News .............................................2, 19

Webster's Dictionary ......................................................................16, 17

## <u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>

PLEASE TAKE NOTICE that on February 10, 2020, at 8:30 a.m., or as soon thereafter as it may be heard, defendant Alex M. Azar II, Secretary, Department of Health and Human Services ("Secretary") will, and hereby does, move this Court for an order granting summary judgment in his favor.  The motion will be made in the Ronald Reagan Federal Building and Courthouse before the Honorable David O. Carter, United States District Judge, located at 411 West Fourth Street, Santa Ana, CA 92701.

The Secretary brings the motion on the grounds that: (1) the Court lacks subject matter jurisdiction over this action; (2) private-party development of local coverage determinations do not violate the non-delegation doctrine; (3) local coverage determinations are not subject to notice-and-comment pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh; and (4) to the extent the Court has subject matter jurisdiction to review the administrative law judge's decisions, those decisions did not violate 5 U.S.C. § 706.

This motion is made upon this notice, the attached memorandum of points and authorities, the separate statement of undisputed facts and conclusions of law, the declaration of Grace Y. Park, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was held on November 7, 2019.

Dated: November 18, 2019            Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

 /s/ Grace Y. Park
GRACE Y. PARK
Assistant United States Attorney
Attorneys for Defendant

vii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Agendia, Inc.'s ("Agendia") complaint arises from the October 12, 2018 ("ALJ 1"), and the October 30, 2018 ("ALJ 2"), decisions by administrative law judges ("ALJs") partially denying and entirely denying, respectively, coverage for breast cancer laboratory tests, TargetPrint and BluePrint.  (See Dkt. 1, Complaint at ¶¶ 23-30).

Agendia contends that the Court has subject matter jurisdiction over this action because "the Medicare Appeals Council [("Council")] failed to rule on [Agendia's] requests for expedited access to judicial review [("EAJR review")] within the 60-day period allowed by law."  (Dkt. 1, Complaint at ¶ 1).

Agendia, however, filed its request for EAJR review to the wrong entity, and the 60-day clock accordingly never commenced.  See 42 U.S.C. § 1395ff(b)(2)(C)(i)(II) and (ii)(II).  As an accommodation to Agendia, the correct entity considered Agendia's EAJR request, declined to certify that request, and forwarded this action to the Council so that Agendia may complete the final level of administrative review to exhaust its claims.  The claims are pending before the Council today.

As Agendia failed to administratively exhaust its claims, the Court should dismiss this action for lack of subject matter jurisdiction.   Alternatively, should the Court determine that it has subject matter jurisdiction, Agendia's claims lack merit for the reasons below, and the Court should grant summary judgment in favor of defendant Alex M. Azar II, Secretary, Department of Health and Human Services ("Secretary").

### II.    RELEVANT MEDICARE STATUTES, REGULATIONS, AND POLICY

The Medicare Act is a federally funded and administered health insurance program for eligible elderly and disabled persons.  See 42 U.S.C. §§ 1395, et seq.; 42 C.F.R. §§ 400, et seq.   The Secretary administers Medicare through Centers for Medicare and Medicaid Services ("CMS").  CMS contracts the processing and payment of Medicare Part B claims to private entity Medicare contractors, known as Medicare Administrative Contractors ("MACs").  See 42 U.S.C. § 1395u(a).  Medicare Part B authorizes payments

1

for a wide range of items and services, see 42 U.S.C. §§ 1395j-1395x; 42 C.F.R. § 410, et seq., including diagnostic tests, 42 U.S.C. § 1395x(s)(3), but excludes payment for items and services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A); see 42 C.F.R. § 411.15(k)(1).

When deciding whether to pay for a Medicare Part B item or service, MACs rely on national coverage determinations ("NCDs") and local coverage determinations ("LCDs").

An NCD is "a determination by the Secretary with respect to whether or not a particular item or service is covered nationally" under Medicare Part B. 42 U.S.C. § 1395ff(f)(1)(B). When the Secretary promulgates an NCD, the NCD is subject to a 30-day period for public notice-and-comment. See 42 U.S.C. § 1395y(l)(3)(B).

An LCD is "a determination by a [MAC] under [] part B [] respecting whether or not a particular item or service is covered on an intermediary- or carrier-wide basis in accordance with section 1395y(a)(1)(A) of this title." 42 U.S.C. § 1395ff(f)(2)(B) (emphasis added). 42 U.S.C. § 1395y(a)(1)(A) provides: "[N]o payment may be made under [] part B for any expenses incurred for items or services which [] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

LCDs were first approved by Congress and added to the Medicare Act statute in 2003. See H.R. Conf. Rep. No. 108-391 (2003); 2003 U.S. Code Cong. and Adm. News, p. 1808. When Congress implemented LCDs in 2003, it provided that the "Secretary shall develop a plan to evaluate new local coverage determinations to determine which determinations should be adopted nationally." 42 U.S.C. § 1395y(l)(5)(A) (2003). Because LCDs are precursors of future NCDs, Congress did not include any notice-and-comment for LCDs in 2003, see id., but to the extent LCDs were later adopted as NCDs, those newly adopted NCDs would be subject to 30-day public notice-and-comment. See 42 U.S.C. § 1395y(l)(3)(B). In 2016, with respect to LCDs, Congress added a 45-day notice-and-comment period for suppliers like Agendia that is available on MAC's and CMS's websites (rather than the public at large). See 42 U.S.C. § 1395y(l)(5)(D) (2016)

2

("The Secretary shall require each [MAC] that develops a [LCD] to make available on the Internet website of such contractor and on the Medicare Internet website, at least 45 days before the effective date of such determination," "[h]yperlinks to the proposed determination and a response to comments submitted to the contractor with respect to such proposed determination").

## III.   STATEMENT OF UNDISPUTED FACTS[1]

### A.   MolDX Program

The Molecular Diagnostic Services Program ("MolDx") "may provide coverage for promising, but unproven diagnostic tests contingent on the submission of plans to conduct a clinical study that will generate additional evidence to support their safety, diagnostic performance, and most importantly, clinical utility."  (SUF 2).

The MAC "must review all test/assay clinical information to determine if a test meets Medicare's reasonable and necessary requirement."  (SUF 3).  "Labs must submit a comprehensive dossier on each new test/assay prior to claim submission."  (Id.).  The MAC "will only cover and reimburse tests that demonstrate analytical and clinical validity, and clinical utility."  (Id.).  "Prior to this tech assessment and published coverage determination, [the MAC] will consider all tests investigational and therefore, not a covered service."  (Id.).

### B.   LCD L32288

There were two versions of LCD L32288 in effect during the dates of service at issue in this case.  The earlier version was effective from September 21, 2012, until April 25, 2013.  (See SUF 4).  The earlier version of LCD L32288 states: "This policy confirms 'non-coverage' for all molecular diagnostic tests [] that are not explicitly covered by a

---

[1] Because Agendia did not administratively exhaust its claims, any contention that the Secretary failed to provide a complete certified administrative record is not well taken. A certified administrative record exists solely for the portion appealed by the qualified independent contractor ("QIC") in ALJ 1, docket no. M-19-679.  (See infra at § III.D.1; Statement of Uncontroverted Facts ("SUF") 1).  On November 5, 2019, the Secretary provided an unofficial administrative record for ALJ 2, docket no. M-19-363, which is lodged with the Court concurrently with the instant motion.  (See infra at § III.D.2; see also Notice of Lodging of Unofficial Administrative Record ("UAR") (file concurrently)).

[NCD], a [LCD], a coverage article published by [the MAC] and excluded per MolDx Exempt Tests published on the [MAC's] website." (Id.).

The later version of LCD L32288 was effective from May 10, 2013, until it was retired on September 14, 2013. (See SUF 5). The later version – before it was retired – provides, "tests not covered due to benefit category or statutory exclusion provisions will not be listed in this LCD." (Id.).

**C.  Agendia's Covered, Not Covered, and Discontinued Breast Cancer Laboratory Tests**

In addition to BluePrint and TargetPrint, Agendia had a third breast cancer laboratory test, MammaPrint, which was presumptively covered under LCD L32288. (See SUF 6). BluePrint is presumptively not covered under LCD L32288. (See SUF 7). Agendia "stopped using TargetPrint in 2013." (SUF 8).

**D.  Procedural History**

**1.  October 12, 2018 ALJ Decision ("ALJ 1")**

Between March 14, 2013, and October 2, 2013, Agendia submitted claims for coverage of BluePrint and TargetPrint, which were denied by the MAC upon redetermination. (See SUF 9). On reconsideration, the QIC upheld the MAC's unfavorable redetermination decision. (See id.).

On October 12, 2018, the ALJ issued a partially favorable decision reversing the unfavorable decision as to four beneficiaries, i.e., patients, but denying coverage for the remaining 227 beneficiaries. (See SUF 10).

To the extent ALJ 1 was favorable as to the four beneficiaries, on December 6, 2018, the QIC sought Council review. (See SUF 11). The Council assigned docket no. M-19-679 to the QIC's request. (See SUF 12). On February 27, 2019, the Council reversed the favorable portion of the ALJ's decision. (See SUF 13). Agendia did not seek district court review of that February 27, 2019, decision. (See generally SUF 14).

To the extent ALJ 1 was unfavorable as to the 227 beneficiaries, on November 6, 2018, Agendia e-filed a request for EAJR review to the Council. (See SUF 15). The

4

Council assigned docket no. M-19-362 to that request for EAJR review.  (See SUF 16).

As an accommodation to Agendia, the review entity – an entity that is not the Council –

docketed the November 6, 2019, EAJR review request to itself on December 31, 2018,

and assigned docket no. A-19-35 to that request.  (See SUF 17).

### 2. October 30, 2018, ALJ Decision ("ALJ 2")

Agendia submitted claims for coverage of BluePrint and TargetPrint, which were

denied by the MAC upon redetermination, and then denied by the QIC.  (See SUF 18).

On October 30, 2018, the ALJ issued a decision affirming the QIC's denial of coverage

for all beneficiaries.  (See SUF 19).

On November 6, 2018, Agendia e-filed a request for EAJR review to the Council.

(See SUF 20).  The Council assigned docket no. M-19-363 to that request for EAJR

review.  (See SUF 21).  As an accommodation to Agendia, the review entity – an entity

that is not the Council – docketed the November 6, 2019, EAJR review request to itself on

February 1, 2019, and assigned docket no. A-19-51 to that request.  (See SUF 22).

### 3. The Review Entity's Denial of EAJR Review and Forwarding of the Actions to the Council

On February 6, 2019, the review entity for EAJR review consolidated Agendia's

requests for EAJR review.  (See SUF 23).  On February 22, 2019, the review entity

declined to certify Agendia's requests EAJR review, (See SUF 24), and forwarded A-19-

35 and A-19-51 to the Council, where they remain pending today as M-19-362 and M-19-

363.  (See SUF 25).

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) authorizes the granting of summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  "[A] party seeking summary judgment always

bears the initial responsibility of [] demonstrat[ing] the absence of a genuine issue of

material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

When the nonmoving party has the burden of proof at trial, the moving party need only

"point[] out" "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. at 2554. "[T]he moving party need not produce affirmative evidence of an absence of fact to satisfy its burden." In re Brazier Forest Prod., Inc., 921 F.2d 221, 223 (9th Cir. 1990). Once the moving party carries his initial burden, the nonmoving party "may not rest upon mere allegation or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000) (once the moving party carries his initial burden, "the nonmoving parties [] had an obligation to produce any evidence in response").

## V.   ARGUMENT

### A.   The Court Lacks Subject Matter Jurisdiction over this Action

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (internal citations omitted).

Federal subject matter jurisdiction must exist at the time the action is commenced. See Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473, 127 S.Ct. 1397, 1409 (2007) (subject matter jurisdiction "depends on the state of things at the time of the action brought"); Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988) ("Subject matter jurisdiction must exist as of the time the action is commenced"). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y&H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 1240 (2006) (internal citation omitted).

//

//

1.     The Court Lacks Subject Matter Jurisdiction over this Action Pursuant to 42 U.S.C. §§ 1395ff(b)(2)(C)(i)(II) and (ii)(II)

Agendia asserts subject matter jurisdiction pursuant to 42 U.S.C. §§ 1395ff(b)(2)(C)(i)(II) and (ii)(II).  (See Dkt. 1, Complaint at ¶ 1).  However, Agendia failed to comply with the applicable statute and regulation in multiple ways, and the Court accordingly lacks subject matter jurisdiction over this action.  42 U.S.C. § 1395ff(b)(2)(B) provides:

> If, after or coincident with appropriately filing a request for an administrative hearing, the appellant requests a determination by the appropriate review entity that the Departmental Appeals Board does not have the authority to decide the question of law or regulations relevant to the matters in controversy and that there is no material issue of fact in dispute, [] such review entity shall make a determination on the request in writing within 60 days after the date such review entity receives the request.

First, Agendia contends that the "review entity" referenced in 42 U.S.C. § 1395ff(b)(2)(B), is the "Medicare Appeals Council."  (Dkt. 1, Complaint at ¶¶ 1, 13, 25, 26, 29, 30).  It is not. "[R]eview entity" means "an entity of up to three reviewers who are administrative law judges or members of the Departmental Appeals Board selected for purposes of making determinations under this paragraph."  42 U.S.C. § 1395ff(b)(2)(D); see 42 C.F.R. § 405.990(a)(1) ("review entity" means "an entity of up to three reviewers who are ALJs or members of the Departmental Appeals Board (DAB), as determined by the Secretary.").

Second, Agendia admits that "[o]n November 6, 2018, Agendia electronically filed with the Council a request for expedited access to judicial review for the claims denied by the ALJ [] pursuant to 42 U.S.C. section 1395ff(b)(2)(C)."  (Dkt. 1, Complaint at ¶¶ 25, 29; see SUFs 15, 20).  In other words, Agendia's own documents show that it e-filed its requests for EAJR review to the wrong entity, (see SUFs 15, 20), as https://dab.efile.hhs.gov/mod/ is the e-filing system for the Council – not the e-filing

//

//

system for the <u>review entity</u>, which e-filing system is https://dab.efile.hhs.gov/.[2, 3]

Agendia's EAJR request is also deficient because Agendia must request Council review before or at the time of its request for EAJR review.  <u>See</u> 42 C.F.R. § 405.990(b)(1)(i)(B) ("Conditions for making the expedited appeals request," include, among other things, "the party has filed a request for Council review in accordance with § 405.1102 and a final decision, dismissal order, or remand order of the Council has not been issued.").  But Agendia never made a request for Council review before, concurrently, or after its deficient November 6, 2018, requests for EAJR review to the Council.  (<u>See</u> <u>generally</u> SUFs 15, 20, 25, 28).

<u>Third</u>, Agendia contends that "[t]he Council failed to respond to Agendia's request within the 60-day period allowed by the controlling statute, 42 U.S.C. section 1395ff(b)(2)(C)," (Dkt. 1, Complaint at ¶¶ 25, 29; <u>see id.</u> at ¶ 1), thus entitling Agendia to "file for judicial review" in district court pursuant to 42 U.S.C. § 1395ff(c).  (<u>Id.</u> at ¶ 13; <u>see id.</u> at ¶ 31).  42 U.S.C. § 1395ff(b)(2)(C)(i)(II) provides that:  "If the appropriate review entity fails to make such determination within the [60-day] period [], then the appellant may bring a civil action."  42 U.S.C. § 1395ff(b)(2)(C)(i)(II).  But as the Council is not the "appropriate review entity," the 60-day period never commenced, and Agendia is not entitled to seek judicial review in district court.

Rather, as an accommodation to Agendia, the review entity – which is not the Council – docketed Agendia's November 6, 2018, requests for EAJR review to itself on

---

[2] The applicable regulation distinguishes filing a request for Council review as opposed to a request for EAJR review.  <u>See</u> 42 C.F.R. § 405.990(d)(1)(i) ("If a request for [] Council review is not pending, [the requester] file[s] a written EAJR request with the HHS Departmental Appeals Board with his or her request for [] Council review."); 42 C.F.R. § 405.990(d)(1)(ii) ("If an appeal is already pending [] before [] the Council, [requester] file[s] a written EAJR request with the HHS Departmental Appeals Board.").

[3] The Departmental Appeals Board Medicare Operations Division Electronic Filing System provides that https://dab.efile.hhs.gov/mod/ is used to "[f]ile a request for review with the Council," "[f]ile a request to escalate an appeal from an ALJ to the Council," or "[f]ile a request to withdraw the request for review or request to escalate an appeal to the Council."  (SUF 26).  In contrast, the Departmental Appeals Board Electronic Filing System provides that https://dab.efile.hhs.gov/ is used to "[f]ile various types of appeals with the Appellate Division, including an appeal of an ALJ decision."  (SUF 27).

December 31, 2018, and February 1, 2019.  (<u>See</u> SUFs 17, 22).  The requests for EAJR review were consolidated on February 6, 2019.  (<u>See</u> SUF 23).  Within the 60-day timeline, on February 22, 2019, the review entity declined to certify Agendia's requests for EAJR review.  (<u>See</u> SUF 24).  Pursuant to 42 C.F.R. § 405.990(i),[4] the review entity forwarded the matters to the Council, where they remain pending today.  (<u>See</u> SUF 25).

### 2. Agendia Failed to Exhaust its Administrative Remedies Pursuant to 42 U.S.C. § 405(g), Made Applicable by 42 U.S.C. § 1395ff(b)(1)(A)[5]

"[U]nder Part B, a claim arising under the Medicare Act may be brought in federal district court only after a plaintiff has obtained a 'final decision' from the Secretary by exhausting the [] four-step administrative review process." <u>Ramtin Massoudi MD Inc. v. Azar</u>, No. CV 18-1087 CAS (JPRx), 2018 WL 1940398, at *5 (C.D. Cal. Apr. 23, 2018); <u>see</u> 42 U.S.C. § 405(g); 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405, <u>et</u> <u>seq.</u>  The four levels of administrative review are: (1) a redetermination of the initial claim decision by the MAC, <u>see</u> 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940, <u>et</u> <u>seq.</u>; (b) a reconsideration by the QIC, <u>see</u> 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960, <u>et</u> <u>seq.</u>; (c) a hearing before the ALJ, <u>see</u> 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1002, 405.1006, 405.1014(b); and (d) a review by the Council.  <u>See</u> 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1100, 405.1102(a).  "The Supreme Court has stated that § 405(g) 'clearly limits judicial review to a particular type of agency action, a '<u>final</u> <u>decision</u> of the Secretary made <u>after</u> <u>a</u> <u>hearing</u>.'" <u>Subia v. Comm'r of Soc. Sec.</u>, 264 F.3d 899, 902 (9th Cir. 2001) (citing <u>Califano v. Sanders</u>, 430 U.S. 99, 108, 97 S.Ct. 980, 985 (1977)) (emphasis in original).

As set forth above, <u>supra</u> at § V.A.1, Agendia has not completed the last step of the

---

[4] 42 C.F.R. § 405.990(i)(1) provides: "[I]f the review entity does not certify a request for EAJR, the review entity [] forwards the request to [] the Council, which will treat it as a request for [] for Council review."

[5] Section 405(g) is made applicable to Medicare as modified by 42 U.S.C. § 1395ff(b)(1)(A), which provides that "any reference to the 'Commissioner of Social Security' or the 'Social Security Administration' in subsection (g) or (l) of section 405 of this title shall be considered a reference to the 'Secretary' or the 'Department of Health and Human Services', respectively."

1   four-step administrative review process.  Pursuant to 42 C.F.R. § 405.990(i), the review

2   entity forwarded the matters that are at issue in this action to the Council, where they

3   remain pending today.[6]  (See SUF 25).

4        Nor can Agendia contend that exhaustion should be waived.   To waive the

5   exhaustion requirement, the Ninth Circuit has articulated a three part test:  "The claim

6   must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in

7   its showing that denial of relief will cause irreparable harm (irreparability), and (3) one

8   whose resolution would not serve the purposes of exhaustion (futility)."   Johnson v.

9   Shalala, 2 F.3d 918, 921 (9th Cir. 1993).

10       With respect to the first prong, Agendia cannot demonstrate collaterality because,

11  fundamentally, Agendia's claims are merely one for entitlement to benefits.  (See Dkt. 1,

12  Complaint at Prayer for Relief) (seeking an order "requiring the Secretary to cover and

13  pay for the claims at issue as well as all other similar past, present and future claims of

14  Agendia").  And to the extent Agendia seeks to invalidate LCD L32288, this matter is not

15  "collateral" as ALJs and the Council are empowered to invalidate NCDs and LCDs over

16  the course of the administrative review process.  See 42 C.F.R. § 426.400, et seq. (setting

17  forth procedures for beneficiaries to challenge the validity of NCDs and LCDs).

18       With respect to the second prong, Agendia cannot demonstrate irreparability.  The

19  Supreme Court long ago recognized that requiring exhaustion "comes at a price, namely,

20  occasional individual, delay-related hardship."  Shalala v. Ill. Council on Long Term Care,

21  Inc., 529 U.S. 1, 13, 120 S.Ct. 1084, 1093 (2000).  But "[i]n the context of a massive,

22  ─────────────────
23       [6] To the extent the Council reversed ALJ 1 with respect to the four beneficiaries,
    see supra § III.D.1, the Court still lacks subject matter jurisdiction.  When Agendia filed
    the instant action on January 7, 2019, the Council had not yet rendered its decision as to
24  the four beneficiaries, which ultimately was made on February 27, 2019.  (See Dkt. 1,
    Complaint; SUFs 13, 14); see also Rockwell, 549 U.S. at 473, 127 S.Ct. at 1409 (subject
25  matter jurisdiction "depends on the state of things at the time of the action brought");
    Morongo Band of Mission Indians, 858 F.2d at 1380 ("Subject matter jurisdiction must
26  exist as of the time the action is commenced.").   Notably, while Agendia filed a new,
    separate complaint when the Council issued a final decision with respect to a related
27  August 22, 2018, ALJ decision, (compare Agendia Inc. v. Azar, SACV 19-0074 DOC
    (JDEx) (Dkt. 1, Complaint at ¶¶ 19-22) with Dkt. 1, Complaint at ¶¶ 19-22) (filed January
28  7, 2019), Agendia did not file a new complaint with respect to the Council's February 27,
    2019, unfavorable decision.  (See supra at § III.D.1).

complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justifie[; i]n any event, such was the judgment of Congress." Id.  In light of Congress' recognition of the downsides of exhaustion, it is illogical for that recognized hardship to constitute "irreparability."  And as recognized by multiple courts within this district, suppliers like Agendia assumed the risk of non-coverage determinations under Medicare Part B:

> [T]he problem of bankruptcy is endemic to a system which relies on non-profit, cash-poor providers which are wholly dependent on Medicare reimbursement. Were irreparable injury the only criteria for exercise of jurisdiction, the courts would be inundated by claims from other providers whenever they were determined by the intermediary to have been overpaid. Third, providers do not lack notice of these review provisions. Having chosen to operate within the system on a cash-poor basis, they take a knowing risk that an intermediary's determination might delay payment.

Massoudi MD Inc., 2018 WL 1940398, at *7 (citing V.N.A. of Greater Tift Cty., Inc. v. Heckler, 711 F.2d 1020, 1034 (11th Cir. 1983)); H. Babaali, M.D. Med. Inc. v. Hargan, CV 18-0198 GW (PLAx) (Dkt. 42, Court's Order of April 16, 2018, at 13) (same).

With respect to the third prong, as ALJs and the Council are empowered to invalidate NCDs and LCDs over the course of the administrative review process, see 42 C.F.R. § 426.400, et seq. (setting forth procedures for beneficiaries to challenge the validity of NCDs and LCDs), considering this action in district court would not serve the purposes of exhaustion.

Accordingly, because Agendia has not completed the last step of the four-step administrative review process, and because waiver of the exhaustion requirement is unwarranted, the Court lacks subject matter jurisdiction over this action.

### 3.   Agendia's Other Bases for Asserting Subject Matter Jurisdiction Fail

Agendia alternatively asserts subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.  (See Dkt. 1, Complaint at ¶ 1).  Neither provide a basis for the Court to

assert jurisdiction.[7]

The Court is not empowered to assert subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because "[n]o action against the United States, the [Secretary or the Department of Health and Human Services], or any officer or employee thereof shall be brought under section 1331 [] of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h) (made applicable to Medicare and modified by 42 U.S.C. § 1395ii); 42 U.S.C. § 1395ii; Heckler v. Ringer, 466 U.S. 602, 614-15, 104 S.Ct. 2013, 2021 (1984) ("42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act.") (internal citations omitted).

Nor may the Court assert jurisdiction pursuant to 28 U.S.C. § 1361. (See Dkt. 1, Complaint at ¶ 1). The Mandamus Act vests district courts with "original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy," and "is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994). "Even if the test is met, the district court still retains the discretion to deny relief." Johnson v. Reilly, 349 F.3d 1149, 1154 (9th Cir. 2003).

Here, Agendia does not identify what "clear," "certain," "ministerial" duty it seeks from the Secretary that is "free from doubt." (See generally, Dkt. 1, Complaint). Indeed, Agendia does not seek to compel agency action in this matter; rather, it seeks a decision

---

[7] Agendia's assertion of subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361 is also barred by sovereign immunity. See Pit River Home & Agr. Co-op. Ass'n v. United States, 30 F.3d 1088, 1098 n.4 (9th Cir. 1994) ("Section[] 1361 do[es] not waive the sovereign immunity of the United States"); Dunn & Black, P.S. v. United States, 492 F.3d 1084, 1088 n.3 (9th Cir. 2007) (Section 1331 "cannot be construed as authorizing suits [] against the United States, else the exemption of sovereign immunity would become meaningless").

that BluePrint and TargetPrint are entitled to coverage.  (See id. at Prayer for Relief) (seeking an order "requiring the Secretary to cover and pay for the claims at issue as well as all other similar past, present and future claims of Agendia"). And as this action is currently pending before the Council, mandamus is not appropriate since another "adequate remedy" is available.

For the reasons above, the Court lacks subject matter jurisdiction over this action pursuant to 42 U.S.C. §§ 1395ff(b)(2)(C)(i)(II) and (ii)(II), 42 U.S.C. §§ 405(g) and (h), 42 U.S.C. § 1395ff(b)(1)(A), 42 U.S.C. § 1395ii, 28 U.S.C. § 1331, 28 U.S.C. § 1361, and under any principles of waiver.

**B.**   **Private-Party Development of LCDs do not Violate the Non-Delegation Doctrine**

Agendia contends that "Congress and the Secretary have shirked their responsibility by delegating [development of LCDs] to private contractors." (Dkt. 1, Complaint at ¶ 4; see id. at ¶¶ 5, 6, 14, 32). Agendia is incorrect because: (1) LCDs are not legislative; and (2) MACs function subordinately to the Secretary.

As the Ninth Circuit held fifteen years ago, "the Medicare statute does contain a standard for approval of claims apart from the [Medicare Program Integrity Manual ("PIM")] provisions and the LCDs." Erringer v. Thompson, 371 F.3d 625, 630-31 (9th Cir. 2004) (emphasis in original).  "If the PIM provisions and resulting LCDs did not exist, [MACs] would still have an overarching duty to deny claims for items and services that are not 'reasonable and necessary' under the Medicare Act[, which is] 42 U.S.C. § 1395y(a)(1)(A)."  Id. at 631.  "This is not a case of pure delegation of authority to the agency to determine a standard."  Id.  "Instead, the PIM provisions simply interpret the 'reasonable and necessary' standard contained in the statute."  Id.

Because PIM provisions do not have any legislative force, it follows that the LCDs developed in accordance with the PIM guidelines do not have any legislative force as well. Simply put, Agendia cannot tenably claim that an LCD is "legislative," when all an LCD does is determine "whether or not a particular item or service is covered on an

intermediary- or carrier-wide basis under such parts, in accordance with the [reasonable and necessary standard]." 42 U.S.C. § 1395ff(f)(2)(B) (emphasis added). Agendia's contention that a MAC's preliminary, non-binding exclusion of one product (like BluePrint or TargetPrint) from one jurisdiction (like Noridian Jurisdiction JE) constitutes "legislative" activity, is not well taken. The Supreme Court long ago endorsed Congressional and Secretarial delegation to a private entity the authority to make such item-by-item and service-by-service determinations for a subcategory of medical products such as molecular diagnostic tests. "Delegation by Congress has long been recognized as necessary in order that the exertion of legislative power does not become a futility." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 398, 60 S.Ct. 907, 915 (1940). "[T]he effectiveness of both the legislative and administrative processes would become endangered if Congress were under the constitutional compulsion of filling in the details beyond the liberal prescription." Id. "[T]he burdens of minutiae would be apt to clog the administration of the law and deprive the agency of that flexibility and dispatch which are its salient virtues." Id.

Agendia's non-delegation argument also lacks merit because MACs "function subordinately to the [federal agency]" and the agency "has authority and surveillance over the activities of these [private] authorities." Sunshine Anthracite Coal, 310 U.S. at 399, 60 S.Ct. at 915. Agendia incorrectly contends that "ALJs and the Council may not set aside or review the validity of an LCD for purposes of Medicare claims appeals such as those here." (Dkt. 1, Complaint at ¶ 14). But 42 U.S.C. § 1395ff(f)(2)(A) provides that "[r]eview of any local coverage determination" "shall be reviewed by an administrative law judge," whose decision "shall be reviewed by the Departmental Appeals Board of the Department of Health and Human Services," which "constitutes a final agency action and is subject to judicial review." See also 42 C.F.R. § 426.400, et seq. (setting forth procedures for beneficiaries to challenge the validity of NCDs and LCDs).[8]

---

[8] Agendia takes issue with the fact that Medicare suppliers such as Agendia lack standing to challenge the validity of an LCD. (See Dkt. 1, Complaint at ¶ 14) ("Congress

Second, the fact that LCD L32288 is entitled to substantial deference pursuant to 42 C.F.R. § 405.1062, does not mean that private-party development of LCDs is contrary to "the fundamental constitutional principle requiring Congress to make laws and policies." (Dkt. 1, Complaint at ¶ 32). Indeed, the very regulation that Agendia relies on, 42 C.F.R. § 405.1062, (see id. at ¶ 14), clearly provides that "ALJs and attorney adjudicators and the Council are not bound by LCDs [] or CMS program guidance." (Emphasis added). But if the ALJ declines to defer to a given policy, the ALJ "must explain the reasons why the policy was not followed." Id.[9]

Finally, Agendia's contention that LCD L32288 has "effectively become a de facto NCD," (see Dkt. 1, Complaint at ¶ 34), is misleading at best. As an initial matter, LCD L32288 has been retired since 2013, (see SUF 5), so it has had no effect whatsoever, much less national effect, since 2013. And in a related case, Agendia relied on a complaint that demonstrated that the MolDx program, (much less retired LCD L32288), has been incorporated by only six Medicare jurisdictions covering 25 states, Agendia, SACV 19-0074 DOC (JDEx) (Dkt. 23-1, Exh. to Reply at ¶ 40, ECF No. 193), which belies Agendia's assertion of national scope.

As MACs do not function as legislators and as they operate subordinately to the Secretary, neither Congress nor the Secretary have impermissibly delegated any legislative functions to MACs in violation of the Constitution.

## C.     LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh

Agendia next contends that LCD L32288  is invalid because it was not promulgated

---

allows Medicare beneficiaries, but not Medicare providers or suppliers, including laboratories, to challenge the validity of LCDs") (citing 42 U.S.C. § 1395ff(f)(2) and (f)(5)). But a supplier's lack of standing is irrelevant to whether MACs "function subordinately to the [federal agency]" and the agency "has authority and surveillance over the activities of these [private] authorities." Sunshine Anthracite Coal, 310 U.S. at 399, 60 S.Ct. at 915.

[9] The Medicare Act statute, itself, underscores that LCDs are not legislative. 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II) provides LCDs "shall not be binding on the [QIC] in making a decision with respect to a reconsideration under this section," but "shall consider the local coverage determination in making such decision."

1  pursuant to notice-and-comment procedures under: (1) the Administrative Procedure Act

2  ("APA"), 5 U.S.C. § 553; or (2) the Medicare Act, 42 U.S.C. § 1395hh.  (See Dkt. 1,

3  Complaint at ¶ 33; see also id. at ¶¶ 4-6, 10, 11, 14, 21, 23).  Agendia is incorrect on both

4  counts.

5           1.    LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. §
                  553.

6

7           With respect to the APA, the Ninth Circuit under Erringer held that because the PIM

8  (and by extension, LCDs), are interpretive, they are not subject to notice-and-comment

9  under the APA.  See 371 F.3d at 630-33 (applying three-prong test); Azar v. Allina Health

10 Servs., 139 S.Ct. 1804, 1813 (2019) (APA exempts interpretive statements from notice-

11 and-comment under the APA).

12          2.    By Statute, LCDs do not "Establish" or "Change" a "Substantive Legal
                  Standard"

13

14          With respect to the Medicare Act, 42 U.S.C. § 1395hh(a)(2) does not apply to LCDs,

15 because LCDs do not "establish" or "change" a "substantive legal standard."  The statute

16 provides:

17              No rule, requirement, or other statement of policy (other than a
                national coverage determination) that establishes or changes a
18              substantive legal standard governing the scope of benefits, the
                payment for services, or the eligibility of individuals, entities, or
19              organizations to furnish or receive services or benefits under this
                subchapter shall take effect unless it is promulgated by the
20              Secretary by regulation under paragraph (1).

21          First, by the statute's plain language, an LCD does not "establish" or "change" a

22 substantive legal standard because an LCD determines "whether or not a particular item

23 or service is covered on an intermediary- or carrier-wide basis in accordance with section

24 1395y(a)(1)(A) of this title."  42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).  An LCD that

25 – by statute – determines coverage "in accordance with" a substantive legal standard

26 cannot "establish" or "change" that standard.  Webster's Dictionary defines "in accordance

27 with" as "in a way that agrees with or follows (something, such as a rule or request)."

28 Webster's Dictionary defines "establish" as "to institute (something, such as a law)

                                          16

permanently by enactment or agreement." (SUFs 29, 30).  In other words, an LCD cannot, by statute, "agree with" or "follow" a "rule or request" and simultaneously "institute" it.

Second, 42 U.S.C. § 1395y(a)(1)(A) provides the statutory "substantive legal standard" for LCDs – not the LCD itself.[10]  By the statute's plain language, an LCD determines "whether or not a particular item or service is covered on an intermediary- or carrier-wide basis in accordance with section 1395y(a)(1)(A) of this title."  42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).  42 U.S.C. § 1395y(a)(1)(A) provides the statutory substantive legal standard for LCDs:  "[N]o payment may be made under [] part B for any expenses incurred for items or services which [] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

Said another way, even if LCD L32288 were invalidated and the action remanded, the Council could still determine coverage for BluePrint or TargetPrint by determining whether these tests meet the "reasonable and necessary" requirement pursuant to the statute, 42 U.S.C. § 1395y(a)(1)(A).  See Erringer, 371 F.3d at 631 ("If the [] resulting LCDs did not exist, Medicare contractors would still have an overarching duty to deny claims for items and services that are not 'reasonable and necessary' under the Medicare Act") (citing 42 U.S.C. § 1395y(a)(1)(A)).

Third, assuming arguendo, LCDs are a "gap"-filling policy,[11] see Allina, 139 S.Ct. at 1817 ("when the government establishes or changes an avowedly 'gap'-filling policy, it can't evade its notice-and-comment obligations under § 1395hh(a)(2)"), the gap is filled by a procedural legal standard – not a substantive one subject to notice-and-comment

---

[10] In dicta, the Supreme Court in Allina surmised that "the government might have sought to argue that the policy at issue here didn't 'establis[h] or chang[e]' a substantive legal standard – and so didn't require notice and comment under § 1395hh(a)(2) – because the statute itself" compels the legal standard.  139 S.Ct. at 1804 (emphasis in original).  For the avoidance of any doubt, contrary to the government in Allina, the Secretary contends in this action that the statute, 42 U.S.C. § 1395y(a)(1)(A), itself compels the legal standard – not the LCD.

[11] Again, the Secretary contends in this action that the statute, 42 U.S.C. § 1395y(a)(1)(A), itself compels the statutory substantive legal standard.  It does not contend that LCDs are a gap-filling policy.

17

pursuant to 42 U.S.C. § 1395hh.  In <u>Allina</u>, the Supreme Court declined to adopt the definition of "substantive legal standard" set forth by the D.C. Circuit Court of Appeals. <u>See Allina</u>, 139 S.Ct. at 1814 ("We need not [] go so far as to say that the hospitals' interpretation, adopted by the court of appeals, is correct in every particular."); <u>Allina Health Servs. v. Price</u>, 863 F.3d 937, 943 (D.C. Cir. 2017).  But the <u>Allina</u> Supreme Court noted that Allina contended that "substantive legal standard" is meant to be distinguished from a "<u>procedural</u> legal standard."  <u>Allina</u>, 139 S.Ct. at 1811 (emphasis in original).

Here, the administrative history in this action shows that LCD L32288 is a <u>procedural</u> legal presumption that Agendia can, and has, overcome over the course of the administrative process, rather than a substantive legal standard subject to the notice-and-comment requirements of 42 U.S.C. § 1395hh.  Agendia itself admits that, over the course of the administrative process, "three different [ALJs] reached three different and contrary decisions based on applying the same [LCD L32288] to the very same circumstances." (Dkt. 1, Complaint at ¶ 4; <u>see also id.</u> at ¶¶ 19-30 (describing the fully favorable, partially favorable, and fully unfavorable ALJ proceedings)).  This is because, by statute, 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II) provides LCDs "shall <u>not be binding</u> on the [QIC] in making a decision with respect to a reconsideration under this section," but "shall consider the local coverage determination in making such decision." (Emphasis added).  Also, by regulation, 42 C.F.R. § 405.1062 provides that "ALJs and attorney adjudicators and the Council are <u>not bound</u> by LCDs [] or CMS program guidance." (Emphasis added).  But if the ALJ declines to defer to a given policy, the ALJ "must explain the reasons why the policy was not followed." (<u>Id.</u>).  Accordingly, to the extent LCD L32288 fills a "gap," LCD L32288 sets forth a procedural legal presumption that Agendia can and has overcome over the course of the administrative process; by statute and regulation, it is not a "substantive legal standard" subject to notice-and-comment pursuant to 42 U.S.C. § 1395hh.

3.  <u>By Statute, LCDs are Subject to Supplier Notice-and-Comment<br>Pursuant to 42 U.S.C. § 1395y(l)(5)(D)</u>

42 U.S.C. § 1395hh has no applicability to LCDs because the Medicare Act

18

provides a specialized notice-and-comment process for LCDs pursuant to 42 U.S.C. § 1395y(l)(5)(D).   42 U.S.C. § 1395hh requires a 60-day period for public notice-and-comment.  See 42 U.S.C. § 1395hh(b)(1).  NCDs, which are expressly excluded from 42 U.S.C. § 1395hh, require a 30-day period for public notice-and-comment.  See 42 U.S.C. § 1395y(l)(3)(B).  Two subsections down from 42 U.S.C. § 1395y(l)(3)(B), 42 U.S.C. § 1395y(l)(5)(D)(iii) provides a 45-day notice-and-comment period for suppliers like Agendia that is available on the MAC's and CMS's websites (rather than the public at large).  See 42 U.S.C. § 1395y(l)(5)(D)(iii) ("The Secretary shall require each [MAC] that develops a [LCD] to make available on the Internet website of such contractor and on the Medicare Internet website, at least 45 days before the effective date of such determination," "[h]yperlinks to the proposed determination and a response to comments submitted to the contractor with respect to such proposed determination").[12]

The statutory construction of 42 U.S.C. § 1395hh and 42 U.S.C. § 1395y, and the amendments to these statutes over time, demonstrate that LCDs are not subject to 60-day public notice-and-comment pursuant to 42 U.S.C. § 1395hh.  LCDs were first approved by Congress and added to the Medicare Act statute in 2003.  See H.R. Conf. Rep. No. 108-391 (2003); 2003 U.S. Code Cong. and Adm. News, p. 1808.  When implementing LCDs in 2003, Congress contemplated that LCDs were a means of developing future NCDs.  See 42 U.S.C. § 1395y(l)(5)(A) (2003) ("The Secretary shall develop a plan to evaluate new local coverage determinations to determine which determinations should be adopted nationally and to what extent greater consistency can be achieved among local coverage determinations.").  As precursors of future NCDs, Congress did not include any notice-and-comment for LCDs in 2003, see id., but to the extent LCDs were later adopted as NCDs, those newly adopted NCDs would be subject to 30-day public notice-and-comment.

In 2016, rather than not having any notice-and-comment of any kind for LCDs,

---

[12]  Indeed, suppliers like Agendia participate in the 45-day supplier notice-and-comment.  (See SUF 31).

Congress added the 45-day supplier notice-and-comment for the first time, <u>see</u> 42 U.S.C. § 1395y(l)(5)(D) (2016), within the same subsection that provides 30-day public notice-and-comment for NCDs. <u>See</u> 42 U.S.C. § 1395y(l)(3). "[I]t is a commonplace of statutory construction that the specific governs the general," <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 566 U.S. 639, 132 S. Ct. 2065, 2068 (2012), "particularly when the two are interrelated and closely positioned, both in fact being parts of [the same statutory scheme]." <u>HCSC-Laundry v. United States</u>, 450 U.S. 1, 6, 101 S.Ct. 836, 839 (1981). Given that the Medicare Act, over time, defined LCDs as precursors to NCDs and subsequently added specific notice-and-comment provisions targeted solely to LCDs, the statutory construction and legislative history demonstrate that Congress did not intend for 42 U.S.C. § 1395hh to apply to LCDs.

Accordingly, as LCDs do not "establish" or "change" a "substantive legal standard," and are subject to the 45-day supplier notice-and-comment pursuant to 42 U.S.C. § 1395y(l)(5)(D), LCDs are not subject to 60-day public notice-and-comment pursuant to 42 U.S.C. § 1395hh.

### D.   To the Extent the Court has Subject Matter Jurisdiction to Review the ALJ's Orders, They did not Violate 5 U.S.C. § 706

Finally, Agendia contends that ALJ 1 and ALJ 2 should be reversed, but provides no explanation why these decisions are erroneous. (<u>See</u> Dkt. 1, Complaint at ¶¶ 24, 28). Fatally, however, Agendia has not completed the last step of the four-step administrative review process. (<u>See</u> <u>supra</u> at § V.A.2). Pursuant to 42 C.F.R. § 405.990(i), the review entity forwarded the matters that are at issue in this action to the Council, where they remain pending today. (<u>See</u> SUF 25). Accordingly, as the Court lacks subject matter jurisdiction over this action, the Council – not the Court – should consider whether the October 12, 2018, and October 30, 2018, ALJ decisions are erroneous in any respect.

## VI.   CONCLUSION

For the reasons above, the Secretary respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction. In the alternative, the Secretary respectfully

requests that the Court grant summary judgment in his favor on the grounds that: (1) private-party development of local coverage determinations do not violate the non-delegation doctrine; (2) local coverage determinations are not subject to notice-and-comment pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh; and (3) the administrative law judges' October 12, 2018, and October 30, 2018, decisions did not violate 5 U.S.C. § 706.

Dated: November 18, 2019                    Respectfully submitted,

                                            NICOLA T. HANNA
                                            United States Attorney
                                            DAVID M. HARRIS
                                            Assistant United States Attorney
                                            Chief, Civil Division
                                            JOANNE S. OSINOFF
                                            Assistant United States Attorney
                                            Chief, General Civil Section

                                            /s/ *Grace Y. Park*
                                            GRACE Y. PARK
                                            Assistant United States Attorney
                                            Attorneys for Defendant

21