PATRIC HOOPER (State Bar No. 57343)
E-Mail: phooper@health-law.com
BRIDGET A. GORDON (State Bar No. 287098)
E-Mail: bgordon@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
Telephone: (310) 551-8111
Facsimile: (310) 551-8181

Attorneys for Plaintiff AGENDIA, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| AGENDIA, INC.,<br><br>  Plaintiff,<br><br>  vs.<br><br>ALEX AZAR, SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>  Defendant. | Case No. 8:19-cv-00030-DOC (JDEx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  February 10, 2019<br>Time:  8:30 a.m.<br>Crtrm.:  9D<br><br>The Hon. David O. Carter<br><br>Trial Date:     None Set |

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II. LCD L32288 AND THE MOLDX PROGRAM ESTABLISH MEDICARE COVERAGE FOR MOLECULAR DIAGNOSTIC TESTS ...................................................................................................... 1

III. SUBJECT MATTER JURISDICTION ..................................................... 3

    A. The Controlling Statute ................................................................... 3

    B. The Court Has Jurisdiction Under Section 1395ff(b)(2)(C) ............ 4

    C. Alternatively, the Court Has Jurisdiction Under 42 U.S.C. Section 1395ff(b)(1) ......................................................................... 6

    D. The Court Should Retain Jurisdiction over This Case in Any Event ... 8

IV. THE DELEGATION ISSUE ..................................................................... 9

V. THE ISSUE UNDER 42 U.S.C. SECTION 1395hh. .................................. 9

VI. CONCLUSION ......................................................................................... 12

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Smith v. Berryhill*,
    139 S. Ct. 1765 (2019) ............................................................................... 6, 7, 8

**Federal Statutes**

42 U.S.C.
    § 405(b) ............................................................................................................. 3, 6
    § 405(g) ............................................................................................................. 3, 6
    § 1395ff(a)(1)(C) .................................................................................................. 3
    § 1395ff(a)(3)(D) .................................................................................................. 3
    § 1395ff(b)(1) ................................................................................................... 3, 6
    § 1395ff(b)(1)(A) .............................................................................................. 3, 6
    § 1395ff(b)(2)(A) .................................................................................................. 3
    § 1395ff(b)(2)(B) .................................................................................................. 4
    § 1395ff(b)(2)(C) .................................................................................................. 4
    § 1395hh ........................................................................................................ 9, 11
    § 1395m-1(d)(5) .................................................................................................. 2
    § 1395m-1(f) ...................................................................................................... 11
    § 1395(*l*)(5)(A) ................................................................................................... 11
    § 1395(*l*)(5)(B) ................................................................................................... 11
    § 1395(*l*)(5)(C) ................................................................................................... 11
    § 1395y(*l*)(5)(D) ................................................................................................ 10

**Regulations**

42 C.F.R. § 1062(a) ....................................................................................................... 7

42 C.F.R. § 1062(c) ....................................................................................................... 7

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## I. INTRODUCTION

The Secretary contends this Court lacks subject jurisdiction to grant Agendia any relief because its challenge to the two Administrative Law Judge ("ALJ") decisions at issue is premature. According to the Secretary, Agendia must await the issuance of "final" decisions from the Departmental Appeals Board's ("DAB") Medicare Appeals Council ("Appeals Council") before the Court is empowered to act.

In the alternative, the Secretary contends that if the Court has jurisdiction to grant Agendia relief now, the Court should not invalidate the enforcement of the Local Coverage Determination ("LCD") at issue or the resulting MolDX program policy, because the development of these Medicare Administrative Contractor's ("MAC") policies is properly authorized by Congress, and the policies have been properly promulgated.

Agendia disagrees for the reasons discussed in its opening memorandum. In summary, Agendia contends this Court has jurisdiction to grant the relief requested because it has exhausted all of the administrative remedies it was required to have exhausted over the past six years to be able to obtain judicial review of the MAC policies applied by the ALJs in the two agency decisions at issue. And, Agendia thus contends that the Court should invalidate the ALJs' application of the LCD and the MolDX program policies in the two ALJ decisions at issue because private contractors may not enact Medicare coverage policies, and the policies at issue were not properly promulgated, as this Court determined in its October 29, 2019 order in the related case of *Agendia v. Azar*, 19-cv-00074, ECF No. 31.

## II. LCD L32288 AND THE MOLDX PROGRAM ESTABLISH MEDICARE COVERAGE FOR MOLECULAR DIAGNOSTIC TESTS

Before addressing the purely legal issues in dispute, Agendia responds to the Secretary's efforts to minimize the impact, scope and importance of LCD L32288 and the resulting MolDX program policy at issue. At page 15 of his memorandum

(ECF No. 29, page 23 of 29), the Secretary characterizes as "misleading at best" Agendia's assertion that the LCD policy has become "a de facto NCD." The Secretary explains that the LCD has not been in effect since 2013 and the MolDX program is only in effect in six MAC jurisdictions covering 25 states, purportedly belying any contention that the policy applied by the two ALJs is "national in scope."

The Secretary's assertions in this regard reveal a surprising lack of understanding of the Medicare Program or are an attempt to obscure the undisputed facts. As the record shows in this case, because Agendia is located in California, one of the 25 states in which the policy remains in effect, *all* of the laboratory testing ordered by *all* of the doctors for *all* of their patients residing throughout the Country has been denied Medicare coverage. The laboratory's location rather than the residency of the beneficiaries or their doctors determines whether the policy is applied by the ALJs. And, when a test is one of a kind, as here, the impact is national in scope.

Agendia's TargetPrint and BluePrint testing is "advanced diagnostic clinical laboratory" testing of the type that is furnished by a single laboratory, as Congress expressly acknowledges at 42 U.S.C. section 1395m-1(d)(5). In this case, the single laboratory is Agendia. The Medicare beneficiaries' doctors cannot obtain the test and its results from any other laboratory in the Country. As such, because LCD L32288 and the MolDX program deny Medicare coverage for such testing, the impact on Medicare beneficiaries is nationwide.

In any event, LCD 32288 was in effect when the testing at issue was furnished, which is why the ALJs deferred to it. Its progeny, the MolDX program, continues to be in full effect, as explained by the MolDX program's policy manual, available on line at: https://www.palmettogba.com/moldx. The program was "founded and directed" by the MAC's (Palmetto GBA's) Medical Director, Elaine Jeter, M.D., in 2011 to "establish a new policy" whereby all molecular diagnostic

2

tests were deemed to be non-covered by Medicare until MolDX made a positive determination of Medicare coverage. *See* Dr. Jeter's federal court complaint at ¶¶ 38-42, copy included in *Agendia v. Azar*, 19-cv-00074, ECF No. 23-1.

In the instant case, the ALJs deferred to LCD L32288 and the MolDX policies to deny Medicare coverage for testing ordered by the physicians of more than 400 Medicare beneficiaries located throughout the United States. Thus, such policies can hardly be considered a non-legislative, "preliminary, non-binding exclusion of one product . . . from one jurisdiction," as characterized by the Secretary. ECF No. 29, page 22 of 29.

### III. SUBJECT MATTER JURISDICTION

#### A. The Controlling Statute

Congress expressly authorizes suppliers of Medicare Part B services, such as Agendia, to obtain administrative and judicial review of initial determinations made by MACs pursuant to 42 U.S.C. section 1395ff(a)(1)(C). An "initial determination" consists of both the MAC's original denial of coverage/payment of particular claims and its redetermination of the same. 42 U.S.C. § 1395ff(a)(3)(D).

Thereafter, a supplier has specific "appeal rights," including the right to ask another MAC, known as a Quality Improvement Contractor ("QIC"), to reconsider the initial determination. The reconsidered determination is then reviewable by one of the Secretary's ALJs. The ALJ hearing process and judicial review then exists to the same extent it exists under 42 U.S.C. sections 405(b) and (g). 42 U.S.C. § 1395ff(b)(1)(A). Importantly, Section 1395ff(b)(1)(A) makes no mention of the DAB or the Appeals Council. Rather, it speaks only of the right to judicial review "after such hearing as is provided" in Section 405(g), an ALJ decision.

Pursuant to 42 U.S.C. section 1395ff(b)(2)(A), a supplier who has filed an appeal under Section 1395ff(b)(1) may obtain access to judicial review when a "review entity" on its own motion or at the request of the supplier determines that the DAB does not have the authority to decide the question of law or regulation and

there is no material issue of fact in dispute.

Congress requires such a request to be promptly decided. The DAB review entity must make its determination within 60 days of the receipt of the request for such review under Section 1395ff(b)(2)(B). If the review entity fails to act within 60 days, the supplier may bring a civil action within 60 days of the expiration of the 60-day period for the review entity to act. 42 U.S.C. § 1395ff(b)(2)(C).

### B. The Court Has Jurisdiction Under Section 1395ff(b)(2)(C)

In both the October 12, 2018 and the October 30, 2018 decisions, the ALJs informed Agendia that if it disagreed with the ALJ decision it "may file an appeal with the Medicare Appeals Council." AR at 3420 and UAR at 00001. Among the procedures for doing so is by electronic filing with the DAB. AR at 3422 and UAR at 00005.

On November 6, 2018, Agendia filed such appeals requesting expedited access to judicial review because Agendia was challenging the validity of LCD 32288 and the MolDX program on purely legal grounds. ECF No. 28-1, pages 2-6 of 24 and pages 9-13 of 24. That very same day, the DAB acknowledged receipt of the two appeals through an e-mail from "appeals@dab.efile.hhs.gov." ECF No. 28-1, pages 7 and 14. These two e-mail receipts acknowledge that "a new request for review" has been uploaded and docketed. Neither says anything about the Appeals Council.

After hearing nothing from the DAB following the expiration of the 60-day period for ruling on a request for expedited access to judicial review, Agendia filed the instant lawsuit on January 7, 2019. ECF. No. 1. Substantially thereafter, on February 6, 2019, the DAB issued a letter to counsel for Agendia consolidating the two requests for expedited access to judicial review. This February 6, 2019 letter bears the same DAB address as that listed on the November 6, 2018 requests. ECF No. 28-1, page 16 of 24.

Even though the requests for expedited access bear the identical addresses as

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

the address on the DAB letter consolidating the two requests and even though they are addressed to "Dear Judges," the Secretary argues that they were filed with the wrong DAB entity, because Agendia's November 6, 2019 requests included a single reference in the address line to the Appeals Council. And, the Secretary further points out a three letter distinction between two email addresses (https://dab.efile.hhs.gov/ and https://dab.efile.hhs.gov/mod/), neither one of which addresses requests for expedited access to judicial review, to argue that the requests were filed with the wrong entity. Secretary's memorandum, ECF No. 29, page 16 of 29, note 3.

Based solely on these facts and without providing any explanation as to why the DAB delayed its response to the November 6, 2018 requests until February 6, 2019, the Secretary asserts that the lack of the DAB's determination on the requests for expedited access to judicial review within 60 days of the filing of the November 6, 2019 requests did not trigger the statutory provision allowing Agendia to file its lawsuit within 60 days of the DAB's failure to respond and strips this Court of Jurisdiction over this action.

Rather than explaining why the DAB did not timely respond to the November 6, 2018 requests, the Secretary tries to defend the DAB's untimely response by arguing that November 6, 2018 requests were deficient and thus should essentially be ignored. However, this strategy misses the mark. The statute contains no exception for the DAB having to respond to a request for expedited access within 60 days if the DAB determines *after the fact* that the request is deficient in some manner. Regardless of the adequacy of the request, the DAB must make its determination within 60 days under the plain language of the statute. This is especially the case where, as here, it is not disputed that the DAB actually received the requests on November 6, 2018.[1]

---

[1] While the statute and the regulation refer to a DAB "review entity," nothing in the (footnote continued)

Thus, under these unique circumstances, the Court is respectfully requested to conclude that it has jurisdiction over this lawsuit, because the DAB review entity did not respond to the November 6, 2018 requests for expedited access to judicial review within 60 days.[2]

### C. Alternatively, the Court Has Jurisdiction Under 42 U.S.C. Section 1395ff(b)(1)

As discussed above, the administrative appeal and judicial review processes applicable to this case are the same as those applicable to Social Security recipients under 42 U.S.C. sections 405(b) and 405(g).  Both processes have a multi-step administrative appeal process followed by judicial review.  And, to facilitate this "process borrowing," any reference to the Commissioner of Social Security of the Social Security Administration in Section 405(g) shall be considered a reference to the "Secretary" or the "Department of Health and Human Services," respectively. 42 U.S.C. § 1395ff(b)(1)(A).

In *Smith v. Berryhill*, 139 S. Ct. 1765, 1773-74 (2019), the Supreme Court recently explained that this process leading up to judicial review contains first a "jurisdictional" requirement that claims be presented to the agency, and second, a "waivable" requirement that the administrative remedies be exhausted.  The second requirement may be waived not only by the agency, but it also may be waived by the courts.  139 S. Ct. at 1773.

In *Berryhill*, the Court was asked to resolve whether a dismissal by the Appeals Council after the claimant had received an ALJ hearing on the merits qualifies as a "final decision . . . made after a hearing" for purposes of allowing for

---

statute, regulation, or guidelines identify the "review entity" further.  And, as pointed out above, the ALJ decisions simply stated that if Agendia disagreed with the decisions, it could file an appeal with the Medicare Appeals Council.

[2] The facts are not actually in dispute regarding the filing and processing of the two requests.  Rather, the legal effect of the undisputed facts must be determined.

judicial review. In light of the text and context of the statute, and presumption in favor of reviewability of agency action, the Court concluded that such a dismissal did, indeed, meet the requirement for reviewability. 139 S. Ct. at 1773-74.

Thus, if, as contended by the Secretary here, Agendia's request for expedited access to judicial review is deficient and the DAB correctly and timely denied it, the DAB's ruling should nevertheless be considered a final decision of the Secretary, thus allowing for this Court to assert jurisdiction under the holding in *Smith v. Berryhill.*

Rather than addressing *Smith v. Berryhill*, the Secretary relies on cases decided prior to the Supreme Court's important decision largely involving situations in which the appellant/claimant did not go through an ALJ hearing before asking the court to excuse further exhaustion of remedies. *See* decisions cited by Secretary in her memorandum, ECF No. 29, pages 17-29.

In *Smith v. Berryhill*, the Court casts doubt about the continuing validity of these decisions by emphasizing the importance of a claimant exhausting his or her right to an ALJ hearing before seeking judicial review. However, the Court chose not to create a definition of Section 405(g) "for all seasons," because Mr. Smith had obtained an ALJ hearing on the merits, thus satisfying 405(g) using even a "relatively strict reading" of the statute. 139 S. Ct. 1775.

Also, it must be emphasized that Agendia, like Mr. Smith in *Smith v. Berryhill*, did not ignore the DAB following the receipt of the ALJ hearing decisions. Rather, knowing that the DAB, like the ALJs, must give "substantial deference to these policies" under 42 C.F.R. section 1062(a) and may not even review such policies in a claim appeal, 42 C.F.R. section 1062(c), such as that here, Agendia attempted to obtain judicial review as promptly as possible after having awaited ALJ hearings for many years due to no fault of Agendia.

In its opening brief, Agendia discussed why the delegation and promulgation issues are "collateral" to the merits of the underlying coverage dispute. And, the

fact that the DAB cannot invalidate or even review the merits of the policies at issue in a claim review such as this, clearly shows why Agendia's pursuing the challenge to the policies before the DAB is an exercise in futility.  The Secretary does not address this dilemma, choosing instead to point out that Medicare beneficiaries can challenge these policies through another appeal process that is not available to suppliers, such as Agendia.  Secretary's memorandum, ECF No. 9, page 19 of 29. This response simply highlights the need for this Court to assert jurisdiction in this case, as it did in the related Agendia case, notwithstanding the fact that Agendia has not yet received a final decision on the merits from the DAB.

### D. The Court Should Retain Jurisdiction over This Case in Any Event

Under the Court's ruling in *Smith v. Berryhill*, it is clear that at a minimum, this Court has the authority to determine whether Agendia's requests for expedited access to judicial review was valid.  In *Smith*, the Court expressly held that "there would be jurisdiction for a federal court to proceed to the merits" of the underlying dispute because "exhaustion itself is not a jurisdictional prerequisite."  139 S. Ct. at 1779.  However, the Court further held that a federal court "generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question."  *Id.*

Here, the DAB denied Agendia's requests for expedited access to judicial review.  However, the DAB referred the two ALJ decisions to the Appeals Council for consideration (ECF No. 29-2, page 39 of 41), and the Appeals Council has yet to rule on the appeals.  Thus, if the Court is inclined to delay ruling until the Appeals Council issues final decisions in the two cases, Agendia asks the Court to retain jurisdiction so that Agendia can obtain judicial review of the final decisions assuming such final decisions will be adverse to Agendia, which is likely.[3]

---

[3]  Despite the pending requests for expedited access to judicial review, the Appeals Council issued a decision regarding four of the 231 beneficiaries in ALJ Cianci's (footnote continued)

8

## IV. THE DELEGATION ISSUE

As Agendia conceded in its initial memorandum (ECF No. 26, pages 20-21 of 24), this Court concluded that the delegation at issue here did not violate Agendia's due process rights, because it was not a prohibited delegation of authority by Congress to a private contractor. Yet, Agendia asked the Court to consider additional points that the Court did not discuss in its previous ruling, including the fact that LCDs and MolDX policies are the final policies of the Secretary in those many matters where denied Medicare claims are not appealed. ECF No. 26, pages 20-21 of 24. In such situations Medicare policy will have been made and applied solely by a private contractor rather than by a government agency or official. Such un-appealed claim denials are unfortunately the rule rather than the exception.

## V. THE ISSUE UNDER 42 U.S.C. SECTION 1395hh

The Secretary continues to argue that LCD 32288 and the resulting MolDX program policies applied to Agendia in this case are valid and enforceable because they did not have to be enacted as Medicare regulations under 42 U.S.C. section 1395hh. As pointed out above, this Court rejected the Secretary's written and oral arguments on this issue in the related case on October 29, 2019. Nothing in the Secretary's memorandum in the instant case requires the Court to alter its previous conclusion.

In 2011, LCD 32288 and the MolDX program established a Medicare coverage policy stating that clinical laboratory tests that "have NOT been reviewed and approved through the process [the MolDX process] outlined in this policy will be considered investigational and therefore denied as not a covered service." UAR 00908 and AR at 3516. All of the 400-plus claims at issue here were denied pursuant to this policy. The Secretary, herself, treats them as Medicare "policies,"

---

case on February 27, 2019, reversing ALJ Cianci's favorable decision regarding these four beneficiaries.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

by requiring her government adjudicators (ALJs and the DAB) to give them "substantial deference." And, as pointed out above, the creator of the policy, Elaine Jeter, former medical director of Palmetto GBA, a MAC, calls it "a new policy" governing molecular diagnostic testing, the violation of which formed the basis for her False Claims Act lawsuit against a laboratory, which recently settled for millions of dollars. https://www.360dx.com/reimbursement/myriad-genetics-settles-improper-medicare-billing-complaint-91m. The Secretary would not have approved such a settlement if he did not believe it was based on an appropriate legal standard.

The fact that the MAC is purporting to interpret the "reasonable and necessary" provision of the Medicare Statute by establishing its policy does not mean the MAC has not created a substantive legal standard. New policies interpreting the Medicare Statutes are required to be enacted as regulations under Section 1395ff, as the Supreme Court held in *Allina.*

Characterizing the policy as being procedural in nature is a classic *post hoc* rationale, which cannot be used by the Secretary to avoid the rulemaking requirements governing the enactment of a regulation. The LCD and the MolDX policy do much more than establish a procedure for making a determination. The policy deems all molecular diagnostic tests *not approved* by the MolDX program to be investigational and not medically necessary or reasonable for the diagnosis or treatment of Medicare beneficiaries, which constitutes an important substantive policy decision. In fact, ALJ Bartlett concluded that "the tests did not comply with LCD L32288" based on the provided evidence, historical information and medical documentation. UAR 00021. This is not a procedural holding. It is a substantive holding based on LCD L32288.

As the Secretary's counsel orally argued in the related case, she now contends that Congress' December 2016 amendment to 42 U.S.C. section 1395y(*l*)(5)(D) is somehow relevant to a policy that was established by a MAC five years earlier. Secretary's memorandum, ECF No. 29, pages 27 and 28 of 29. The amendment

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
5899719.1

imposes requirements on MACs that were not used by the MACs to enact LCD L32288 or the MolDX program in 2011. And, because LCD L32288 and the MolDX program policy established a new legal standard for determining whether molecular diagnostic testing is covered by Medicare, the policy was required to have been enacted as regulations under the law in effect in 2011. The fact that Congress chose to allow MACs to enact new Medicare policies beginning in 2016 using procedures different from those required under Section 1395hh does not save policies enacted prior to 2016. And, more importantly, it does not mean that pre-2016 policies did not have to be enacted as Medicare regulations under section 1395hh.

Actually the 2016 amendment constitutes Congress' recognition of the need to rein in the previously-unchecked authority of the MACs. Under the amendment, the Secretary must develop a plan to evaluate new LCDs to determine if they should be enacted nationally; MACs must consult with one another to assure consistency; and the Secretary must serve as a center to disseminate information to MACs. 42 U.S.C. § 1395(*l*)(5)(A)(B) and (C). This newly mandated government scrutiny of MACs required by Congress is particularly noticeable for advanced diagnostic laboratory tests where the Secretary (rather than MACs) has been required to consult with an expert advisory panel no later than July 1, 2015 to obtain information regarding molecular diagnostic testing – a task previously left by Congress to the MACs. *See* 42 U.S.C. § 1395m-1(f). None of these new procedures was followed by the MACs in issuing LCD 32288 or the MolDX program policy.

The Secretary has provided the Court with no new reason for it to depart from its ruling in the related case regarding the application 42 U.S.C. section 1395hh in light of the Supreme Court's ruling in *Allina v. Azar*.

/ / /

/ / /

/ / /

11
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
5899719.1

## VI. CONCLUSION

Based on the foregoing, the Court is requested to deny the Secretary's motion for summary judgment.[4]

Dated: December 13, 2019    HOOPER, LUNDY & BOOKMAN, P.C.

By: _____s/_____
PATRIC HOOPER
Attorneys for Plaintiff AGENDIA, INC.

---

[4] As discussed above, if the Court chooses to delay ruling on the merits of the issues in question in the two ALJ cases until after the Appeals Council issues final decisions, Agendia requests the Court to retain jurisdiction pending the outcome of the Appeals Council's rulings.