NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
GRACE Y. PARK (Cal. Bar No. 239928)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-3551
     Facsimile: (213) 894-7819
     E-mail: Grace.Park@usdoj.gov
Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| AGENDIA, INC., <br><br>     Plaintiff, <br><br>     v. <br><br> ALEX M. AZAR II, Secretary, Department of Health and Human Services, <br><br>     Defendant. | No. SACV 19-0030 DOC (JDEx) <br><br> THE SECRETARY'S OPPOSITION TO AGENDIA'S MOTION FOR SUMMARY JUDGMENT <br><br> Hearing Date:  February 10, 2020 <br> Hearing Time:  8:30 a.m. <br> Ctrm:  Ronald Reagan Federal Bldg. <br>      United States Courthouse <br>      411 West Fourth Street <br>      Santa Ana, CA 92701-4516 <br>      Courtroom 9D <br><br> Hon. David O. Carter |

# **TABLE OF CONTENTS**

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.     INTRODUCTION ...........................................................................................1

II.    ADMINISTRATIVE PROCESS AND HISTORY ......................................1

    A.     Agendia, Inc. v. Azar, SACV 19-0074 DOC (JDEx) ("Related Litigation") ..................................................................................2

    B.     October 12, 2018, Decision ("Final Council Decision" and "ALJ 1").........3

    C.     October 30, 2018, Decision ("ALJ 2").........................................3

    D.     DAB's February 22, 2019, Decision Declining to Certify the EAJR Requests and Forwarding ALJ 1 and ALJ 2 to the Council.........................3

III.   ARGUMENT....................................................................................................4

    A.     The Court Lacks Subject Matter Jurisdiction over this Action....................4

        1.     The Court Lacks Subject Matter Jurisdiction Pursuant to 42 U.S.C. § 1395ff(b)(2) ........................................................5

        2.     Agendia Fails to Show that Exhaustion of its Administrative Remedies Should be Waived ...............................8

        3.     Agendia Fails to Show that Mandamus Relief Pursuant to 28 U.S.C. § 1361 is Warranted .................................10

        4.     Agendia Failed to Timely Seek District Court Review of the Final Council Decision ....................................12

    B.     Private-Party Development of LCDs does not Violate the Non-Delegation Doctrine ..................................................13

        1.     Agendia's New Arguments Regarding Non-Delegation Lack Merit .........................................................15

    C.     LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh ........................................17

        1.     LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553 .................................................17

        2.     By Statute, LCDs do not "Establish" or "Change" a "Substantive Legal Standard" .........................................17

        3.     By Statute, LCDs are Subject to Supplier Notice-and-Comment Pursuant to 42 U.S.C. § 1395y(l)(5)(D)..........................20

    D.     To the Extent the Court has Subject Matter Jurisdiction to Review ALJ 1 and ALJ 2, These do not Violate 5 U.S.C. § 706 ..............................22

ii

      E.       Remand is Inappropriate ............................................................................23

IV.    CONCLUSION..................................................................................................24

# TABLE OF AUTHORITIES

PAGE(S)

CASES

Allina Health Servs. v. Price,
    863 F.3d 937 (D.C. Cir. 2017) .................................................................. 19

Am. Clinical Lab. Ass'n v. Azar,
    931 F.3d 1195 (D.C. Cir. 2019) ................................................................ 23

Arbaugh v. Y&H Corp.,
    546 U.S. 500, 126 S.Ct. 1235 (2006) .......................................................... 4

Azar v. Allina Health Servs.,
    139 S.Ct. 1804 (2019) ...............................................................17, 18, 19

Barron v. Reich,
    13 F.3d 1370 (9th Cir. 1994) .................................................................. 11

Califano v. Sanders,
    430 U.S. 99, 97 S.Ct. 980 (1977) ............................................................... 7

Daniel Freeman Mem'l Hosp. v. Schweiker,
    656 F.2d 473 (9th Cir. 1981) .................................................................. 11

Dunn & Black, P.S. v. United States,
    492 F.3d 1084 (9th Cir. 2007) ................................................................ 11

Erringer v. Thompson,
    371 F.3d 625 (9th Cir. 2004) ..........................................................passim

Family Rehab., Inc. v. Azar,
    886 F.3d 496 (5th Cir. 2018) .................................................................... 8

H. Babaali, M.D. Med. Inc. v. Hargan,
    CV 18-0198 GW (PLAx) (C.D. Cal. 2018) ................................................ 9

HCSC-Laundry v. United States,
    450 U.S. 1, 101 S.Ct. 836 (1981) ............................................................. 21

Heckler v. Ringer,
    466 U.S. 602, 104 S.Ct. 2013 (1984)..................................................................passim
Johnson v. Reilly,
    349 F.3d 1149 (9th Cir. 2003) ........................................................................11
Johnson v. Shalala,
    2 F.3d 918 (9th Cir. 1993) .........................................................................8, 10
Kokkonen v. Guardian Life Ins. Co. of Am.,
    511 U.S. 375, 114 S.Ct. 1673 (1994)................................................................4
Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,
    858 F.2d 1376 (9th Cir. 1988) ........................................................................12
Pit River Home & Agr. Co-op. Ass'n v. United States,
    30 F.3d 1088 (9th Cir. 1994) ..........................................................................11
Powderly v. Schweiker,
    704 F.2d 1092 (9th Cir. 1983) ........................................................................11
RadLAX Gateway Hotel, LLC v. Amalgamated Bank,
    566 U.S. 639, 132 S.Ct. 2065 (2012)................................................................21
Ramtin Massoudi MD Inc. v. Azar,
    CV 18-1087 CAS (JPRx), 2018 WL 1940398 (C.D. Cal. Apr. 23, 2018) ....................9
Ringer v. Schweiker,
    697 F.2d 1291 (9th Cir. 1982) ........................................................................11
Rockwell Int'l Corp. v. United States,
    549 U.S. 457, 127 S.Ct. 1397 (2007)................................................................12
Shalala v. Ill. Council on Long Term Care, Inc.,
    529 U.S. 1, 120 S.Ct. 1084 (2000)....................................................................9
Smith v. Berryhill,
    139 S.Ct. 1765 (2019) ..........................................................................1, 2, 7, 8
Subia v. Comm'r of Soc. Sec.,
    264 F.3d 899 (9th Cir. 2001) ..........................................................................7

Sunshine Anthracite Coal Co. v. Adkins,
   310 U.S. 381, 60 S.Ct. 907 (1940) ................................................................... 14, 15

Texas v. United States,
   300 F.Supp.3d 810 (N.D. Tex. 2018) ................................................................. 16

V.N.A. of Greater Tift Cty., Inc. v. Heckler,
   711 F.2d 1020 (11th Cir. 1983) .......................................................................... 9

Yale New Haven Hosp. v. Azar, CV 18-1230(JCH),
   2019 WL 3387041 (D. Conn. July 25, 2019) ...................................................... 8


STATUTES

5 U.S.C. § 553 ........................................................................................................... 17, 24

5 U.S.C. § 706 ........................................................................................................... 22, 24

28 U.S.C. § 1331 ................................................................................................... 10, 11, 13

28 U.S.C. § 1361 ............................................................................................... 8, 10, 11, 13

42 U.S.C. § 405 ........................................................................................................... passim

42 U.S.C. § 1395ff ...................................................................................................... passim

42 U.S.C. § 1395hh ..................................................................................................... passim

42 U.S.C. § 1395ii ...................................................................................................... 10, 13

42 U.S.C. § 1395y ....................................................................................................... passim


REGULATIONS

42 C.F.R. § 405.928 ....................................................................................................... 16

42 C.F.R. § 405.940 ....................................................................................................... 1

42 C.F.R. § 405.958 ....................................................................................................... 16

42 C.F.R. § 405.960 ....................................................................................................... 2

42 C.F.R. § 405.990 ....................................................................................................... passim

42 C.F.R. § 405.1002 ..................................................................................................... 2

42 C.F.R. § 405.1006 ..................................................................................................... 2

42 C.F.R. § 405.1014 .................................................................................2

42 C.F.R. § 405.1062 ..................................................................15, 16, 20

42 C.F.R. § 405.1100 .................................................................................2

42 C.F.R. § 405.1102 ............................................................................2, 7

42 C.F.R. § 426.400 ...............................................................................14

OTHER AUTHORITIES

H.R. Conf. Rep. No. 108-391 ................................................................21

2003 U.S. Code Cong. and Adm. News .................................................21

Webster's Dictionary ............................................................................18

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiff Agendia, Inc.'s ("Agendia") complaint arises from the October 12, 2018, and the October 30, 2018, decisions by administrative law judges ("ALJs") partially denying and entirely denying, respectively, coverage for breast cancer laboratory tests, TargetPrint and BluePrint.  (<u>See</u> Dkt. 1, Complaint at ¶¶ 23-30).

In its summary judgment motion (Dkt. 26, Motion), Agendia resorts to misleading labels and other obfuscations in an attempt to assert the Court's subject matter jurisdiction over this action.  Despite these evasions, Agendia cannot avoid the fact that it e-filed its requests for expedited access to judicial review ("EAJR requests") with the wrong entity.  Nor can it avoid the fact that it failed to seek district court review of a portion of the October 12, 2018, ALJ decision.

Accordingly, the Court should dismiss this action for lack of subject matter jurisdiction.  Alternatively, should the Court determine that it has subject matter jurisdiction, Agendia's claims lack merit for the reasons below, and the Court should deny Agendia's motion (Dkt. 26), and grant defendant Alex M. Azar II, Secretary, Department of Health and Human Services' ("Secretary") concurrently filed motion for summary judgment.  (<u>See</u> Dkt. 29, Deft's Motion).

## II.   ADMINISTRATIVE PROCESS AND HISTORY

The Secretary corrects the administrative process and administrative history set forth by Agendia in its opening motion.  (<u>See</u> Dkt. 26, Motion at 7, 10-12).

"Modern-day [Medicare] claimants must generally proceed through a four-step process before they can obtain review from a federal court." <u>Smith v. Berryhill</u>, 139 S.Ct. 1765, 1772 (2019) (citing 42 U.S.C. § 405(g)).[1]  "First, the claimant must seek an initial determination" from a Medicare administrative contractor ("MAC").  <u>Id.</u>; <u>see</u> 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940, <u>et seq.</u>  "Second, the claimant must seek

---

[1] Section 405(g) is made applicable to the Medicare Act by 42 U.S.C. § 1395ff(b)(1)(A).

reconsideration of the initial determination" from a qualified independent contractor ("QIC"). <u>Smith</u>, 139 S.Ct. at 1772; <u>see</u> 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960, <u>et seq.</u> "Third, the claimant must request a hearing, which is conducted by an ALJ." <u>Smith</u>, 139 S.Ct. at 1772; <u>see</u> 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1002, 405.1006, 405.1014(b). "Fourth, the claimant must seek review of the ALJ's decision by the [Medicare] Appeals Council" ("Council"). <u>Smith</u>, 139 S.Ct. at 1772; <u>see</u> 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1100, 405.1102(a).

If a Medicare claimant believes that "the Departmental Appeals Board does not have the authority to decide the question of law or regulation relevant to the matters in controversy and that there is no material issue of fact in dispute," 42 U.S.C. § 1395ff(b)(2); <u>see</u> 42 C.F.R. § 405.990, the claimant may file an EAJR request. The EAJR request must be filed after a QIC determination, but at or near the time it requests an ALJ hearing or Council review. <u>See</u> 42 C.F.R. § 405.990(b)(1)(i)(A) and (B). EAJR requests must be filed with the HHS Departmental Appeals Board ("DAB"). 42 C.F.R. § 405.990(d)(1)(i) and (ii). The entire process is depicted in the graphic below:



### A. <u>Agendia, Inc. v. Azar</u>, SACV 19-0074 DOC (JDEx) ("Related Litigation")

In the complaint, Agendia referenced an August 22, 2018, ALJ decision that entirely granted coverage to Agendia. (<u>See</u> Dkt. 1, Complaint at ¶¶ 19-22). On October 12, 2018, the QIC appealed that ALJ decision to the Council, (<u>see id.</u> at ¶ 22), and the Council reversed on January 7, 2019. <u>See</u> <u>Related Litigation</u>, (Dkt. 1, Complaint at ¶ 23). Agendia timely sought district court review, <u>see id.</u> (filed January 14, 2019), and the Court granted Agendia's motion for summary judgment on October 29, 2019. <u>See id.</u>, (Dkt. 31, Court's

Order of October 29, 2019).

**B.  October 12, 2018, Decision ("Final Council Decision" and "ALJ 1")**

On October 12, 2018, the ALJ issued a decision granting coverage to four beneficiaries, i.e., patients, but denying coverage to the remaining 227 beneficiaries.  (See Response to SUF 24).

"Final Council Decision."  To the extent the October 12, 2018, ALJ decision granted coverage to the four beneficiaries, the QIC appealed that ALJ decision to the Council, (see Response to SUF 25, 26), and the Council reversed on February 27, 2019.  (See id.). Agendia failed to seek district court review of the February 27, 2019, decision.  (See id.).

"ALJ 1."  To the extent the October 12, 2018, ALJ decision denied coverage to the 227 beneficiaries, Agendia e-filed its EAJR request to the Council on November 6, 2018. (See Response to SUF 25, 26).  As an accommodation to Agendia, the Council sent the EAJR request to the DAB on December 31, 2018.  (See id.).

**C.  October 30, 2018, Decision ("ALJ 2")**

On October 30, 2018, the ALJ issued a decision denying coverage to all beneficiaries.  (See Response to SUF 24) ("ALJ 2").  On November 6, 2018, Agendia e-filed its EAJR request to the Council.  (See id. at 25, 26).  As an accommodation to Agendia, the Council sent the EAJR request to the DAB on February 1, 2019.  (See id.).

**D.  DAB's February 22, 2019, Decision Declining to Certify the EAJR Requests and Forwarding ALJ 1 and ALJ 2 to the Council**

On February 6, 2019, the DAB consolidated Agendia's EAJR requests.  (See Dkt. 29-1, Deft's SUF 23).  On February 22, 2019, the DAB declined to certify Agendia's EAJR requests.  (See Response to SUF 25, 26).  The DAB declined to certify the EAJR requests on the ground that "a provision's constitutionality or validity is not the 'only factor precluding a decision favorable to [Agendia]' as required by the EAJR regulations." (Dkt. 28-1, Hooper Decl., Exh. D at 22).  The DAB held, "[b]y Agendia's own admission, [] '[t]here are now three ALJ decisions involving the very same testing where [] the ALJs reached different decisions regarding the applicability of the LCD."  (Id. at 21).  "The

3

regulations are clear that the Council has discretion to defer (or decline to defer) to LCD L32288." (Id.). "Even if LCD L32288, or the governing authority on which it is based, were struck down by a federal court, Agendia has not shown that it is undisputed that the BluePrint and TargetPrint tests provided to beneficiaries were medically reasonable and necessary pursuant to [42 U.S.C. § 1395y(a)(1)(A).]" (Id.). Because the Council could consider the underlying factual record and make a determination in favor of coverage even if LCD L32288 were struck down, the DAB "forward[ed] the request to [] the Council, which [is treating] it as a request [] for Council review." 42 C.F.R. § 405.990(i); (see Response to SUF 25, 26). The Council has not yet rendered a final decision, (see Response to SUF 25, 26), meaning that Agendia has not yet exhausted ALJ 1 and ALJ 2.[2]

## III.   ARGUMENT[3]

### A.   The Court Lacks Subject Matter Jurisdiction over this Action

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (internal citations omitted). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y&H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 1240 (2006) (internal citation omitted).

//

//

---

[2] The Final Council Decision, however, is not currently pending before the Council. This is because Agendia already exhausted its administrative claims with respect to that portion of the October 12, 2018, ALJ decision and failed to timely seek district court review of the February 27, 2019, Council decision. (See Response to SUF 25, 26).

[3] Agendia suggests that the Secretary is responsible for the proliferation of six pending administrative appeals across multiple jurisdictions. (See Dkt. 26, Motion at 2 n. 1). But Agendia initiated each of these administrative appeals and further exacerbated the proliferation of proceedings by failing to administratively exhaust its claims before filing in district court.

4

1        1.    <u>The Court Lacks Subject Matter Jurisdiction Pursuant to 42 U.S.C. §</u>
2              <u>1395ff(b)(2)</u>

3      Agendia asserts subject matter jurisdiction pursuant to 42 U.S.C. § 1395ff(b)(2)(b),

4   (<u>see</u> Dkt. 26, Motion at 13-14, 17-18), which provides:

5            If, after or coincident with appropriately filing a request for an
             administrative hearing, the appellant requests a determination by
6           the appropriate review entity that the [DAB] does not have the
             authority to decide the question of law or regulations relevant to
7           the matters in controversy and that there is no material issue of
             fact in dispute, [] such review entity shall make a determination
8           on the request in writing within 60 days after the date such review
             entity receives the request.

9

10     The "appropriate review entity" is described by statute as "an entity of up to three

11  reviewers who are administrative law judges or members of the [DAB] selected for

12  purposes of making determinations under this paragraph."  42 U.S.C. § 1395ff(b)(2)(D).

13  It is also described by regulation as "an entity of up to three reviewers who are ALJs or

14  members of the [DAB], as determined by the Secretary." 42 C.F.R. § 405.990(a)(1).  The

15  regulations explicitly provide that written EAJR requests are filed "with the HHS

16  Departmental Appeals Board."  <u>See</u> 42 C.F.R. § 405.990(d)(1)(i) and (ii).

17     In the complaint, Agendia plainly asserts that it filed its EAJR requests – not with

18  the DAB – but with the Council.  Specifically, Agendia contends that the Court has subject

19  matter jurisdiction pursuant to § 1395ff(b)(2) "because the review entity, the <u>Medicare</u>

20  <u>Appeals Council</u>, has failed to rule on the requests for expedited access to judicial review."

21  (Dkt. 1, Complaint at ¶ 1) (emphasis added).  Agendia further asserts that "[t]he final step

22  in the administrative appeal process for Medicare claims is before the <u>Medicare Appeals</u>

23  <u>Council</u>, which may grant expedited access to judicial review under 42 U.S.C. §

24  1395ff(b)(2)(A)."  (<u>See</u> <u>id.</u> at ¶ 13) (emphasis added).  On that mistaken basis, Agendia

25  asserts that "[o]n November 6, 2018, Agendia electronically filed with the <u>Council</u> a

26  request for expedited access to judicial review for the claims denied by the ALJ," (<u>id.</u> at ¶

27  25; <u>see</u> <u>id.</u> at ¶29) (emphasis added), and "[t]he <u>Council</u> failed to respond to Agendia's

28  request within the 60-day period allowed by the controlling statute, 42 U.S.C. §

5

1   1395ff(b)(2)(C)."  (Id. at ¶ 26; see id. at ¶30) (emphasis added).[4]

2      Despite its unambiguous assertions in the complaint, Agendia's motion now

3   attempts to mislead.  In the motion, Agendia defines the Medicare Appeals Council as the

4   "Appeals Council."  (See Dkt. 26, Motion at 7; see also id. at 1, 4, 12 ("The DAB then

5   referred [Agendia's denied EAJR requests] to its Appeals Council"), 13, 15, 17).  But

6   Agendia never asserts in the motion that it e-filed its November 6, 2018, EAJR requests to

7   the "Appeals Council."  (See generally id.).  Rather, Agendia contends that on November

8   6, 2018, it "e-filed separate requests for the DAB to grant [its EAJR requests]."  Agendia

9   then feigns ignorance, protesting that it "can only assume" why the "DAB 'review entity,'"

10  "without explanation," did not render a decision on the EAJR requests by February 6, 2019.

11  (Id. at 11, 13, 14).

12      In other words, Agendia appears to obliquely assert a theory of respondeat superior

13  by suggesting that, by e-filing its EAJR requests to the Council, it was really filing it "for

14  the DAB 'review entity'" to render a final decision.  (Dkt. 26, Motion at 11, 14; see also

15  id. at 1 (asserting that "the Medicare Appeals Council" is "of the Secretary's Departmental

16  Appeals Board") (emphasis added).  But Agendia does not cite any authority providing

17  such theories of parent-subsidiary liability.  (See generally id.).  To the contrary, the

18  applicable regulation clearly provides that, "[i]f a request for [] Council review is not

19  pending, [the requester] file[s] a written EAJR request with the HHS Departmental Appeals

20  Board with his or her request for [] Council review."  42 C.F.R. § 405.990(d)(1)(i)

21  _____

22      [4] Agendia's own exhibits show that it e-filed the EAJR requests with the wrong
    entity.  Agendia's EAJR requests were e-filed to https://dab.efile.hhs.gov/mod/.  (See
23  Hooper Decl., Exh. A at 8; Exh. B at 14).  The Departmental Appeals Board Medicare
    Operations Division Electronic Filing System provides that https://dab.efile.hhs.gov/mod/
24  is used to "[f]ile a request for review with the Council," "[f]ile a request to escalate an
    appeal from an ALJ to the Council," or "[f]ile a request to withdraw the request for review
25  or request to escalate an appeal to the Council."  Departmental Appeals Board Medicare
    Operations Division Electronic Filing System, available at https://dab.efile.hhs.gov/mod/
26  (last accessed on December 16, 2019).  In contrast, the Departmental Appeals Board
    Electronic Filing System provides that https://dab.efile.hhs.gov/ is used to "[f]ile various
27  types of appeals with the Appellate Division, including an appeal of an ALJ decision."
    Departmental  Appeals  Board  Electronic  Filing  System,  available  at
28  https://dab.efile.hhs.gov/ (last accessed on December 16, 2019).

(emphasis added).   And "[i]f an appeal is already pending [] before [] the <u>Council</u>, [requester] file[s] a written EAJR request with the <u>HHS Departmental Appeals Board</u>." <u>See</u> 42 C.F.R. § 405.990(d)(1)(ii).[5]   As 42 C.F.R. § 405.990(d)(1)(i) and (ii) expressly provide that written EAJR requests are to be filed "<u>with the HHS Departmental Appeals Board</u>," Agendia cannot pretend that its e-filing to the Council was in any way sufficient.

Because it e-filed its EAJR requests to the wrong entity, the 60-day clock for the DAB to render a decision never commenced.   <u>See</u> 42 U.S.C. § 1395ff(b)(2)(C)(i)(II) and (ii)(II); 42 C.F.R. § 405.990(d)(1)(i) and (ii).   Rather, as an accommodation to Agendia, the Council sent Agendia's EAJR requests to the DAB on December 31, 2018, and February 1, 2019.   (<u>See</u> Response to SUF 25, 26).   The requests for EAJR review were consolidated on February 6, 2019.   (<u>See</u> Dkt. 29-1, Deft's SUF 23).   On February 22, 2019, the DAB declined to certify Agendia's requests for EAJR review.   (<u>See</u> Response to SUF 25, 26).   Pursuant to 42 C.F.R. § 405.990(i), the DAB forwarded the matters to the Council, where they remain pending today.   (<u>See</u> <u>id.</u>).   As the Council has not yet rendered a final decision, (<u>see</u> <u>id.</u>), Agendia has not yet exhausted its administrative claims.   <u>See</u> <u>Smith</u>, 139 S.Ct. at 1772 ("If a claimant has proceeded through all four steps on the merits, [] § 405(g) entitles him to judicial review in federal district court."); <u>Subia v. Comm'r of Soc. Sec.</u>, 264 F.3d 899, 902 (9th Cir. 2001) ("The Supreme Court has stated that § 405(g) 'clearly limits judicial review to a particular type of agency action, a '<u>final</u> <u>decision</u> of the Secretary made <u>after a</u> <u>hearing</u>.'") (citing <u>Califano v. Sanders</u>, 430 U.S. 99, 108, 97 S.Ct. 980, 985 (1977)) (emphasis in original).

//

//

_____

[5] Agendia's EAJR request is also deficient because Agendia must request Council review before or at the time of its seeks EAJR review.  <u>See</u> 42 C.F.R. § 405.990(b)(1)(i)(B) ("Conditions for making the expedited appeals request," include, among other things, "the party has filed a request for Council review in accordance with § 405.1102 and a final decision, dismissal order, or remand order of the Council has not been issued.").   But Agendia never made a request for Council review before, concurrently, or after its deficient November 6, 2018, requests for EAJR review to the Council.  (<u>See</u> <u>generally</u> Dkt. 29-1, Deft's SUF 15, 20, 25, 28).

2.     Agenda Fails to Show that Exhaustion of its Administrative Remedies Should be Waived[6]

Agenda contends that, notwithstanding its failure to exhaust its administrative claims, the exhaustion requirement should be waived.  (See Dkt. 26, Motion at 14-15).  To waive the exhaustion requirement, the Ninth Circuit has articulated a three-part test:  "The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." Johnson, 2 F.3d at 921.[7]

With respect to the first prong, Agenda cannot demonstrate collaterality because, fundamentally, Agenda merely aserts "a claim that [it] should be paid."   Heckler v. Ringer, 466 U.S. 602, 614, 104 S.Ct. 2013, 2021 (1984).[8]  "It is of no importance that respondents [] sought only declaratory and injunctive relief and not an actual award of benefits as well."  Id. at 615, 104 S.Ct. at 2022.  "Following the declaration which respondents seek from the Secretary – that BCBR surgery is a covered service – only

---

[6] Agenda appears to confuse administrative exhaustion, pursuant to Johnson v. Shalala, 2 F.3d 918 (9th Cir. 1993), with mandamus relief pursuant to 28 U.S.C. § 1361. (See Dkt. 26, Motion at 14-15).  The Secretary treats these separately.  See infra at §§ III.A.2 and 3.

[7] "A final judgment consists of two elements: the presentment of a claim to the Ssecretary and the exhaustion of administrative remedies." Johnson, 2 F.3d at 921.  "The presentment requirement is jurisdictional, and therefore cannot be waived by the Secretary or the courts." Id.  "The exhaustion requirement [] is not jurisdictional, and thus, is waivable by either the Secretary or the courts." Id.; see also Smith, 139 S. Ct. at 1773 (similar).

[8] Agenda's reliance on out-of-circuit authority, Family Rehab., Inc. v. Azar, 886 F.3d 496 (5th Cir. 2018), does not help it.  Contrary to Agenda, which seeks a declaration for the payment of "past, present and future claims of Agenda," (see Dkt. 1, Complaint at Prayer for Relief), plaintiff in Family Rehab "sought only a hearing before the recoupment of its Medicare revenues."  886 F.3d at 503.  Tellingly, to the extent Agenda contends that LCD L32288 was not subject to notice-and-comment pursuant to 42 U.S.C. § 1395hh(a)(2), Agenda does not ask that LCD L32288 undergo notice-and-comment in accordance with § 1395hh.

To the extent Agenda relies on Yale New Haven Hosp. v. Azar, CV 18-1230(JCH), 2019 WL 3387041 (D. Conn. July 25, 2019), the Secretary filed a motion for summary judgment in that action asking the Court to reconsider its July 25, 2019, order, relying on Heckler, 466 U.S. 602, 104 S.Ct. 2013.  See Yale New Haven Hosp., CV 18-1230(JCH) (Dkt. 37, Secretary's Motion for Summary Judgment at 11-19).

essentially ministerial details will remain before respondents would receive reimbursement." Id.  Here, Agendia seeks precisely what Heckler prohibits, a declaratory judgment entitling it to the payment of claims:  Agendia seeks "an order from this Court setting aside the decisions of the Secretary [] and requiring the Secretary to cover and pay for the claims at issue as well as other similar past, present and future claims of Agendia." (Dkt. 1, Complaint at Prayer for Relief).

Fatally to Agendia, it entirely fails to address the second prong of the exhaustion waiver inquiry, irreparability.  (See generally Dkt. 26, Motion).  Nor can it.  The Supreme Court long ago recognized that requiring exhaustion "comes at a price, namely, occasional individual, delay-related hardship."  Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 13, 120 S.Ct. 1084, 1093 (2000).  "In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justifed[; i]n any event, such was the judgment of Congress."  Id.  In light of Congress' recognition of the downsides of exhaustion, it is illogical for that recognized hardship to constitute "irreparability."  And as recognized by multiple courts within this district, suppliers like Agendia assumed the risk of non-coverage determinations under Medicare Part B:

> [T]he problem of bankruptcy is endemic to a system which relies on non-profit, cash-poor providers which are wholly dependent on Medicare reimbursement. Were irreparable injury the only criteria for exercise of jurisdiction, the courts would be inundated by claims from other providers whenever they were determined by the intermediary to have been overpaid. Third, providers do not lack notice of these review provisions. Having chosen to operate within the system on a cash-poor basis, they take a knowing risk that an intermediary's determination might delay payment.

Ramtin Massoudi MD Inc. v. Azar, CV 18-1087 CAS (JPRx), 2018 WL 1940398, at *7 (C.D. Cal. Apr. 23, 2018) (citing V.N.A. of Greater Tift Cty., Inc. v. Heckler, 711 F.2d 1020, 1034 (11th Cir. 1983)); H. Babaali, M.D. Med. Inc. v. Hargan, CV 18-0198 GW (PLAx) (C.D. Cal.), (Dkt. 42, Court's Order of April 16, 2018, at 13) (same).

9

Agendia also fatally fails to address the third prong of exhaustion waiver, futility. (See generally Dkt. 26, Motion). With respect to that prong, administrative exhaustion of Agendia's claims fundamentally serves the purposes of futility. See Shalala, 2 F.3d at 921. As the DAB noted, "[e]ven if LCD L32288, or the governing authority on which it is based, were struck down by a federal court, Agendia has not shown that it is undisputed that the BluePrint and TargetPrint tests provided to beneficiaries were medically reasonable and necessary pursuant to [42 U.S.C. § 1395y(a)(1)(A)]." (Dkt. 28, Hooper Decl., Exh. D at 21); see Errringer v. Thompson, 371 F.3d 625, 631 (9th Cir. 2004) ("If the [] resulting LCDs did not exist, [MACs] would still have an overarching duty to deny claims for items and services that are not 'reasonable and necessary' under [42 U.S.C. § 1395y(a)(1)(A)]." Whether BluePrint and TargetPrint meet the § 1395y(a)(1)(A) reasonable and necessary standard is precisely the kind of decision that the Council is in the best position to consider, particularly given its expertise and routine consideration of detailed underlying factual records like Agendia's to assess whether tests as complex as BluePrint and TargetPrint meet that statutory standard.

Accordingly, because Agendia has not completed the last step of the four-step administrative review process, and because waiver of the exhaustion requirement is unwarranted, the Court lacks subject matter jurisdiction.

   3.   Agendia Fails to Show that Mandamus Relief Pursuant to 28 U.S.C. § 1361 is Warranted

Agendia alternatively asserts subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.[9] (See Dkt. 1, Complaint at ¶ 1; Dkt. 26, Motion at 14-15). Neither provide

---

[9] The Court is not empowered to assert subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because "[n]o action against the United States, the [Secretary of the Department of Health and Human Services], or any officer or employee thereof shall be brought under section 1331 [] of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h) (made applicable to Medicare and modified by 42 U.S.C. § 1395ii); 42 U.S.C. § 1395ii; Heckler, 466 U.S. at 614-15, 104 S.Ct. at 2021 ("42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act.") (internal citations omitted).

1  a basis for the Court to assert jurisdiction.

2       The Mandamus Act vests district courts with "original jurisdiction over any action

3  in the nature of mandamus to compel an officer or employee of the United States or any

4  agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus

5  is an extraordinary remedy," and "is appropriately issued only when (1) the plaintiff's

6  claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so

7  plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is

8  available." Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994). "Even if the test is met,

9  the district court still retains the discretion to deny relief." Johnson v. Reilly, 349 F.3d

10  1149, 1154 (9th Cir. 2003).[10]

11       Here, Agendia does not identify what "clear," "certain," "ministerial" duty it seeks

12  from the Secretary that is "free from doubt." (See generally, Dkt. 1, Complaint); Heckler,

13  466 U.S. at 617, 104 S.Ct. at 2023 ("The Secretary's decision as to whether a particular

14  medical service is 'reasonable and necessary' and the means by which she implements her

15  decision, whether by promulgating a generally applicable rule or by allowing individual

16  adjudication, are clearly discretionary decisions"). Indeed, Agendia does not seek to

17  compel the Secretary to perform an act; rather, it seeks a decision that BluePrint and

18  TargetPrint are entitled to coverage. (See Dkt. 1, Complaint at Prayer for Relief) (seeking

19  payment for the "past, present and future claims of Agendia"). And as this action is

20  currently pending before the Council, mandamus is not appropriate because another

21

22       Agendia's assertion of subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

23  and 1361 is also barred by sovereign immunity. See Pit River Home & Agr. Co-op. Ass'n
   v. United States, 30 F.3d 1088, 1098 n. 4 (9th Cir. 1994) ("Section[] 1361 do[es] not waive
   the sovereign immunity of the United States"); Dunn & Black, P.S. v. United States, 492

24  F.3d 1084, 1088 n. 3 (9th Cir. 2007) (Section 1331 "cannot be construed as authorizing
   suits [] against the United States, else the exemption of sovereign immunity would become

25  meaningless").

26  [10] Agendia's reliance on Powderly v. Schweiker, 704 F.2d 1092, 1095 (9th Cir.
   1983), and Daniel Freeman Mem'l Hosp. v. Schweiker, 656 F.2d 473, 476 (9th Cir. 1981),

27  is misplaced. (See Dkt. 26, Motion at 14). Powderly granted § 1361 mandamus relief by
   principally relying on Ringer v. Schweiker, 697 F.2d 1291, 1293 (9th Cir. 1982). See

28  Powderly, 704 F.2d at 1095. But Ringer was reversed by the Supreme Court in Heckler,
   466 U.S. 602, 104 S.Ct. 2013.

1    "adequate remedy" is available.  See Heckler, 466 U.S. at 617, 104 S.Ct. at 2022-23

2    ("respondents clearly have an adequate remedy in § 405(g) for challenging all aspects of

3    the Secretary's denial of their claims for payment [], including any objections they have

4    to the instructions or to the ruling if either ultimately should play a part in the Secretary's

5    denial of their claims").

6              4.    Agenda Failed to Timely Seek District Court Review of the Final
                     Council Decision

7

8          Finally, Agenda contends that the February 27, 2019, Final Council Decision, see

9    supra at § II.B, is "ultra vires" and "void and invalid." (Dkt. 26, Motion at 17).  Agenda

10   contends that the Council lacked jurisdiction to render the Final Council Decision, since

11   Agenda "timely requested expedited access to judicial review." (Id. at 18).

12         But as explained above, supra at § III.A.1, Agenda did not timely file its EAJR

13   requests because it filed these with the wrong entity.  Agenda's assertion further ignores

14   that the QIC timely sought Council review, (see Response to SUF 25, 26), and the Council

15   validly denied coverage in its February 27, 2019, decision.  (See id.).[11]

16         Tellingly, Agenda makes the wholly unsupported contention of invalidity because

17   it failed to timely appeal the Final Council Decision, rendering the Court without subject

18   matter jurisdiction over this action.  Federal subject matter jurisdiction must exist at the

19   time the action is commenced.  See Rockwell Int'l Corp. v. United States, 549 U.S. 457,

20   473, 127 S.Ct. 1397, 1409 (2007) (subject matter jurisdiction "depends on the state of

21   things at the time of the action brought"); Morongo Band of Mission Indians v. Cal. State

22   Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988) ("Subject matter jurisdiction

23   must exist as of the time the action is commenced").  When Agenda filed the instant action

24   on January 7, 2019, (see Dkt. 1, Complaint), the Council had not yet rendered its February

25   27, 2019, Final Council Decision.  (See Response to SUF 25, 26).

26         _____
            [11] The Secretary agrees with Agenda that "[t]he same administrative appeal may
27   not be pending at the same time in two different forums." (Dkt. 26, Motion at 18).  As the
     district court lacks subject matter jurisdiction, ALJ 1 and ALJ 2 are properly pending
28   before the Council in light of Agenda's failure to exhaust its administrative remedies.  See
     supra at § III.A.1.

                                               12

1    Once the Final Council Decision issued its decision on February 27, 2019, Agendia

2  had 60 days to seek district court review, see 42 U.S.C. § 405(g); 42 U.S.C. §

3  1395ff(b)(1)(A), which it never did.  (See Response to SUF 25, 26).

4    For the reasons above, the Court lacks subject matter jurisdiction over this action

5  pursuant to 42 U.S.C. § 1395ff(b)(1)(A) and (2), 42 U.S.C. § 405(g) and (h), 42 U.S.C. §

6  1395ii, 28 U.S.C. § 1331, 28 U.S.C. § 1361, and under any principles of waiver.

7    **B.    Private-Party Development of LCDs does not Violate the Non-Delegation Doctrine**[12]

8

9    Agendia contends that "Congress and the Secretary have shirked their responsibility

10  by delegating [development of LCDs] to private contractors."  (Dkt. 1, Complaint at ¶ 4;

11  see id. at ¶¶ 5, 6, 14, 32).  Agendia is incorrect because: (1) LCDs are not legislative; and

12  (2) MACs function subordinately to the Secretary.

13    As the Ninth Circuit held fifteen years ago, "the Medicare statute does contain a

14  standard for approval of claims apart from the [Medicare Program Integrity Manual

15  ("PIM")] provisions and the LCDs."  Erringer, 371 F.3d at 630-31 (9th Cir. 2004)

16  (emphasis in original).  "If the PIM provisions and resulting LCDs did not exist, [MACs]

17  would still have an overarching duty to deny claims for items and services that are not

18  'reasonable and necessary' under [42 U.S.C. § 1395y(a)(1)(A)]."  Id. at 631.  "This is not

19  a case of pure delegation of authority to the agency to determine a standard."  Id.  "Instead,

20  the PIM provisions simply interpret the 'reasonable and necessary' standard contained in

21  the statute."  Id.

22    Because PIM provisions do not have any legislative force, it follows that the LCDs

23  developed in accordance with the PIM guidelines do not have any legislative force as well.

24  Simply put, Agendia cannot tenably claim that an LCD is "legislative," when all an LCD

25  does is determine "whether or not a particular item or service is covered on an

26  intermediary- or carrier-wide basis under such parts, in accordance with section

27  _____

   [12] In the Related Litigation, the Court held that the statutory scheme regarding LCDs
28  does not violate the Due Process Clause.  (See Dkt. 31, Court's Order of October 29, 2019,
   at 7-12).

1  1395y(a)(1)(A) of this title." 42 U.S.C. § 1395ff(f)(2)(B) (emphasis added). Agendia's

2  contention that a MAC's preliminary, non-binding exclusion of one product (like

3  BluePrint or TargetPrint) from one jurisdiction (like Noridian Jurisdiction JE) constitutes

4  "legislative" activity, is not well taken. The Supreme Court long ago endorsed

5  Congressional and Secretarial delegation to a private entity the authority to make such

6  item-by-item and service-by-service determinations for a subcategory of medical products

7  such as molecular diagnostic tests. "Delegation by Congress has long been recognized as

8  necessary in order that the exertion of legislative power does not become a futility."

9  Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 398, 60 S.Ct. 907, 915 (1940).

10  "[T]he effectiveness of both the legislative and administrative processes would become

11  endangered if Congress were under the constitutional compulsion of filling in the details

12  beyond the liberal prescription." Id. "[T]he burdens of minutiae would be apt to clog the

13  administration of the law and deprive the agency of that flexibility and dispatch which are

14  its salient virtues." Id.

15      Agendia's non-delegation argument also lacks merit because MACs "function

16  subordinately to the [federal agency]" and the agency "has authority and surveillance over

17  the activities of these [private] authorities." Sunshine Anthracite Coal, 310 U.S. at 399,

18  60 S.Ct. at 915. Agendia incorrectly contends that "ALJs and the Council may not set

19  aside or review the validity of an LCD for purposes of Medicare claims appeals such as

20  those here." (Dkt. 1, Complaint at ¶ 14). But 42 U.S.C. § 1395ff(f)(2)(A) provides that

21  "[r]eview of any local coverage determination" "shall be reviewed by an administrative

22  law judge," whose decision "shall be reviewed by the Departmental Appeals Board of the

23  Department of Health and Human Services," which "constitutes a final agency action and

24  is subject to judicial review." See also 42 C.F.R. § 426.400, et seq. (setting forth

25  procedures for beneficiaries to challenge the validity of NCDs and LCDs).[13]

26  ───────────────

27      [13] Agendia takes issue with the fact that Medicare suppliers such as Agendia lack
standing to challenge the validity of an LCD. (See Dkt. 1, Complaint at ¶ 14) ("Congress
allows Medicare beneficiaries, but not Medicare providers or suppliers, including

28  laboratories, to challenge the validity of LCDs") (citing 42 U.S.C. § 1395ff(f)(2) and

Second, the fact that LCD L32288 is entitled to substantial deference pursuant to 42 C.F.R. § 405.1062, does not mean that private-party development of LCDs is contrary to "the fundamental constitutional principle requiring Congress to make laws and policies." (Dkt. 1, Complaint at ¶ 32). Indeed, the very regulation that Agendia relies on, 42 C.F.R. § 405.1062, (see id. at ¶ 14), clearly provides that "ALJs and attorney adjudicators and the Council are not bound by LCDs [] or CMS program guidance." (Emphasis added). But if the ALJ declines to defer to a given policy, the ALJ "must explain the reasons why the policy was not followed." Id.[14]

Finally, Agendia's contention that LCD L32288 has "effectively become a de facto NCD," (see Dkt. 1, Complaint at ¶ 34), is misleading at best. As an initial matter, LCD L32288 has been retired since 2013, (see Response to SUF 17), so it has had no effect whatsoever, much less national effect, since 2013. In the Related Litigation, Agendia relied on a complaint that demonstrated that the MolDx program, (much less retired LCD L32288), has been incorporated by only six Medicare jurisdictions covering 25 states, (see id.), which belies Agendia's assertion of national scope.

       1.   Agendia's New Arguments Regarding Non-Delegation Lack Merit

Agendia's additional arguments in support of its non-delegation argument lack merit. (See Dkt. 26, Motion at 15-16).

First, Agendia contends that, contrary to the Related Litigation, where the ALJ granted coverage for BluePrint and TargetPrint, the ALJs who decided ALJ 1 and ALJ 2 did not. (See Dkt. 26, Motion at 15-16). As an initial matter, this is factually incorrect, as Agendia admits that ALJ 1 granted coverage to four beneficiaries and denied coverage to the remaining 227 beneficiaries. (See Dkt. 27, Plff's SUF 24). More importantly,

_____

(f)(5)). But a supplier's lack of standing is irrelevant to whether MACs "function subordinately to the [federal agency]" and the agency "has authority and surveillance over the activities of these [private] authorities." Sunshine Anthracite Coal, 310 U.S. at 399, 60 S.Ct. at 915.

[14] The Medicare Act statute, itself, underscores that LCDs are not legislative. 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II) provides that LCDs "shall not be binding on the [QIC] in making a decision with respect to a reconsideration under this section, [but] shall consider the local coverage determination in making such decision."

Agendia's admission that, over the course of the administrative process, "three different [ALJs] reached three different and contrary decisions based on applying the same [LCD L32288] to the very same circumstances," (Dkt. 1, Complaint at ¶ 4), demonstrably shows that coverage determinations were made at the discretion of ALJs – not private parties.

Second, Agendia contends that LCDs are binding on MACs when making their initial determinations and redeterminations.  But, the regulations that Agendia rely on clearly provide that an initial determination is binding "unless a redetermination is completed," 42 C.F.R. § 405.928(b)(1), and a redetermination is binding "unless a reconsideration is completed."  42 C.F.R. § 405.958(a).  Agendia further neglects that, upon reconsideration, LCDs:  (1) "shall not be binding on the [QIC] in making a decision with respect to a reconsideration under this section, [but] shall consider the local coverage determination in making such decision," 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II) (emphasis added); and (2) "ALJs and attorney adjudicators and the Council are not bound by LCDs [] or CMS program guidance."  42 C.F.R. § 405.1062 (emphasis added).

Third, Agendia's reliance on Texas v. United States, 300 F.Supp.3d 810, 846-848 (N.D. Tex.), on reconsideration in part, 336 F.Supp.3d 664 (N.D. Tex. 2018), is misplaced. In Texas, the Court found that a statute and regulation in the Medicare Act empowered a private party, the Actuarial Standards Board ("ASB"), to establish a private definition of "actuarial soundness" in the statute and regulation, and prevented the Secretary from reviewing "actuarial soundness" until ASB actuaries certified their findings.  See id. at 846-48.  Here, it is the reverse.  "If the [] LCDs did not exist, [MACs] would still have an overarching duty to deny claims for items and services that are not 'reasonable and necessary' under [42 U.S.C. § 1395y(a)(1)(A)]."  Erringer, 371 F.3d at 631.  In other words, Congress – not MACs (or any other private party) – define the legal standard for coverage under Medicare Part B.

As MACs do not function as legislators and they operate subordinately to the Secretary, neither Congress nor the Secretary have impermissibly delegated any legislative functions to MACs in violation of the Constitution.

**C.    LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh**

Agendia contends that LCD L32288  is invalid because it was not promulgated pursuant to notice-and-comment under: (1) the Administrative Procedure Act ("APA"), 5 U.S.C. § 553; or (2) the Medicare Act, 42 U.S.C. § 1395hh.  (See Dkt. 1, Complaint at ¶ 33; see also id. at ¶¶ 4-6, 10, 11, 14, 21, 23).  Agendia is incorrect on both counts.

>    1.    LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553[15]

With respect to the APA, the Ninth Circuit under Erringer held that because the PIM (and by extension, LCDs), are interpretive, they are not subject to notice-and-comment under the APA.  See 371 F.3d at 630-33 (applying three-prong test); Azar v. Allina Health Servs., 139 S.Ct. 1804, 1813 (2019) (APA exempts interpretive statements from notice-and-comment under the APA).

>    2.    By Statute, LCDs do not "Establish" or "Change" a "Substantive Legal Standard"[16]

With respect to the Medicare Act, 42 U.S.C. § 1395hh(a)(2) does not apply to LCDs, because LCDs do not "establish" or "change" a "substantive legal standard."  The statute provides:

> No rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1).

First, by the statute's plain language, an LCD does not "establish" or "change" a substantive legal standard because an LCD determines "whether or not a particular item

---

[15] In the Related Litigation, the Court held that LCDs are not subject to notice-and-comment under the APA.  (See Dkt. 31, Court's Order of October 29, 2019, at 13-14).

[16] In the Related Litigation, the Court held that LCDs are subject to notice-and-comment pursuant to § 1395hh(a)(2).  (See Dkt. 31, Court's Order of October 29, 2019, at 14-17).

or service is covered on an intermediary- or carrier-wide basis <u>in</u> <u>accordance</u> <u>with</u> section 1395y(a)(1)(A) of this title." 42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).  An LCD that – by statute – determines coverage "in accordance with" a substantive legal standard cannot "establish" or "change" that standard.  Webster's Dictionary defines "in accordance with" as "in a way that agrees with or follows (something, such as a rule or request)."  Webster's Dictionary defines "establish" as "to institute (something, such as a law) permanently by enactment or agreement."   Webster's Dictionary, <u>available</u> <u>at</u> https://www.merriam-webster.com (last accessed on December 16, 2019).  In other words, an LCD cannot, by statute, "agree with" or "follow" a "rule or request" and simultaneously "institute" it.[17, 18]

    <u>Second</u>, 42 U.S.C. § 1395y(a)(1)(A) provides the <u>statutory</u> "substantive legal standard" for LCDs – not the LCD itself.[19]  By the statute's plain language, an LCD determines "whether or not a particular item or service is covered on an intermediary- or carrier-wide basis in accordance with <u>section</u> <u>1395y(a)(1)(A)</u> <u>of</u> <u>this</u> <u>title</u>." 42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).  42 U.S.C. § 1395y(a)(1)(A) provides the <u>statutory</u> substantive legal standard for LCDs: "[N]o payment may be made under [] part B for any

---

[17] Agendia's attempt to paraphrase § 1395ff(f)(2)(B) does not help it.  (<u>See</u> Dkt. 26, Motion at 4) (asserting that LCDs determinations are made "under" 42 U.S.C. § 1395y(a)(1)(A)).  Webster's dictionary defines "under" as "subject to the authority, control, guidance, or instruction of."   Webster's Dictionary, <u>available</u> <u>at</u> https://www.merriam-webster.com (last accessed on December 16, 2019).  In other words, an LCD cannot, by statute, be "subject to the authority, control, guidance, or instruction of" a standard and simultaneously "institute" it.

[18] In the <u>Related Litigation</u>, the Court found that "Plaintiff's argument that the 'substantial deference' that LCDs are entitled to in the administrative appeals process does not support the contention that MACs 'establish legal standards for determining coverage' in a way that violates the Due Process Clause."  (Dkt. 31, Court's Order of October 29, 2019, at 11.)  It is unclear how LCDs do not "establish legal standards" under the Due Process clause, but do "establish legal standards" under § 1395hh.  (<u>See</u> generally <u>id.</u>)

[19] In <u>dicta</u>, the Supreme Court in <u>Allina</u> surmised that "the government might have sought to argue that the policy at issue here didn't 'establis[h] or chang[e]' a substantive legal standard – and so didn't require notice and comment under § 1395hh(a)(2) – because the <u>statute</u> itself" compels the legal standard.  139 S.Ct. at 1804 (emphasis in original).  For the avoidance of any doubt, contrary to the government in <u>Allina</u>, the Secretary contends <u>in this action</u> that the statute, 42 U.S.C. § 1395y(a)(1)(A), itself compels the legal standard – not the LCD.

expenses incurred for items or services which [] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

   Third, assuming arguendo, LCDs are a "gap"-filling policy,[20] see Allina, 139 S.Ct. at 1817 ("when the government establishes or changes an avowedly 'gap'-filling policy, it can't evade its notice-and-comment obligations under § 1395hh(a)(2)"), the gap is filled by a procedural legal standard – not a substantive one subject to notice-and-comment pursuant to § 1395hh.  In Allina, the Supreme Court declined to adopt the definition of "substantive legal standard" set forth by the D.C. Circuit Court of Appeals.  See id. at 1814 ("We need not [] go so far as to say that the hospitals' interpretation, adopted by the court of appeals, is correct in every particular."); Allina Health Servs. v. Price, 863 F.3d 937, 943 (D.C. Cir. 2017).  But the Allina Court noted that Allina contended that "substantive legal standard" is meant to be distinguished from a "procedural legal standard."  Allina, 139 S.Ct. at 1811 (emphasis in original).

   Here, the administrative history in this action shows that LCD L32288 is a procedural legal presumption[21] that Agendia can, and has, overcome over the course of the administrative process, rather than a substantive legal standard subject to the notice-and-comment requirements of § 1395hh.  Agendia itself admits that, over the course of the administrative process, "three different [ALJs] reached three different and contrary decisions based on applying the same [LCD L32288] to the very same circumstances." (Dkt. 1, Complaint at ¶ 4; see also id. at ¶¶ 19-30 (describing the fully favorable, partially favorable, and fully unfavorable ALJ decisions)).  This is because, by statute, 42 U.S.C. §

---

[20] Again, the Secretary contends in this action that the statute, 42 U.S.C. § 1395y(a)(1)(A), itself compels the statutory substantive legal standard.  It does not contend that LCDs are a gap-filling policy.

[21] Indeed, Agendia itself concedes that LCD L32288 is a "presumption" rather than a "substantive legal standard." (Dkt. 27, Plff's SUF at 38, 40).  Agendia's contention that the presumption is "conclusive" or "irrebuttable" such that "LCDs are binding on Medicare suppliers" like it, (Dkt. 26, Motion at 6), has no basis in reality when Agendia has overcome (at least twice) that "conclusive" and "irrebuttable" presumption during the administrative review process.  (See Dkt. 1, Complaint at ¶ 4).

1395ff(c)(3)(B)(ii)(II) provides LCDs "shall <u>not</u> <u>be</u> <u>binding</u> on the [QIC] in making a

decision with respect to a reconsideration under this section, [but] shall consider the local

coverage determination in making such decision." (Emphasis added).  Also, by regulation,

42 C.F.R. § 405.1062 provides that "ALJs and attorney adjudicators and the Council are

<u>not</u> <u>bound</u> by LCDs [] or CMS program guidance."  (Emphasis added).  But if the ALJ

declines to defer to a given policy, the ALJ "must explain the reasons why the policy was

not followed."  (<u>Id.</u>).  Accordingly, to the extent LCD L32288 fills a "gap," the LCD fills

the "gap" with a procedural legal presumption that Agendia can (<u>and</u> <u>has</u>) overcome over

the course of the administrative process.  By statute and regulation, it is not a "substantive

legal standard" subject to notice-and-comment pursuant to 42 U.S.C. § 1395hh.

> 3.  <u>By Statute, LCDs are Subject to Supplier Notice-and-Comment</u>
> <u>Pursuant to 42 U.S.C. § 1395y(l)(5)(D)</u>

42 U.S.C. § 1395hh has no applicability to LCDs because the Medicare Act

provides a specialized notice-and-comment process for LCDs pursuant to 42 U.S.C. §

1395y(l)(5)(D).  Section 1395hh requires a 60-day period for public notice-and-comment.

<u>See</u> 42 U.S.C. § 1395hh(b)(1).  NCDs, which are expressly excluded from § 1395hh,

require a 30-day period for public notice-and-comment.  <u>See</u> 42 U.S.C. § 1395y(l)(3)(B).

Two subsections down from § 1395y(l)(3)(B), § 1395y(l)(5)(D)(iii) provides a 45-day

notice-and-comment period for suppliers like Agendia that is available on the MAC's and

CMS's websites (rather than the public at large).[22]  <u>See</u> 42 U.S.C. § 1395y(l)(5)(D)(iii)

("The Secretary shall require each [MAC] that develops a [LCD] to make available on the

Internet website of such contractor and on the Medicare Internet website, at least 45 days

before the effective date of such determination," "[h]yperlinks to the proposed

determination and a response to comments submitted to the contractor with respect to such

proposed determination").

The statutory construction of § 1395hh and § 1395y, and the amendments to these

---

[22]  Indeed, Agendia admits that suppliers like it participate in the 45-day supplier
notice-and-comment.  (<u>See</u> Dkt. 26, Motion at 6 n. 5).

statutes over time, demonstrate that LCDs are not subject to 60-day public notice-and-comment pursuant to § 1395hh.  LCDs were first approved by Congress and added to the Medicare Act in 2003.  See H.R. Conf. Rep. No. 108-391 (2003); 2003 U.S. Code Cong. and Adm. News, p. 1808.  When implementing LCDs in 2003, Congress contemplated that LCDs were a means of developing future NCDs.  See 42 U.S.C. § 1395y(l)(5)(A) (2003) ("The Secretary shall develop a plan to evaluate new local coverage determinations to determine which determinations should be adopted nationally and to what extent greater consistency can be achieved among local coverage determinations."); (Dkt. 26, Motion at 8 (Congress developed "a plan to evaluate new LCDs to determine which should be adopted nationally")).  As precursors of future NCDs, Congress did not include any notice-and-comment for LCDs in 2003, see 42 U.S.C. § 1395y(l)(5)(A) (2003), but to the extent LCDs were later adopted as NCDs, those newly adopted NCDs would be subject to 30-day public notice-and-comment.

In 2016, rather than not having any notice-and-comment of any kind for LCDs, Congress added the 45-day supplier notice-and-comment for the first time, see 42 U.S.C. § 1395y(l)(5)(D), within the same subsection that provides a more formalized 30-day public notice-and-comment for NCDs.  See 42 U.S.C. § 1395y(l)(3).  "[I]t is a commonplace of statutory construction that the specific governs the general," RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 132 S.Ct. 2065, 2068 (2012), "particularly when the two are interrelated and closely positioned, both in fact being parts of [the same statutory scheme]." HCSC-Laundry v. United States, 450 U.S. 1, 6, 101 S.Ct. 836, 839 (1981).  Given that the Medicare Act, over time, defined LCDs as precursors to NCDs and subsequently added specific notice-and-comment provisions targeted solely to LCDs, the statutory construction and legislative history demonstrate that Congress did not intend for § 1395hh to apply to LCDs.

Said another way, it defies logic that LCDs, as precursor NCDs, see 42 U.S.C. § 1395y(l)(5)(A), are subject to 60-day public notice-and-comment under § 1395hh(a)(2), yet are reverted down to 30-day public notice-and-comment when elevated to nationwide

applicability as NCDs.  See 42 U.S.C. § 1395y(l)(3)(B).  This particularly rings true when LCDs only determine "whether or not a particular item or service is covered on an intermediary- or carrier-wide basis."  42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).

In the face of this legislative history and statutory construction, Agendia resorts to the wholly unsupported theory that, "while characterized as 'local,' rather than national, the LCD and the other MAC policies at issue here effectively have national impact on clinical laboratories like Agendia."  (Dkt. 26, Motion at 5; see id. at 9).  In the Related Litigation, Agendia relied on a complaint that alleged the MolDx program, (much less retired LCD L32288), has been incorporated by only six Medicare jurisdictions covering 25 states, (see Response to SUF 17), which belies Agendia's assertion of national scope. Agendia also contends that LCDs are national in scope because independent laboratories like it bill where its laboratory is located – Southern California – and not where the patient lives.  (See Dkt. 26, Motion at 5, 9; Response to SUF 1).  This argument, though, borders on the absurd, as Agendia can avoid an LCD simply by moving from Califonia (where MolDx has been implemented) to one of the 25 states where the MolDx program has not been implemented – again belying Agendia's assertion of any quasi-"national" scope.

Accordingly, as LCDs do not "establish" or "change" a "substantive legal standard," and are subject to the 45-day supplier notice-and-comment pursuant to 42 U.S.C. § 1395y(l)(5)(D), LCDs are not subject to 60-day public notice-and-comment pursuant to 42 U.S.C. § 1395hh.

**D.    To the Extent the Court has Subject Matter Jurisdiction to Review ALJ 1 and ALJ 2, These do not Violate 5 U.S.C. § 706**

Agendia contends that ALJ 1 and ALJ 2 should be reversed, but provides no explanation why these decisions are erroneous.  (See Dkt. 1, Complaint at ¶¶ 24, 28; see generally Dkt. 26, Motion).  Fatally, Agendia has not completed the last step of the four-step administrative review process.  See supra at § III.A.1.  As the Court lacks subject matter jurisdiction over ALJ 1 and ALJ 2, the Council – not the Court – should consider whether ALJ 1 and/or ALJ 2 are erroneous in any respect.

### E.    Remand is Inappropriate

Agendia asks the Court to:  (1) declare LCD L32288 "unenforceable and invalid;" and (2) "remand to the ALJs for further proceedings."  (Dkt. 26, Motion at 17, 18).  For four reasons, that is improper.

First, Agendia failed to seek district court review of the Final Council Decision.  See supra at § III.A.4.  As Agendia failed to seek review of a final administrative order, no basis exists to remand the Final Council Decision to the ALJs.

Second, ALJ 1 and ALJ 2 are currently pending before the Council.  See supra at § III.A.1.  The appropriate recourse, then, is not to remand, but to dismiss ALJ 1 and ALJ 2 for lack of subject matter jurisdiction.

Moreover, Agendia gives no reason why ALJ 1 and ALJ 2 should be remanded "to the ALJs," (Dkt. 26, Motion at 18), the third level of administrative review, when they are already pending before the fourth level of administrative review, the Council.  (See Response to SUF 25, 26).

Third, only beneficiaries have standing to invalidate LCDs – not suppliers like Agendia.  See 42 U.S.C. § 1395ff(f)(5).[23]  If the Court finds that LCD L32288 was not promulgated under 42 U.S.C. § 1395hh(a)(2), the appropriately tailored remedy is to order notice-and-comment through the § 1395hh(a)(2) procedure.

Fourth, invalidating LCD L32288 and remanding the action to the Council for further proceedings constitutes a tacit acknowledgment that LCD L32288 is not a "gap"-

---

[23] 42 U.S.C. § 1395ff(f)(5) provides:  "An action under this subsection seeking review of a [] local coverage determination may be initiated only by individuals entitled to benefits under part A of this subchapter, or enrolled under part B of this subchapter, or both."

Congress may well have decided to deny standing to suppliers like Agendia in order to prevent regulatory capture.  For example, "[a] central goal of [42 U.S.C. 1395m-1] is to set Medicare reimbursement rates for laboratory tests at approximately the price private insurers pay for the same tests," since "Medicare was paying 18 to 30 percent more than private insurance companies for a range of common laboratory tests," Am. Clinical Lab. Ass'n v. Azar, 931 F.3d 1195, 1199 (D.C. Cir. 2019).  Agendia tries to circumvent that by demanding payment for Agendia's "past, present and future claims" for TargetPrint, (Dkt. 1, Complaint at Prayer for Relief), despite the fact it "stopped using TargetPrint in 2013." (Dkt. 29-1, Deft's SUF 8).

filling policy under <u>Allina</u>.  If LCD L32288 is invalidated, then the Council will do what it always does, apply the standard supplied by the <u>statute</u>, 42 U.S.C. § 1395y(a)(1)(A).  <u>See</u> <u>Erringer</u>, 371 F.3d at 631 ("If the [] resulting LCDs did not exist, [MACs] would still have an overarching duty to deny claims for items and services that are not 'reasonable and necessary' under [42 U.S.C. § 1395y(a)(1)(A)]"); (Dkt. 28, Hooper Decl., Exh. D at 21) ("Even if LCD L32288 [] were struck down by a federal court, Agendia has not shown that it is undisputed that the BluePrint and TargetPrint tests provided to beneficiaries were medically reasonable and necessary pursuant to [42 U.S.C. § 1395y(a)(1)(A)]").

## IV.    CONCLUSION

For the reasons above, the Secretary respectfully requests that the Court deny Agendia's motion and dismiss this action for lack of subject matter jurisdiction given: (1) Agendia's failure to exhaust ALJ 1 and ALJ 2; and (2) Agendia's failure to timely seek district court review of the Final Council Decision.

In the alternative, the Secretary respectfully requests that the Court deny Agendia's motion and grant the Secretary's concurrently filed motion for summary judgment, (<u>see</u> Dkt. 29, Deft's Motion), on the grounds that:  (1) private-party development of LCDs do not violate the non-delegation doctrine; (2) LCDs are not subject to notice-and-comment pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh; and (3) ALJ 1 and ALJ 2 do not violate 5 U.S.C. § 706.

Dated: December 16, 2019                     Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

 /s/ *Grace Y. Park*
GRACE Y. PARK
Assistant United States Attorney
Attorneys for Defendant