1  NICOLA T. HANNA
   United States Attorney
2  DAVID M. HARRIS
   Assistant United States Attorney
3  Chief, Civil Division
   JOANNE S. OSINOFF
4  Assistant United States Attorney
   Chief, General Civil Section
5  GRACE Y. PARK (Cal. Bar No. 239928)
   Assistant United States Attorney
6        Federal Building, Suite 7516
         300 North Los Angeles Street
7        Los Angeles, California 90012
         Telephone: (213) 894-3551
8        Facsimile: (213) 894-7819
         E-mail: Grace.Park@usdoj.gov
9  Attorneys for Defendant

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                   SOUTHERN DIVISION

| | |
|---|---|
| 13  AGENDIA, INC., | No. SACV 19-0030 DOC (JDEx) |
| 14        Plaintiff, | THE SECRETARY'S REPLY IN SUPPORT |
| 15        v. | OF MOTION FOR SUMMARY JUDGMENT [DKT. 29] |
| 16  ALEX M. AZAR II, Secretary, | Hearing Date:   February 10, 2020 |
| 17  Department of Health and Human services, | Hearing Time:   8:30 a.m. Location:   Ronal Reagan Federal Bldg. |
| 18        Defendant. | United States Courthouse 411 West Fourth Street |
| 19  | Santa Ana, CA 92701-4516 Courtroom 9D |
| 20  | Hon. David O. Carter |

21

22

23

24

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ............................................................................... 1

II.    ADMINISTRATIVE PROCESS AND HISTORY ............................... 1

    A.     Agendia, Inc. v. Azar, SACV 19-0074 DOC (JDEx) ("Related Litigation") ...................................................................................... 2

    B.     October 12, 2018, Decision ("Final Council Decision" and "ALJ 1") ......... 3

    C.     October 30, 2018, Decision ("ALJ 2") ............................................. 3

    D.     DAB's February 22, 2019, Decision Declining to Certify the EAJR Requests and Forwarding ALJ 1 and ALJ 2 to the Council ......................... 3

III.   ARGUMENT ...................................................................................... 4

    A.     The Court Lacks Subject Matter Jurisdiction over this Action ................... 4

        1.     The Court Lacks Subject Matter Jurisdiction Pursuant to 42 U.S.C. § 1395ff(b)(2) .................................................................... 4

        2.     Agendia Failed to Exhaust its Administrative Remedies Pursuant to 42 U.S.C. § 405(g), Made Applicable by 42 U.S.C. § 1395ff(b)(1)(A) ................................................................... 7

        3.     Agendia's Other Bases for Asserting Subject Matter Jurisdiction Fail ............................................................................ 11

        4.     The Court Should not Retain Jurisdiction Alongside the Council ............................................................................................. 11

        5.     Agendia Failed to Timely Seek District Court Review of the Final Council Decision ................................................................ 11

    B.     Private-Party Development of LCDs does not Violate the Non-Delegation Doctrine ......................................................................... 12

    C.     LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh ....................................................... 13

        1.     By Statute, LCDs do not "Establish" or "Change" a "Substantive Legal Standard" ...................................................... 14

        2.     By Statute, LCDs are Subject to Supplier Notice-and-Comment Pursuant to 42 U.S.C. § 1395y(l)(5)(D) ................................... 16

    D.     To the Extent the Court has Subject Matter Jurisdiction to Review the ALJ's Orders, They did not Violate 5 U.S.C. § 706 .............................. 17

IV.    CONCLUSION ................................................................................. 18

# TABLE OF AUTHORITIES

CASES

Azar v. Allina Health Servs.,
    139 S.Ct. 1804 (2019) ................................................................15

B.K.B. v. Maui Police Dep't,
    276 F.3d 1091 (9th Cir. 2002) .....................................................6

Erringer v. Thompson,
    371 F.3d 625 (9th Cir. 2004) ...............................................10, 13

H. Babaali, M.D. Med. Inc. v. Hargan,
    CV 18-0198 GW (PLAx) (C.D. Cal. April 16, 2018), ................10

Heckler v. Ringer,
    466 U.S. 602, 104 S.Ct. 2013 (1984).........................................9

James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.,
    No. SACV 11-1309 DOC (ANx), 2012 WL 12892149 (C.D. Cal. Mar. 26, 2012).......5

Johnson v. Shalala,
    2 F.3d 918 (9th Cir. 1993) .............................................8, 9, 10

Kokkonen v. Guardian Life Ins. Co. of Am.,
    511 U.S. 375, 114 S.Ct. 1673 (1994)...........................................7

Mathews v. Eldridge,
    424 U.S. 319, 96 S.Ct. 893 (1976).............................................8

Pittsburg & L.A. Iron Co. v. Cleveland Iron Min. Co.,
    178 U.S. 270, 20 S.Ct. 931 (1900).............................................5

Ramtin Massoudi MD Inc. v. Azar,
    CV 18-1087 CAS (JPRx), 2018 WL 1940398 (C.D. Cal. Apr. 23, 2018) ...................10

Shalala v. Ill. Council on Long Term Care, Inc.,
    529 U.S. 1, 120 S.Ct. 1084 (2000).............................................9

Smith v. Berryhill,
    139 S.Ct. 1765 (2019)...................................................passim

Texas v. United States,
   300 F.Supp.3d 810 (N.D. Tex. 2018) ......................................................... 13

V.N.A. of Greater Tift Cty., Inc. v. Heckler,
   711 F.2d 1020 (11th Cir. 1983) ................................................................. 10


STATUTES

5 U.S.C. § 553 ........................................................................................... 13, 18

5 U.S.C. § 706 ........................................................................................... 17, 18

28 U.S.C. § 1331 ............................................................................................. 11

28 U.S.C. § 1361 ............................................................................................. 11

42 U.S.C. § 405 ........................................................................................... 7, 11

42 U.S.C. § 1395ff ..................................................................................... passim

42 U.S.C. § 1395hh .................................................................................... passim

42 U.S.C. § 1395y ...................................................................................... passim


REGULATIONS

42 C.F.R. § 405.928 ........................................................................................ 12

42 C.F.R. § 405.940 .......................................................................................... 1

42 C.F.R. § 405.958 ........................................................................................ 12

42 C.F.R. § 405.960 .......................................................................................... 1

42 C.F.R. § 405.990 .................................................................................... passim

42 C.F.R. § 405.1002 ........................................................................................ 2

42 C.F.R. § 405.1006 ........................................................................................ 2

42 C.F.R. § 405.1014 ........................................................................................ 2

42 C.F.R. § 405.1062 ................................................................................... 12, 13

42 C.F.R. § 405.1100 ........................................................................................ 2

42 C.F.R. § 405.1102 ..................................................................................... 2, 6

## <u>REPLY MEMORANDUM</u>

### I.   INTRODUCTION

Plaintiff Agendia, Inc.'s ("Agendia") complaint arises from the October 12, 2018, and the October 30, 2018, decisions by administrative law judges ("ALJs") partially denying and entirely denying, respectively, coverage for breast cancer laboratory tests, TargetPrint and BluePrint.  (<u>See</u> Dkt. 1, Complaint at ¶¶ 23-30).

In its opposition, (Dkt. 31, Agendia's Opp'n), Agendia resorts to misleading labels and other obfuscations in an attempt to assert the Court's subject matter jurisdiction over this action.  Despite these evasions, Agendia cannot avoid the fact that it e-filed its requests for expedited access to judicial review ("EAJR requests") with the wrong entity.  Nor can it avoid the fact that it failed to seek district court review of a portion of the October 12, 2018, ALJ decision.

Accordingly, the Court should dismiss this action for lack of subject matter jurisdiction.  Alternatively, should the Court determine that it has subject matter jurisdiction, Agendia's claims lack merit for the reasons below, and the Court should grant defendant Alex M. Azar II, Secretary, Department of Health and Human Services' ("Secretary") motion for summary judgment, (Dkt. 29, Secretary's Motion), and deny Agendia's concurrently filed summary judgment motion.  (Dkt. 26, Agendia's Motion).

### II.   ADMINISTRATIVE PROCESS AND HISTORY

The Secretary corrects the administrative process and administrative history set forth by Agendia in its opposition.  (<u>See</u> Dkt. 31, Agendia's Opp'n at 3-8).

"Modern-day [Medicare] claimants must generally proceed through a four-step process before they can obtain review from a federal court."  <u>Smith v. Berryhill</u>, 139 S.Ct. 1765, 1772 (2019).  "First, the claimant must seek an initial determination" from a Medicare administrative contractor ("MAC").  <u>Id.</u>; <u>see</u> 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940, <u>et seq.</u>  "Second, the claimant must seek reconsideration of the initial determination" from a qualified independent contractor ("QIC").  <u>Smith</u>, 139 S.Ct. at 1772; <u>see</u> 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960, <u>et seq.</u>  "Third, the claimant must

1

request a hearing, which is conducted by an ALJ." <u>Smith</u>, 139 S.Ct. at 1772; <u>see</u> 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1002, 405.1006, 405.1014(b).  "Fourth, the claimant must seek review of the ALJ's decision by the [Medicare] Appeals Council" ("Council"). <u>Smith</u>, 139 S.Ct. at 1772; <u>see</u> 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1100, 405.1102(a).

If a Medicare claimant believes that "the Departmental Appeals Board does not have the authority to decide the question of law or regulation relevant to the matters in controversy and that there is no material issue of fact in dispute," 42 U.S.C. § 1395ff(b)(2); <u>see</u> 42 C.F.R. § 405.990, the claimant may file an EAJR request.  The EAJR request must be filed after a QIC determination, but at or near the time it requests an ALJ hearing or Council review.  <u>See</u> 42 U.S.C. § 1395ff(b)(2)(A) (a supplier "who has filed an [ALJ or Council] appeal" may seek EAJR review); 42 C.F.R. § 405.990(b)(1)(i)(A) and (B).  EAJR requests must be filed with the HHS Departmental Appeals Board ("DAB").  42 C.F.R. § 405.990(d)(1)(i) and (ii).  The entire process is depicted in the graphic below:



A.    **<u>Agendia, Inc. v. Azar</u>, SACV 19-0074 DOC (JDEx) ("Related Litigation")**

In the complaint, Agendia referenced an August 22, 2018, ALJ decision that entirely granted coverage to Agendia.  (<u>See</u> Dkt. 1, Complaint at ¶¶ 19-22).  On October 12, 2018, the QIC appealed that ALJ decision to the Council, (<u>see</u> <u>id.</u> at ¶ 22), and the Council reversed on January 7, 2019.  <u>See</u> <u>Related Litigation</u>, (Dkt. 1, Complaint at ¶ 23).  Agendia timely sought district court review, <u>see</u> <u>id.</u> (filed January 14, 2019), the Court granted Agendia's motion for summary judgment on October 29, 2019, <u>see</u> <u>id.</u>, (Dkt. 31, Court's Order of October 29, 2019), and the Secretary appealed that order on December 27, 2019. (<u>See</u> Dkt. 35, Notice of Appeal).

**B.      October 12, 2018, Decision ("Final Council Decision" and "ALJ 1")**

On October 12, 2018, the ALJ issued a decision granting coverage to four beneficiaries, i.e., patients, but denying coverage to the remaining 227 beneficiaries.  (See Dkt. 29-1, Secretary's SUF 10; Dkt. 33, Response to SUF 24).

"Final Council Decision."  To the extent the October 12, 2018, ALJ decision granted coverage to the four beneficiaries, the QIC appealed that ALJ decision to the Council, (see Dkt. 29-1, Secretary's SUF 11; Dkt. 33, Response to SUF 25, 26), and the Council reversed on February 27, 2019.  (See id.).  Agendia failed to seek district court review of the February 27, 2019, decision.  (See Dkt. 29-1, Secretary's SUF 13; Dkt. 33, Response to SUF 25, 26).

"ALJ 1."  To the extent the October 12, 2018, ALJ decision denied coverage to the 227 beneficiaries, Agendia e-filed its EAJR request to the Council on November 6, 2018.  (See Dkt. 29-1, Secretary's SUF 15; Dkt. 33, Response to SUF 25, 26).   As an accommodation to Agendia, the Council sent the EAJR request to the DAB on December 31, 2018.  (See Dkt. 29-1, Secretary's SUF 17; Dkt. 33, Response to SUF 25, 26).

**C.      October 30, 2018, Decision ("ALJ 2")**

On October 30, 2018, the ALJ issued a decision denying coverage to all beneficiaries.  (See Dkt. 29-1, Secretary's SUF 19; Dkt. 33, Response to SUF 24) ("ALJ 2").  On November 6, 2018, Agendia e-filed its EAJR request to the Council.  (See Dkt. 29-1, Secretary's SUF 20; Dkt. 33, Response to SUF 25, 26).  As an accommodation to Agendia, the Council sent the EAJR request to the DAB on February 1, 2019.  (See Dkt. 29-1, Secretary's SUF 22; Dkt. 33, Response to SUF 25, 26).

**D.      DAB's February 22, 2019, Decision Declining to Certify the EAJR Requests and Forwarding ALJ 1 and ALJ 2 to the Council**

On February 6, 2019, the DAB consolidated Agendia's EAJR requests.  (See Dkt. 29-1, Secretary's SUF 23).  On February 22, 2019, the DAB declined to certify Agendia's EAJR requests.  (See Dkt. 29-1, Secretary's SUF 24; Dkt. 33, Response to SUF 25, 26).  The DAB declined to certify the EAJR requests on the ground that "a provision's

3

constitutionality or validity is not the 'only factor precluding a decision favorable to [Agendia]' as required by the EAJR regulations." (Dkt. 28-1, Hooper Decl., Exh. D at 22). The DAB held, "[b]y Agendia's own admission, [] '[t]here are now three ALJ decisions involving the very same testing where [] the ALJs reached different decisions regarding the applicability of the LCD." (Id. at 21). "The regulations are clear that the Council has discretion to defer (or decline to defer) to LCD L32288." (Id.). "Even if LCD L32288, or the governing authority on which it is based, were struck down by a federal court, Agendia has not shown that it is undisputed that the BluePrint and TargetPrint tests provided to beneficiaries were medically reasonable and necessary pursuant to [42 U.S.C. § 1395y(a)(1)(A).]" (Id.). Because the Council could consider the underlying factual record and make a determination in favor of coverage even if LCD L32288 were struck down, the DAB "forward[ed] the request to [] the Council, which [is treating] it as a request [] for Council review." 42 C.F.R. § 405.990(i); (see Dkt. 29-1, Secretary's SUF 25; Dkt. 33, Response to SUF 25, 26). The Council has not yet rendered a final decision, (see Dkt. 29-1, Secretary's SUF 25; Dkt. 33, Response to SUF 25, 26), meaning that Agendia has not yet exhausted ALJ 1 and ALJ 2.

## III.   ARGUMENT

### A.   The Court Lacks Subject Matter Jurisdiction over this Action

#### 1.   The Court Lacks Subject Matter Jurisdiction Pursuant to 42 U.S.C. § 1395ff(b)(2)

In the opening motion, the Secretary explained that the Court lacks subject matter jurisdiction over this action because Agendia filed its EAJR requests with the wrong entity. (See Dkt. 29, Secretary's Motion at 7-9; see also Dkt. 32, Secretary's Opp'n at 5-8). Rather than file with the DAB, Agendia filed its EAJR requests with the Council. (See id.). Contrary to its own repeated admissions in the complaint that it filed its EAJR requests with the Council, (see Dkt. 1, Complaint at ¶¶ 1, 13, 25, 26, 29, 30; Dkt. 29, Secretary's Motion at 7; Dkt. 32, Secretary's Opp'n at 5-6), Agendia's arguments to the contrary in its opposition are misleading at best.

4

1        First, Agendia contends that "the facts are not actually in dispute regarding the filing

2 and processing of the [EAJR requests]" and "it is not disputed that the DAB actually

3 received the requests on November 6, 2018." (Dkt. 31, Agendia's Opp'n at 5, 6 n. 2).

4 That is incorrect.  The Secretary clearly established that the Council actually received the

5 EAJR Requests on November 6, 2018, but that the DAB was not aware of these requests

6 until December 31, 2018, and February 1, 2019, respectively.  (See Dkt. 29-1, Secretary's

7 SUF 15, 17, 20, 22, 28; see also Dkt. 33, Secretary's Response to SUF 25, 26).  Indeed,

8 because Agendia failed to file a statement of genuine disputes of material fact, (see

9 generally Dkt.), as required by Local Rule 56-2, Agendia "does not appear to contest any

10 of Defendant's facts" and concedes the obvious – that DAB did not receive any notice of

11 the November 6, 2018, EAJR requests until December 31, 2018, and February 1, 2019.

12 James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc., No. SACV 11-

13 1309 DOC (ANx), 2012 WL 12892149, at *1 (C.D. Cal. Mar. 26, 2012).

14        Second, Agendia contends that the term "review entity" is not adequately defined

15 and, as a result, suggests that the ALJs misled it into filing its EAJR requests with the

16 Council.  (See Dkt. 31, Agendia's Opp'n at 5 n. 1).  Agendia ignores the fact that the

17 regulations explicitly state that written EAJR requests are filed "with the HHS

18 Departmental Appeals Board," 42 C.F.R. § 405.990(d)(1)(i) and (ii), and explicitly

19 distinguishes filing requests with the DAB from filing requests with the Council.  See 42

20 C.F.R. § 405.990(d)(1)(i) ("If a request for [] Council review is not pending, [the

21 requester] file[s] a written EAJR request with the HHS Departmental Appeals Board with

22 his or her request for [] Council review.") (emphasis added); 42 C.F.R. § 405.990(d)(1)(ii)

23 ("If an appeal is already pending [] before [] the Council, [requester] file[s] a written EAJR

24 request with the HHS Departmental Appeals Board.") (emphasis added).  As 42 C.F.R. §

25 405.990(d)(1)(i) and (ii) expressly state that written EAJR requests are to be filed "with

26 the HHS Departmental Appeals Board," Agendia's filing of its EAJR requests with the

27 Council was plainly insufficient.  See Pittsburg & L.A. Iron Co. v. Cleveland Iron Min.

28 Co., 178 U.S. 270, 278, 20 S.Ct. 931, 935 (1900) ("Everyone is presumed to know the

1  law."); <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1106 (9th Cir. 2002), <u>as</u> <u>amended</u>

2  (Feb. 20, 2002) ("all attorneys are presumed to know the law").

3      <u>Third</u>, Agendia suggests that the DAB and the Council are one and the same because

4  the Council and DAB are located in different portions of the same building. (<u>See</u> Dkt. 31,

5  Agendia's Opp'n at 4-5). Agendia cites no authority for this proposition, nor does it make

6  any practical sense. (<u>See</u> <u>generally</u> <u>id.</u>). Agendia's argument would mean that even if it

7  mistakenly e-filed a motion before District Judge A of the Central District of California

8  on District Judge B's docket, District Judge B's knowledge of the erroneously filed motion

9  should be imputed to District Judge A simply because District Judges A and B have

10 chambers located in the same building. To the contrary, the applicable regulations clearly

11 provide that EAJR requests are filed "with the HHS Departmental Appeals Board," 42

12 C.F.R. § 405.990(d)(1)(i) and (ii), on an entirely separate e-filing platform. (<u>See</u> Dkt. 29,

13 Secretary's Motion at 8 n.3).

14     <u>Fourth</u>, Agendia contends that: (1) the ALJ 1 and ALJ 2 decisions provided that

15 Agendia "may file an appeal with the Medicare Appeals Council;" (2) Agendia received

16 an acknowledgment of receipt from "appeals@dab.efile.hhs.gov," and (3) there is solely

17 a three-letter distinction between the e-filing platform for DAB and Council review. (<u>See</u>

18 Dkt. 31, Agendia's Opp'n at 4-5).

19     It is unclear how any of these statements support Agendia's contention that the

20 Court has subject matter jurisdiction over this action. Agendia must also request Council

21 review before or at the time it seeks EAJR review, and the instructions Agendia complains

22 of show suppliers like Agendia how to seek Council review. <u>See</u> 42 U.S.C. §

23 1395ff(b)(2)(A) (a supplier "who has filed an [ALJ or Council] appeal" may seek EAJR

24 review); 42 C.F.R. § 405.990(b)(1)(i)(B) ("Conditions for making the expedited appeals

25 request," include, among other things, "the party has filed a request for Council review in

26 accordance with § 405.1102 and a final decision, dismissal order, or remand order of the

27 Council has not been issued."). But Agendia never made a request for Council review

28 before, concurrently, or after its deficient November 6, 2018, requests for EAJR review to

1   the Council.  (See Dkt. 29-1, Secretary's SUF 15, 20, 25, 28).

2       Fundamentally, Agendia contends that the Court has subject matter jurisdiction over

3   this action in light of purportedly "unique" circumstances.  (See Dkt. 31, Agendia's Opp'n

4   at 6).  There is nothing "unique" about Agendia's failure to file its EAJR requests with the

5   correct entity.  As "Federal courts are courts of limited jurisdiction" and it is presumed "a

6   cause lies outside this limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am.,

7   511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994) (internal citations omitted), the Court

8   lacks subject matter jurisdiction over this action.

9       2.   Agendia Failed to Exhaust its Administrative Remedies Pursuant to 42
        U.S.C. § 405(g), Made Applicable by 42 U.S.C. § 1395ff(b)(1)(A)

10

11      In the opening motion, the Secretary explained that the Court lacks subject matter

12  jurisdiction over this action because Agendia has not completed the last step of the four-

13  step administrative review process.  (See Dkt. 29, Secretary's Motion at 8-9).  Pursuant to

14  42 C.F.R. § 405.990(i), when the DAB denied Agendia's EAJR requests, it forwarded the

15  matters that are at issue in this action to the Council, where they remain pending today.

16  (See Dkt. 29-1, Secretary's SUF 25).

17      In response, Agendia asserts that "the DAB's ruling should nevertheless be

18  considered a final decision of the secretary, thus allowing the Court to assert jurisdiction

19  under the holding in Smith v. Berryhill."  (Dkt. 31, Agendia's Opp'n at 7).  To the extent

20  Smith has any applicability to this action, Smith supports the Secretary's contention that

21  the Court lacks subject matter jurisdiction.[1]

22      First, Agendia notes that Smith held, "judicial review contains first a 'jurisdictional'

23  requirement that claims be presented to the agency, and second, a 'waivable' requirement

24  ───────────────

25  [1] Agendia contends that Smith "casts doubt about the continuing validity of" the
    decisions cited by the Secretary in its opening motion.  (See Dkt. 31, Agendia's Opp'n at
    7) (referring to cases cited at Dkt. 29, Secretary's Motion at 17-29).  This is baldly
26  incorrect, as none of these cases are even referenced in Smith.  (Compare Dkt. 29,
    Secretary's Motion at 17-29 with Smith, 139 S.Ct. 1765).  Most importantly, Smith stands
27  for the limited proposition that the Council's "dismissal of [plaintiff's] claim is a 'final
    decision . . . made after a hearing' so as to allow judicial review under [42 U.S.C.] §
28  405(g)."  Smith, 139 S.Ct. at 1771.  As such, Smith in no way rendered any of the decisions
    relied upon by the Secretary in its opening motion in doubt or unconstitutional.

that the administrative remedies be exhausted," and contends that the Court may retain jurisdiction over this action because "exhaustion is not itself a jurisdictional prerequisite." (Dkt. 31, Agendia's Opp'n at 6, 8) (citing Smith 139 S.Ct. at 1773-74, 1779). But by its own admission, Agendia "presented" its EAJR request with the wrong entity, and as such, the Court lacks subject matter jurisdiction because "[t]he presentment requirement is jurisdictional, and therefore cannot be waived by the Secretary or the courts."[2] Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993); see Smith 139 S.Ct. at 1773-74 (relying on Mathews v. Eldridge, 424 U.S. 319, 328, 96 S.Ct. 893, 899 (1976)).

Second, Agendia notes that Smith held that "a dismissal by the [] Council after the claimant had received an ALJ hearing on the merits qualifies as a 'final decision . . . made after a hearing.'" (Dkt. 31, Agendia's Opp'n at 6). This does not help Agendia, because the Council has not "dismissed" ALJ 1 or ALJ 2; rather, ALJ 1 and ALJ 2 remain pending before the Council today, which has not yet granted, denied, or dismissed the underlying ALJ decisions. (See Dkt. 29-1, Secretary's SUF 25).

Third, Agendia claims that, like plaintiff in Smith, Agendia "attempted to obtain judicial review as promptly as possible." (Dkt. 31, Agendia's Opp'n at 7). That is incorrect as well. Rather, despite the fact that Agendia was required to seek Council review in conjunction with EAJR review, see 42 U.S.C. § 1395ff(b)(2)(A); 42 C.F.R. § 405.990(b)(1)(i)(B), it failed to seek Council review at all. (See Dkt. 29-1, Secretary's SUF 15, 20, 25, 28).

Finally, Agendia obliquely asserts that, under Smith, the exhaustion requirement should be waived. (See Dkt. 31, Agendia's Opp'n at 7-8). To waive the exhaustion requirement, the Ninth Circuit has articulated a three-part test: "The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing

---

[2] Nor, for that matter, did Agendia "present" any request for Council review. See supra at § III.A.1; 42 U.S.C. § 1395ff(b)(2)(A) (a supplier "who has filed an [ALJ or Council] appeal" may seek EAJR review); 42 C.F.R. § 405.990(b)(1)(i)(B) ("Conditions for making the expedited appeals request," include, among other things, "the party has filed a request for Council review in accordance with § 405.1102 and a final decision, dismissal order, or remand order of the Council has not been issued.").

that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." Johnson, 2 F.3d at 921. Agendia fails under each of the three prongs.

With respect to collaterality, Agendia fundamentally asserts "a claim that [it] should be paid." Heckler v. Ringer, 466 U.S. 602, 614, 104 S.Ct. 2013, 2021 (1984). "It is of no importance that respondents [] sought only declaratory and injunctive relief and not an actual award of benefits as well." Id. at 615, 104 S.Ct. at 2022. "Following the declaration which respondents seek from the Secretary – that BCBR surgery is a covered service – only essentially ministerial details will remain before respondents would receive reimbursement." Id. Here, Agendia seeks precisely what Heckler prohibits, a declaratory judgment entitling it to the payment of claims: Agendia seeks "an order from this Court setting aside the decisions of the Secretary [] and requiring the Secretary to cover and pay for the claims at issue as well as other similar past, present and future claims of Agendia." (Dkt. 1, Complaint at Prayer for Relief).

Fatally, Agendia entirely fails to address the second prong of the exhaustion waiver inquiry, irreparability. (See generally Dkt. 31, Agendia's Opp'n). Nor can it. The Supreme Court long ago recognized that requiring exhaustion "comes at a price, namely, occasional individual, delay-related hardship." Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 13, 120 S.Ct. 1084, 1093 (2000). "In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified[; i]n any event, such was the judgment of Congress." Id. In light of Congress' recognition of the downsides of exhaustion, it is illogical for that recognized hardship to constitute "irreparability." And as recognized by multiple courts within this district, suppliers like Agendia assumed the risk of non-coverage determinations under Medicare Part B:

> [T]he problem of bankruptcy is endemic to a system which relies

> on non-profit, cash-poor providers which are wholly dependent on Medicare reimbursement. Were irreparable injury the only criteria for exercise of jurisdiction, the courts would be inundated by claims from other providers whenever they were determined by the intermediary to have been overpaid. Third, providers do not lack notice of these review provisions. Having chosen to operate within the system on a cash-poor basis, they take a knowing risk that an intermediary's determination might delay payment.

Ramtin Massoudi MD Inc. v. Azar, CV 18-1087 CAS (JPRx), 2018 WL 1940398, at *7 (C.D. Cal. Apr. 23, 2018) (citing V.N.A. of Greater Tift Cty., Inc. v. Heckler, 711 F.2d 1020, 1034 (11th Cir. 1983)); H. Babaali, M.D. Med. Inc. v. Hargan, CV 18-0198 GW (PLAx) (C.D. Cal.), (Dkt. 42, Court's Order of April 16, 2018, at 13) (same).

Agendia also fatally fails to address the third prong of exhaustion waiver, futility. (See generally Dkt. 31, Agendia's Opp'n). With respect to that prong, administrative exhaustion of Agendia's claims fundamentally serves the purposes of futility. See Johnson, 2 F.3d at 921. As the DAB noted, "[e]ven if LCD L32288, or the governing authority on which it is based, were struck down by a federal court, Agendia has not shown that it is undisputed that the BluePrint and TargetPrint tests provided to beneficiaries were medically reasonable and necessary pursuant to [42 U.S.C. § 1395y(a)(1)(A)]." (Dkt. 28, Hooper Decl., Exh. D at 21); see Erringer v. Thompson, 371 F.3d 625, 631 (9th Cir. 2004) ("If the [] resulting LCDs did not exist, [MACs] would still have an overarching duty to deny claims for items and services that are not 'reasonable and necessary' under [42 U.S.C. § 1395y(a)(1)(A)]." Whether BluePrint and TargetPrint meet the § 1395y(a)(1)(A) reasonable and necessary standard is precisely the kind of decision that the Council is in the best position to consider, particularly given its expertise and routine consideration of detailed underlying factual records like Agendia's to assess whether tests as complex as BluePrint and TargetPrint meet that statutory standard.

Accordingly, because: (1) Agendia has not completed the last step of the four-step administrative review process; (2) presentment cannot be waived; and (3) because waiver of the exhaustion requirement is unwarranted, the Court lacks subject matter jurisdiction. //

### 3.   Agendia's Other Bases for Asserting Subject Matter Jurisdiction Fail

In the opening motion, the Secretary explained why Agendia's other bases for asserting subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1361, fail.  (See Dkt. 29, Secretary's Motion at 11-13; see also Dkt. 32, Secretary's Opp'n at 10-12).   As Agendia has failed to address any of these arguments in its opposition, (see generally Dkt. 31, Agendia's Opp'n), Agendia tacitly concedes that the Court is not empowered to assert subject matter jurisdiction over this action pursuant to either statute.

### 4.   The Court Should not Retain Jurisdiction Alongside the Council

In the opposition, Agendia further asks that "the Court retain jurisdiction pending the outcome of the [] Council's rulings."  (Dkt. 31, Agendia's Opp'n at 12 n. 4; see id. at 8).  This is surprising, because in the opening motion, Agendia contradictorily contends that "[e]ither an appeal is before the Court or it is before the DAB" and "may not be pending at the same time in two different forums."  (Dkt. 26, Agendia's Motion at 18).

In any event, Agendia has not set forth any basis why the District Court should retain this action – nor can it.  (See generally Dkt. 31, Agendia's Opp'n).  When the Council renders its final decisions in ALJ 1 and ALJ 2, Agendia will have 60 days from that future final decision date to seek District Court review, if necessary.[3]  See 42 U.S.C. § 405(g); 42 U.S.C. § 1395ff(b)(1)(A).  Dismissal of this action for lack of subject matter jurisdiction will not prejudice Agendia in any way.

### 5.   Agendia Failed to Timely Seek District Court Review of the Final Council Decision

In the opening motion, the Secretary explained that the Court lacks subject matter jurisdiction over the February 27, 2019, Final Council Decision concerning the four beneficiaries.  (See Dkt. 29, Secretary's Motion at 10 n. 6; Dkt. 29-1, Secretary's SUF 13, 14; see also Dkt. 32, Secretary's Opp'n at 12-13; Dkt. 33, Response to SUF 25, 26).

In the opposition, Agendia provides no response for its failure to seek District Court review with respect to that February 27, 2019, decision.  (See generally Dkt. 31, Agendia's

---

[3] The Council may very well grant coverage, in full, to Agendia.

1   Opp'n).  Accordingly, the Court lacks subject matter jurisdiction.

2   **B.    Private-Party Development of LCDs does not Violate the Non-Delegation Doctrine**

3

4   In the opening motion, the Secretary explained why private-party development of

5   LCDs does not violate the non-delegation doctrine.[4]  (See Dkt. 29, Secretary's Motion at

6   13-15).  In the opposition, Agendia refers to the additional arguments raised in its opening

7   motion for summary judgment.  (See Dkt. 26, Agendia's Motion at 15-16).  As set forth

8   in the Secretary's opposition, (see Dkt. 32, Secretary's Opp'n at 15-16), these additional

9   arguments also lack merit.

10   First, Agendia contends that, contrary to the Related Litigation, where the ALJ

11   granted coverage for BluePrint and TargetPrint, the ALJs who decided ALJ 1 and ALJ 2

12   did not.  (See Dkt. 26, Motion at 15-16).  As an initial matter, this is factually incorrect, as

13   Agendia admits that ALJ 1 granted coverage to four beneficiaries and denied coverage to

14   the remaining 227 beneficiaries.  (See Dkt. 29-1, Secretary's SUF 10; Dkt. 33, Response

15   to SUF 42).   More importantly, Agendia's admission that, over the course of the

16   administrative process, "three different [ALJs] reached three different and contrary

17   decisions based on applying the same [LCD L32288] to the very same circumstances,"

18   (Dkt. 1, Complaint at ¶ 4), demonstrably shows that coverage determinations were made

19   at the discretion of ALJs – not private parties.

20   Second, Agendia contends that LCDs are binding on MACs when making their

21   initial determinations and redeterminations.  But the regulations that Agendia relies on

22   clearly provide that an initial determination is binding "unless a redetermination is

23   completed," 42 C.F.R. § 405.928(b)(1), and a redetermination is binding "unless a

24   reconsideration is completed."  42 C.F.R. § 405.958(a).  Agendia further neglects that,

25   upon reconsideration, LCDs: (1) "shall not be binding on the [QIC] in making a decision

26   with respect to a reconsideration under this section, [but] shall consider the local coverage

27   _____

28   [4] In the Related Litigation, the Court held that the statutory scheme regarding LCDs
does not violate the Due Process Clause.  (See Dkt. 31, Court's Order of October 29, 2019,
at 7-12).

determination in making such decision," 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II) (emphasis added); and (2) "ALJs and attorney adjudicators and the Council are not bound by LCDs [] or CMS program guidance." 42 C.F.R. § 405.1062 (emphasis added).

Third, Agendia's reliance on Texas v. United States, 300 F.Supp.3d 810, 846-848 (N.D. Tex.), on reconsideration in part, 336 F.Supp.3d 664 (N.D. Tex. 2018), is misplaced. In Texas, the Court found that a statute and regulation in the Medicare Act empowered a private party, the Actuarial Standards Board ("ASB"), to establish a private definition of "actuarial soundness" in the statute and regulation, and prevented the Secretary from reviewing "actuarial soundness" until ASB actuaries certified their findings. See id. at 846-48. Here, it is the reverse. "If the [] LCDs did not exist, [MACs] would still have an overarching duty to deny claims for items and services that are not 'reasonable and necessary' under [42 U.S.C. § 1395y(a)(1)(A)]." Erringer, 371 F.3d at 631. In other words, Congress – not MACs (or any other private party) – define the legal standard for coverage under Medicare Part B.

As MACs do not function as legislators and they operate subordinately to the Secretary, neither Congress nor the Secretary have impermissibly delegated any legislative functions to MACs in violation of the Constitution.

## C.   LCDs are not Subject to Notice-and-Comment Pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh

In the opening motion, the Secretary explained why LCDs are not subject to notice-and-comment pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh.[5]   (See Dkt. 29, Secretary's Motion at 15-20).  In the opposition, Agendia concedes that LCDs are not subject to notice-and-comment pursuant to 5 U.S.C. § 553, (see generally Dkt. 31, Agendia's Opp'n at 9-11), but nevertheless contends that LCD L32288 is subject to notice-and-comment under the latter statute.  For the reasons below, Agendia is incorrect.

_____

[5] In the Related Litigation, the Court held that LCDs are not subject to notice-and-comment pursuant to 5 U.S.C. § 553, but are subject to notice-and-comment pursuant to 42 U.S.C. § 1395hh(a)(2).  (See Dkt. 31, Court's Order of October 29, 2019, at 14-17). On December 27, 2019, the Secretary appealed the Court's order with respect to the latter holding.  (See Dkt. 35, Notice of Appeal).

1.   <u>By Statute, LCDs do not "Establish" or "Change" a "Substantive Legal Standard"</u>

In the opening motion, the Secretary explained that an LCD does not "establish" or "change" a substantive legal standard because an LCD determines "whether or not a particular item or service is covered on an intermediary- or carrier-wide basis <u>in accordance with</u> section 1395y(a)(1)(A) of this title."   42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).  (Dkt. 29, Secretary's Motion at 16-17).  An LCD that – by statute – determines coverage "in accordance with" a substantive legal standard cannot "establish" or "change" that standard.  (<u>Id.</u> at 18).

Rather than address the unambiguous statutory language, Agendia's contentions are misleading at best.  Agendia contends that LCD L32288 "establishes" a "substantive legal standard" because the LCD states that "clinical laboratory tests that 'have NOT been reviewed and approved through the process [the MolDX process] outlined in this policy will be considered investigational and therefore denied as not a covered service."  (Dkt. 31, Agendia's Opp'n at 9) (citing Dkt. 30, UAR 00908; Dkt. 24, AR at 3516).  But Agendia cites the <u>payment rule</u> for LCD L32288.  (<u>See</u> Dkt. 30, UAR 00908; Dkt. 24, AR at 3516). On the <u>very same pages</u> Agendia relies on, LCD L32288 clearly provides that "tests not covered due to benefit category or statutory exclusion provisions will not be listed in this LCD," (Dkt. 30, UAR at 908; Dkt. 24, AR at 3515), and the MAC "must review all test/assay clinical information to determine if a test meets Medicare's reasonable and necessary requirement."  (Dkt. 30, UAR at 908; Dkt. 24, AR at 3516).  In other words, LCD L32288 – itself – provides that it makes coverage determinations <u>in accordance with</u> the applicable Medicare Act statutes.[6, 7]  <u>See</u> 42 U.S.C. § 1395ff(f)(2)(B).

---

[6] Because ALJ 1 and ALJ 2 are still pending before the Council, Agendia is also incorrect that "[a]ll of the 400-plus claims at issue here were denied." (Dkt. 31, Agendia's Opp'n at 9); <u>see supra</u> at § III.A.2.

[7] Agendia's reliance on a settled False Claims Act action is misplaced.  (<u>See</u> Dkt. 31, Agendia's Opp'n at 10).  That settled action concerned defendant's fraudulent coding of its genetic testing services.   <u>See</u> https://www.360dx.com/reimbursement/myriad-genetics-settlesimproper-medicare-billing-complaint-91m (last accessed January 13,

14

In the opening motion, the Secretary explained that 42 U.S.C. § 1395y(a)(1)(A) provides the <u>statutory</u> "substantive legal standard" for LCDs – not the LCD itself.  (<u>See</u> Dkt. 29, Secretary's Motion at 17).  By the statute's plain language, an LCD determines "whether or not a particular item or service is covered on an intermediary- or carrier-wide basis in accordance with <u>section 1395y(a)(1)(A) of this title</u>."  42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).  42 U.S.C. § 1395y(a)(1)(A) provides the <u>statutory</u> substantive legal standard for LCDs: "[N]o payment may be made under [] part B for any expenses incurred for items or services which [] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

Rather than address the unambiguous statutory language, Agendia states that "[n]ew policies interpreting the Medicare Statutes are required to be engaged as regulations under Section 1395hh, as the Supreme Court held in [<u>Azar v. Allina Health Servs.</u>, 139 S.Ct. 1804 (2019).  But <u>Allina</u> is inapplicable here.  In <u>dicta</u>, the Supreme Court in <u>Allina</u> surmised that "the government might have sought to argue that the policy at issue here didn't 'establis[h] or chang[e]' a substantive legal standard – and so didn't require notice and comment under § 1395hh(a)(2) – because the <u>statute</u> itself" compels the legal standard. 139 S.Ct. at 1804 (emphasis in original).  Contrary to the government's position in <u>Allina</u>, the Secretary contends <u>in this action</u> that the statute, 42 U.S.C. § 1395y(a)(1)(A), itself compels the legal standard – not the LCD.

In the opening motion, the Secretary explained that the administrative history in this action shows that LCD L32288 is a <u>procedural</u> legal presumption that Agendia can, and has, overcome over the course of the administrative process, rather than a substantive legal standard subject to the notice-and-comment requirements of 42 U.S.C. § 1395hh.  (Dkt. 29, Secretary's Motion at 17-18).  Indeed, Agendia concedes in its complaint that "three different [ALJs] reached three different and contrary decisions based on applying the same [LCD L32288] to the very same circumstances."  (Dkt. 1, Complaint at ¶ 4; <u>see also id.</u> at

2020).  But MolDX billing codes are not relevant to whether LCD L32288 is subject to notice-and-comment pursuant to § 1395hh(a)(2).

¶¶ 19-30 (describing the fully favorable, partially favorable, and fully unfavorable ALJ proceedings)).

Rather than address its own concession in the original complaint, Agendia contends that LCD L32288 is substantive because one ALJ concluded that "the tests did not comply with LCD L32288." (See Dkt. 31, Agendia's Opp'n at 10). But the opinion of one ALJ does not overcome Agendia's concession that LCD L32288 sets forth a procedural presumption that Agendia can (and has) overcome over the course of administrative reveiw. (See Dkt. 33, Response to SUF 38, 40; Dkt. 32, Secretary's Opp'n at 19 n. 21).

        2.   <u>By Statute, LCDs are Subject to Supplier Notice-and-Comment Pursuant to 42 U.S.C. § 1395y(l)(5)(D)</u>

Finally, in the opening motion, the Secretary explained that 42 U.S.C. § 1395hh has no applicability to LCDs because the Medicare Act provides a specialized notice-and-comment process for LCDs pursuant to 42 U.S.C. § 1395y(l)(5)(D). (See Dkt. 29, Secretary's Motion at 18-20).

Agendia misses the point when it contends that § 1395y(l)(5)(D) was not implemented until 2016. (See Dkt. 31, Agendia's Opp'n at 10-11). When implementing LCDs in 2003, Congress contemplated that LCDs were a means of developing future NCDs. <u>See</u> 42 U.S.C. § 1395y(l)(5)(A) (2003). As precursors of future NCDs, Congress did not include any notice-and-comment for LCDs in 2003, <u>see id.</u>, but to the extent LCDs were later adopted as NCDs, those newly adopted NCDs would be subject to 30-day public notice-and-comment. The statutory construction and legislative history of § 1395y(l) defies Agendia's assertion that LCDs, as precursor NCDs, <u>see</u> 42 U.S.C. § 1395y(l)(5)(A), are subject to 60-day public notice-and-comment under § 1395hh(a)(2), yet are reverted <u>down</u> to 30-day public notice-and-comment when <u>elevated</u> to nationwide applicability as NCDs. <u>See</u> 42 U.S.C. § 1395y(l)(3)(B). This particularly rings true when LCDs only determine "whether or not a <u>particular</u> item or service is covered on an <u>intermediary</u>- or <u>carrier-wide</u> <u>basis</u>." 42 U.S.C. § 1395ff(f)(2)(B) (emphasis added).

Rather, Agendia asserts that LCD L32288 is "national in scope" and admonishes

16

the Secretary for his "surprising lack of understanding" and "attempts to obscure the undisputed facts." (Dkt. 31, Agendia's Opp'n at 2). Specifically, Agendia contends that it is a single laboratory located in California, "one of the 25 states in which [MolDX and LCD L32288] remain[] in effect." (Id.). As such, Agendia contends that, as a single laboratory, "all of the laboratory testing ordered by all of the doctors for all of their patients residing throughout the Country has been denied Medicare coverage," and is thus "national in scope." (Id.) (emphasis in original). Agendia's argument supports the Secretary's argument that LCD L32288 is an intermediary-by-intermediary and carrier-by-carrier coverage determination. See 42 U.S.C. § 1395ff(f)(2)(B). All Agendia has to do is relocate to one of the 25 states not covered by LCD L32288 such that "none of the laboratory testing ordered by any of the doctors for any of their patients residing throughout the Country" would be subject to LCD L32288 or the MolDX program.[8]

Accordingly, as LCDs do not "establish" or "change" a "substantive legal standard," and are subject to the 45-day supplier notice-and-comment pursuant to 42 U.S.C. § 1395y(l)(5)(D), LCDs are not subject to 60-day public notice-and-comment pursuant to 42 U.S.C. § 1395hh.

### D. To the Extent the Court has Subject Matter Jurisdiction to Review the ALJ's Orders, They did not Violate 5 U.S.C. § 706

Agendia contends that ALJ 1 and ALJ 2 should be reversed, but provides no explanation why these decisions are erroneous. (See Dkt. 1, Complaint at ¶¶ 24, 28; see Dkt. 29, Secretary's Motion at 20; see generally Dkt. 26, Agendia's Motion; Dkt. 31, Agendia's Opp'n). As Agendia concedes that it has not completed the last step of the four-step administrative review process, (see Dkt. 31, Agendia's Opp'n at 12 n. 4) (asking that the Court defer ruling on the Secretary's summary judgment motion "until after the [] Council issues final decisions"); see also supra at § III.A, the Council – not the Court – should consider whether ALJ 1 and/or ALJ 2 are erroneous in any respect.

---

[8] Businesses of all sizes regularly move to different jurisdictions. Locally, small businesses move or close down as neighborhoods gentrify. At the global level, corporate inversions are implemented to relocate overseas to reduce income tax burdens.

## IV.   CONCLUSION

For the reasons above, the Secretary respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction.

Alternatively, the Secretary respectfully requests that the Court grant summary judgment in his favor on the following grounds:  (1) private-party development of local coverage determinations does not violate the non-delegation doctrine; (2) local coverage determinations are not subject to notice-and-comment pursuant to 5 U.S.C. § 553 and 42 U.S.C. § 1395hh; and (3) the administrative law judges' October 12, 2018, and October 30, 2018, decisions did not violate 5 U.S.C. § 706.

Dated:  January 13, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

 /s/ *Grace Y. Park*
GRACE Y. PARK
Assistant United States Attorney
Attorneys for Defendant